# EXHIBIT  A



January 25, 2023

**Kenan G. Loomis**

Direct Phone   404-572-2028
Direct Fax      866-591-9127
kloomis@cozen.com

**VIA CERTIFIED MAIL/RETURN-RECEIPT REQUESTED**

Benjamin Perkins, Esq.
Oliver Maner LLP
218 West State Street
Savannah, GA 31401

Re:    ***Zurich American Insurance Company vs. Patriot Modular, LLC and Eldeco Pipe and Fabrication, LLC***; **In the United States District Court for the Northern District of Georgia, Case No. 1:22-cv-04377-JPB**

Dear Ben:

On behalf of my client, Zurich American Insurance Company, please find enclosed a Notice of Lawsuit and Request to Waive Service of a Summons, the Waiver of Service of Summons form, the Complaint for Declaratory Judgment, and the Summons issued to Patriot Modular, LLC. Pursuant to Fed. R. Civ. P. 4(d), we request that you (or an appropriate and authorized agent of Patriot Modular, LLC) waive service of the Complaint. To that end, I would greatly appreciate it if you could please sign the Waiver of Service and return it to me in the enclosed, pre-paid envelope at your earliest convenience.

Thank you for your assistance. Please give me a call if you have any questions.

Sincerely,

COZEN O'CONNOR

By:    Kenan G. Loomis

KGL

Enclosures

AO 398 (Rev. 01/09) Notice of a Lawsuit and Request to Waive Service of a Summons

# UNITED STATES DISTRICT COURT

for the

Northern District of Georgia  ▼

| | |
|---|---|
| ZURICH AMERICAN INSURANCE COMPANY | ) |
| _Plaintiff_ | ) |
| v. | ) |
| PATRIOT MODULAR, LLC, ET AL. | ) |
| _Defendant_ | ) |

Civil Action No.  1:22-cv-04377-JPB

## NOTICE OF A LAWSUIT AND REQUEST TO WAIVE SERVICE OF A SUMMONS

To:  Patriot Modular, LLC (c/o Benjamin M. Perkins, Oliver Maner, LLP)

_(Name of the defendant or - if the defendant is a corporation, partnership, or association - an officer or agent authorized to receive service)_

**Why are you getting this?**

A lawsuit has been filed against you, or the entity you represent, in this court under the number shown above. A copy of the complaint is attached.

This is not a summons, or an official notice from the court. It is a request that, to avoid expenses, you waive formal service of a summons by signing and returning the enclosed waiver. To avoid these expenses, you must return the signed waiver within  30  days _(give at least 30 days, or at least 60 days if the defendant is outside any judicial district of the United States)_ from the date shown below, which is the date this notice was sent. Two copies of the waiver form are enclosed, along with a stamped, self-addressed envelope or other prepaid means for returning one copy. You may keep the other copy.

**What happens next?**

If you return the signed waiver, I will file it with the court. The action will then proceed as if you had been served on the date the waiver is filed, but no summons will be served on you and you will have 60 days from the date this notice is sent (see the date below) to answer the complaint (or 90 days if this notice is sent to you outside any judicial district of the United States).

If you do not return the signed waiver within the time indicated, I will arrange to have the summons and complaint served on you. And I will ask the court to require you, or the entity you represent, to pay the expenses of making service.

Please read the enclosed statement about the duty to avoid unnecessary expenses.

I certify that this request is being sent to you on the date below.

Date:  01/25/2023

/s/ Kenan Loomis
_Signature of the attorney or unrepresented party_

Kenan G. Loomis
_Printed name_
Cozen O'Connor
1230 Peachtree Street, N.E., Suite 400
Atlanta, GA  30309

_Address_

kloomis@cozen.com
_E-mail address_

(404) 572-2028
_Telephone number_

AO 399 (01/09) Waiver of the Service of Summons

# UNITED STATES DISTRICT COURT

for the

Northern District of Georgia ▼

| | |
|---|---|
| ZURICH AMERICAN INSURANCE COMPANY | ) |
| *Plaintiff* | ) |
| v. | ) |
| PATRIOT MODULAR, LLC, ET AL. | ) |
| *Defendant* | ) |

Civil Action No. 1:22-cv-04377-JPB

## WAIVER OF THE SERVICE OF SUMMONS

To: Kenan Loomis, Cozen O'Connor

*(Name of the plaintiff's attorney or unrepresented plaintiff)*

I have received your request to waive service of a summons in this action along with a copy of the complaint, two copies of this waiver form, and a prepaid means of returning one signed copy of the form to you.

I, or the entity I represent, agree to save the expense of serving a summons and complaint in this case.

I understand that I, or the entity I represent, will keep all defenses or objections to the lawsuit, the court's jurisdiction, and the venue of the action, but that I waive any objections to the absence of a summons or of service.

I also understand that I, or the entity I represent, must file and serve an answer or a motion under Rule 12 within 60 days from _____, the date when this request was sent (or 90 days if it was sent outside the United States). If I fail to do so, a default judgment will be entered against me or the entity I represent.

Date: _____

_____
*Signature of the attorney or unrepresented party*

_____
*Printed name of party waiving service of summons*

_____
*Printed name*

_____
*Address*

_____
*E-mail address*

_____
*Telephone number*

### Duty to Avoid Unnecessary Expenses of Serving a Summons

Rule 4 of the Federal Rules of Civil Procedure requires certain defendants to cooperate in saving unnecessary expenses of serving a summons and complaint. A defendant who is located in the United States and who fails to return a signed waiver of service requested by a plaintiff located in the United States will be required to pay the expenses of service, unless the defendant shows good cause for the failure.

"Good cause" does *not* include a belief that the lawsuit is groundless, or that it has been brought in an improper venue, or that the court has no jurisdiction over this matter or over the defendant or the defendant's property.

If the waiver is signed and returned, you can still make these and all other defenses and objections, but you cannot object to the absence of a summons or of service.

If you waive service, then you must, within the time specified on the waiver form, serve an answer or a motion under Rule 12 on the plaintiff and file a copy with the court. By signing and returning the waiver form, you are allowed more time to respond than if a summons had been served.

AO 440 (Rev. 06/12) Summons in a Civil Action

# UNITED STATES DISTRICT COURT
for the

Northern District of Georgia   ▼

| | |
|---|---|
| ZURICH AMERICAN INSURANCE COMPANY <br><br><br><br> *Plaintiff(s)* <br> v. <br> PATRIOT MODULAR, LLC and ELDECO PIPE AND FABRICATION, LLC <br><br><br><br> *Defendant(s)* | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> )    Civil Action No.   1:22-cv-4377 |

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*   Patriot Modular, LLC
C/O Registered Agent, Justin Kreft
1018 Highway 80 West, Suite 508
Pooler, Georgia 31322

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure. The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:   Kenan G. Loomis
Cozen O'Connor
1230 Peachtree Street, N.E.
The Promenade, Suite 400
Atlanta, GA 30309

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

KEVIN P. WEIMER
*CLERK OF COURT*

Date: _____11/02/2022_____          __s/Stephanie Wilson-Bynum__
                                                                              *Signature of Clerk or Deputy Clerk*

AO 440 (Rev. 06/12)  Summons in a Civil Action (Page 2)

Civil Action No.

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)* _____

was received by me on *(date)* _____

❐ I personally served the summons on the individual at *(place)* _____

_____ on *(date)* _____ ; or

❐ I left the summons at the individual's residence or usual place of abode with *(name)*

_____ , a person of suitable age and discretion who resides there,

on *(date)* _____ , and mailed a copy to the individual's last known address; or

❐ I served the summons on *(name of individual)* _____ , who is

designated by law to accept service of process on behalf of *(name of organization)* _____

_____ on *(date)* _____ ; or

❐ I returned the summons unexecuted because _____ ; or

❐ Other *(specify):*



My fees are $ _____ for travel and $ _____ for services, for a total of $   0.00

I declare under penalty of perjury that this information is true.


Date: _____

_____
*Server's signature*

_____
*Printed name and title*


_____
*Server's address*

Additional information regarding attempted service, etc:

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| ZURICH AMERICAN INSURANCE COMPANY , | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No.: _____ |
| PATRIOT MODULAR, LLC and ELDECO PIPE AND FABRICATION, LLC, | ) ) ) ) | |
| Defendants. | ) ) ) | |

## COMPLAINT FOR DECLARATORY JUDGMENT

COMES NOW Plaintiff Zurich American Insurance Company ("Zurich") and files this declaratory judgment action against Defendants Patriot Modular, LLC ("Patriot") and Eldeco Pipe and Fabrication, LLC ("Eldeco"), alleging as follows:

## INTRODUCTION

1.

This is an action for declaratory judgment pursuant to 28 U.S.C. § 2202 to determine and resolve questions of actual controversy involving a Commercial General Liability policy issued by Zurich to Eldeco. Zurich issued Policy No. GLO 8196150-19 to Eldeco for the policy period beginning March 1, 2018 through March

1, 2019 (the "Policy").  A copy of the Policy is attached hereto as Exhibit "A."

Eldeco has demanded that Zurich defend it in the Underlying Lawsuit.

2.

The Underlying Lawsuit, styled *IHI E&C International Corporation v. Robinson Mechanical Contractors, Inc. d/b/a Robinson Construction Company and Fidelity and Deposit Company of Maryland,* Civil Action No. 1:19-cv-04137-JPB, United States District Court, Northern District of Georgia (the "Underlying Lawsuit"), concerns a construction project on Elba Island, Georgia for which both Patriot and Eldeco were sub-contractors (the "Project").  A copy of the Complaint filed in the Underlying Lawsuit is attached hereto as Exhibit "B."

3.

Patriot seeks coverage from Zurich as a result of the Third-Party Complaint filed against it by Robinson Mechanical Contractors, Inc. d/b/a Robinson Construction Company ("Robinson").  Patriot, a Third-Party Defendant/Fourth-Party Plaintiff in the Underlying Lawsuit, has filed a Fourth Party Complaint against Eldeco, seeking indemnification for the claims asserted against Patriot in the Underlying Lawsuit. A copy of the Fourth-Party Complaint filed in the Underlying Lawsuit is attached hereto as Exhibit "C."

4.

The Underlying Lawsuit alleges that Patriot, a sub-contractor of Robinson, was to provide the components for certain pipe rack modules and to perform testing and inspection of the fabrication and welding for the pipe rack module installation work.  The Underlying Lawsuit further alleges that Eldeco, a sub-contractor of Patriot, was to provide all labor, materials, equipment, and supervision for the fabrication of pipes for the Project.  Robinson alleges that Patriot's work was faulty and defective.  Patriot, in turn, alleges that Eldeco's work was faulty and defective.

5.

Zurich seeks a declaration from this Court that Zurich has no duty to defend or indemnify Eldeco or Patriot under the Policy or otherwise pay for any defense costs associated with the Underlying Lawsuit.

## **THE PARTIES, JURISDICTION, AND VENUE**

6.

Plaintiff Zurich American Insurance Company is a foreign insurance corporation organized and existing under the laws of the State of New York, with its principle place of business in the State of Illinois.

7.

Defendant Patriot Modular, LLC is a citizen of Texas, being a limited liability company organized under the laws of the State of Texas, with its principal place of business in Pasadena, Texas. Its citizenship for diversity purposes is determined by the citizenship of all of its members. *Endurance American Specialty Insurance Company v. Morris Hardwick Schneider, LLC.* No. 1:16-CV-01375-ELR, 2018 WL 8949294 at * 1, (N.D. Ga., August 24, 2018). [1]  Patriot may be served with process upon its registered agent, Justin Kreft, at 1018 Highway 80 West, Suite 508, Pooler, Georgia 31322.

8.

Defendant Eldeco Pipe and Fabrication, LLC is a citizen of South Carolina, being a limited liability company organized under the laws of the State of South Carolina, with its principal place of business in Richburg, South Carolina.    Its citizenship for diversity purposes is determined by the citizenship of all of its

---

[1] Despite a review of the information available to Zurich, as well as the public information available, Zurich has been unable to ascertain the citizenship of every member of Patriot Modular, LLC. However, to the best of Zurich's knowledge, information, and belief, formed after a reasonable inquiry, none of Patriot's members are citizens of either New York or Illinois. Thus, Zurich alleges diversity jurisdiction on this basis. *See, e.g.*, *Lincoln Ben. Life Co. v. AEI Life, LLC*, 800 F.3d 99, 107 (3d Cir. 2015).

members. *Endurance American Specialty Insurance Company v. Morris Hardwick Schneider, LLC.* No. 1:16-CV-01375-ELR, 2018 WL 8949294 at * 1, (N.D. Ga., August 24, 2018). [2]  Eldeco may be served with process upon its registered agent, Allen McKinney, at 5751 Augusta Road, Greenville, South Carolina 29605.

9.

This Court has jurisdiction of this matter pursuant to 28 U.S.C. § 1332 because Zurich and all Defendants are citizens of different states and the amount in controversy exceeds $75,000.

10.

This declaratory judgment action is brought pursuant to 28 U.S.C. §§ 2201 and 2202, and Fed. R. Civ. P. 57.

---

[2] Despite a review of the information available to Zurich, as well as the public information available, Zurich has been unable to ascertain the citizenship of every member of Patriot Modular, LLC. However, to the best of Zurich's knowledge, information, and belief, formed after a reasonable inquiry, none of Patriot's members are citizens of either New York or Illinois. Thus, Zurich alleges diversity jurisdiction on this basis. *See, e.g.*, *Lincoln Ben. Life Co. v. AEI Life, LLC*, 800 F.3d 99, 107 (3d Cir. 2015).

11.

An actual justiciable controversy exists between Zurich, Patriot, and Eldeco within the meaning of 28 U.S.C. § 2201 regarding whether Zurich has any obligation to defend or indemnify Eldeco under the Policy.

12.

Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims at issue in this litigation occurred in this judicial district.  Venue is also proper in this Court pursuant to 28 U.S.C. § 1391(b)(3) because the defendants are subject to this Court's personal jurisdiction with respect to this action.

## FACTUAL BACKGROUND

13.

On March 30, 2016, IHI entered into an Engineering, Procurement, and Construction Agreement with Elba Liquefaction Company, LLC and Southern LNG Company, LLC (collectively, the "Owners") for the engineering, procurement, and construction of a natural gas liquefaction facility and related terminal upgrades on Elba Island near Savannah, Georgia (the "Project").

- 6 -

14.

On or about September 28, 2017, IHI entered into a subcontract with Robinson (the "IHI Subcontract"). The IHI Subcontract required Robinson to perform certain installation and other work on the Project.

15.

Robinson, in turn, entered into two subcontracts with Patriot dated June 2016 and October 2017 (the "Patriot Subcontracts"). The Patriot Subcontracts required Patriot to provide the piping for the modules at the Project, including procurement of materials, fabrication, welding, testing and inspection.

16.

On or about November 15, 2016, Patriot entered into a subcontract with Eldeco (the "Eldeco Subcontract"). The Eldeco Subcontract required Eldeco to provide all necessary labor, materials, equipment, supervision, and warranties necessary for pipe fabrication for the Project.

17.

Both the Patriot Subcontracts and the Eldeco Subcontract required the parties to perform all work necessary or incidental to the Project in accordance with the original IHI Subcontract.

18.

IHI alleges that Robinson's performance on the Project under the IHI Subcontract suffered from extensive workmanship deficiencies during the shop-based manufacturing and during the performance of its installation work on the Project.

19.

In turn, Robinson's Third-Party Complaint against Patriot alleges that Patriot breached its obligations under the Patriot Subcontract and is liable to Robinson for the $4.6 million Robinson was required to spend to repair its defective workmanship on the Project.

20.

In its Fourth-Party Complaint against Eldeco, Patriot alleges that Eldeco is liable to Patriot to the extent and amount that Patriot is found liable to Robinson for any defective work or breaches of contract which fell within Eldeco's scope of responsibility under the Eldeco Subcontract.

21.

Eldeco has tendered its defense for the Fourth-Party Complaint filed in the Underlying Lawsuit to Zurich.

## THE POLICY AND ITS RELEVANT PROVISIONS

22.

Zurich issued Policy No. GLO 8196150-19 to Eldeco for the policy period

beginning March 1, 2018 through March 1, 2019 (the "Policy").  The Policy's

Commercial General Liability Coverage is written on policy form CG 00 01 04 13.

23.

The Insuring Agreement in Coverage A of the Commercial General Liability

Coverage Form of the Policy provides, in relevant part, as follows:

### COMMERCIAL GENERAL LIABILITY
### COVERAGE FORM (CG 00 01 04 13)

\*      \*      \*

**SECTION I – COVERAGES**

**COVERAGE A BODILY INJURY AND PROPERTY
DAMAGE LIABILITY**

**1.    Insuring Agreement**

> **a.** We will pay those sums that the insured becomes
> legally obligated to pay as damages because of
> "bodily injury" or "property damage" to which
> this insurance applies.  We will have the right
> and duty to defend the insured against any "suit"
> seeking those damages.  However, we will have
> no duty to defend the insured against any "suit"

seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

**(1)** The amount we will pay for damages is limited as described in Section **III** – Limits of Insurance; and

**(2)** Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C**.

No other obligation or liability to pay sums or preform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** and **B**.

24.

The Policy also contains the following relevant exclusions in Coverage A:

**2.    Exclusions**
This insurance does not apply to:

**b.  Contractual Liability**
"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

**(1)** That the insured would have in the absence of the contract or agreement; or

**(2)** Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property

damage" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract", reasonable attorneys' fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage", provided:

> **(a)** Liability to such party for, or for the cost of, that party s defense has also been assumed in the same "insured contract"; and

> **(b)** Such attorneys' fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

**j.  Damage To Property**
"Property damage" to:

\* \* \*

**(5)**  That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

**(6)**  That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

\* \* \*

Paragraph **(6)** of this exclusion does not apply to "property damage" included in the "products-completed operations hazard."

**k. Damage To Your Product**

"Property damage" to "your product" arising out of it or any part of it.

### l.  Damage To Your Work

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

### m. Damage To Impaired Property Or Property Not Physically Injured

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

**(1)**  A defect, deficiency,inadequacy  or  dangerous condition in "your product" or "your work"; or

**(2)**  A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

25.

The Policy contains the following relevant definitions which are applicable to

Coverage A, B, and C:

### SECTION I – DEFINITIONS

- 12 -

\*\*\*

**13.** "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

**16.** "Products-completed operations hazard":

    **a.** Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

        **(1)** Products that are still in your physical possession; or

        **(2)** Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:

            **(a)** When all of the work called for in your contract has been completed.

            **(b)** When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

            **(c)** When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

    Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

\*\*\*

- 13 -

17. "Property damage" means:
  a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or
  b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

\*\*\*

21. "Your product":
  a. Means:
    (1) Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

      (a) You;
      (b) Others trading under your name; or
      (c) A person or organization whose business or assets you have acquired; and

    (2) Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products. :
  b. Includes:
    (1) Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

    (2) The providing of or failure to provide warnings or instructions.

\*\*\*

22. "Your work":
  a. Means:
    (1) Work or operations performed by you or on your behalf; and

      **(2)** Materials, parts or equipment furnished in connection with such work or operations.

  **b.** Includes**:**

      **(1)** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work"; and

      **(2)** The providing of or failure to provide warnings or instructions.

## <u>COUNT ONE: DECLARATORY JUDGMENT</u>

26.

Zurich incorporates herein by reference each of the allegations contained in Paragraphs 1 through 25 above.

27.

There is a real, substantial, and justifiable controversy between the parties concerning coverage for the Underlying Lawsuit under the Policy.

28.

Zurich is not obligated to defend or indemnify Eldeco for the claims asserted in the Underlying Lawsuit and is not obligated to defend, indemnify or otherwise pay Eldeco or Patriot for any defense costs associated with the Underlying Lawsuit, for one or more of the following reasons:

(a)    There is no "property damage" within the meaning of the Policy; and

(b)    The claims asserted in the Underlying Lawsuit are otherwise precluded and/or limited from coverage by the application of one or more provisions, exclusions, and/or endorsements contained in the Policy.

29.

Zurich, therefore, has no obligation to defend or indemnify Eldeco for the Underlying Lawsuit because the terms and conditions of the Policy have not been met.

30.

Zurich has no duty to defend, indemnify or otherwise pay Eldeco or Patriot for any defense costs associated with the Underlying Lawsuit because the terms and conditions of the Policy have not been met.

**RELIEF REQUESTED**

**WHEREFORE**, Plaintiff Zurich American Insurance Company requests that judgment be entered in this action:

A.    Declaring that Eldeco and Patriot are not entitled to coverage under the Policy for the claims asserted in the Underlying Lawsuit as would place any defense or indemnity obligation on Zurich;

- 16 -

B.      Declaring that Zurich has no duty to defend, indemnify or otherwise pay Eldeco or Patriot for defense costs in connection with the Underlying Lawsuit; and

C.      Awarding Zurich its costs, attorneys' fees and disbursements; and

D.      Declaring that Zurich is entitled to such further relief as may be necessary and proper.

Respectfully submitted this 2nd day of November, 2022.

*s/ Kenan G. Loomis*
Kenan G. Loomis
Georgia Bar No. 457865
Luciana Aquino
Georgia Bar No. 114433
COZEN O'CONNOR
1230 Peachtree Street, N.E.
The Promenade, Suite 400
Atlanta, GA  30309
Telephone:  404-572-2028
Facsimile:   866-591-9127
E-mail:   kloomis@cozen.com
               laquino@cozen.com

*Attorneys for Plaintiff Zurich American Insurance Company*

CERTIFICATION:  The above-signed counsel hereby certifies that this document was prepared in Times New Roman 14-point font and a 1.5 inch top margin in accordance with LR 5.1B, N.D.Ga.

# EXHIBIT  A



**COMMERCIAL INSURANCE**

| | COMMON POLICY DECLARATIONS |
|---|---|

| Policy Number | GLO 8196150-19 | Renewal of Number | GLO 8196150-18 |

| Named Insured and Mailing Address | Producer and Mailing Address |
|---|---|
| ELDECO, INC.<br>(SEE NAMED INSURED ENDT)<br>5751 AUGUSTA RD<br>GREENVILLE SC 29605 | MARSH & MCLENNAN AGENCY LLC<br>870 S PLEASANTBURG DR<br>GREENVILLE SC 29607-2455 |

Producer Code    52045-000

Policy Period: Coverage begins  03-01-2018  at 12:01 A.M.; Coverage ends 03-01-2019  at 12:01 A.M.

The name insured is  ☐ Individual    ☐ Partnership   ☒ Corporation

☐ Other:

This insurance is provided by one or more of the stock insurance companies which are members of the Zurich-American Insurance Group. The company that provides coverage is designated on each Coverage Part Common Declarations. The company or companies providing this insurance may be referred to in this policy as "The Company", we, us, or our. The address of the companies of the Zurich-American Insurance Group are provided on the next page.

**THIS POLICY CONSISTS OF THE FOLLOWING COVERAGE(S):**

GENERAL LIABILITY COVERAGE                                          PREMIUM $ ▇Redacted▇
issued by ZURICH AMERICAN INSURANCE COMPANY

VA-BIRTH-RELATED NEURO INJURY COMP FUND                                      $ ▇Redacted▇

| **THIS PREMIUM MAY BE SUBJECT TO AUDIT.**<br>This premium does not include Taxes and Surcharges. | **TOTAL** | **$** | ▇Redacted▇ |
|---|---|---|---|
| | | SEE INSTALLMENT SCHEDULE |
| **Taxes and Surcharges** | **TOTAL** | **$** | ▇Redacted▇ |
| | | SEE INSTALLMENT SCHEDULE |

The Form(s) and Endorsement(s) made a part of this policy at the time of issue are listed on the **SCHEDULE of FORMS and ENDORSEMENTS.**

Countersigned this        day of

                                                        Authorized Representative

THESE DECLARATIONS TOGETHER WITH THE COMMON POLICY CONDITIONS, COVERAGE PART DECLARATIONS, COVERAGE PART FORM(S), FORMS AND ENDORSEMENTS, IF ANY, ISSUED TO FORM A PART THEREOF, COMPLETE THE ABOVE NUMBERED POLICY.

U-GU-D-310-A (01/93)
Page 1 of 1

**Insured Name:**
**Policy Number:**
**Effective Date:**



### THIS DISCLOSURE IS ATTACHED TO AND MADE PART OF YOUR POLICY.

# DISCLOSURE OF IMPORTANT INFORMATION RELATING TO TERRORISM RISK INSURANCE ACT

### SCHEDULE*

| |
|---|
| Premium attributable to risk of loss from certified acts of terrorism for lines of insurance subject to TRIA: |
| INCLUDED |

\*Any information required to complete this Schedule, if not shown above, will be shown in the Declarations.

**A. Disclosure of Premium**

In accordance with the federal Terrorism Risk Insurance Act ("TRIA"), as amended, we are required to provide you with a notice disclosing the portion of your premium, if any, attributable to the risk of loss from terrorist acts certified under that Act for lines subject to TRIA. That portion of premium attributable is shown in the Schedule above. The premium shown in the Schedule above is subject to adjustment upon premium audit, if applicable.

**B. Disclosure of Federal Participation in Payment of Terrorism Losses**

The United States Government may pay a share of insured losses resulting from an act of terrorism. The federal share will decrease by 5% from 85% to 80% over a five year period while the insurer share increases by the same amount during the same period. The schedule below illustrates the decrease in the federal share:

January1, 2015 – December 31, 2015 federal share: 85%

January1, 2016 – December 31, 2016 federal share: 84%

January1, 2017 – December 31, 2017 federal share: 83%

January1, 2018 – December 31, 2018 federal share: 82%

January1, 2019 – December 31, 2019 federal share: 81%

January1, 2020 – December 31, 2020 federal share: 80%

**C. Disclosure of $100 Billion Cap on All Insurer and Federal Obligations**

If aggregate insured losses attributable to terrorist acts certified under TRIA exceed $100 billion in a calendar year (January 1 through December 31) and an insurer has met its deductible under the program, that insurer shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of Treasury.

**D. Availability**

As required by TRIA, we have made available to you for lines subject to TRIA coverage for losses resulting from acts of terrorism certified under TRIA with terms, amounts and limitations that do not differ materially from those for losses arising from events other than acts of terrorism.

**E. Definition of Act of Terrorism under TRIA**

TRIA defines "act of terrorism" as any act that is certified by the Secretary of the Treasury, in accordance with the provisions of the federal Terrorism Risk Insurance Act ("TRIA"), to be an act of terrorism. The Terrorism Risk Insurance Act provides that the Secretary of Treasury shall certify an act of terrorism:

1. To be an act of terrorism;

Copyright © 2015 Zurich American Insurance Company
Includes copyrighted material of Insurance Services Office, Inc., with its permission.

U-GU-630-D CW (01/15)
Page 1 of 2

2. To be a violent act or an act that is dangerous to human life, property or infrastructure;

3. To have resulted in damage within the United States, or outside of the United States in the case of an air carrier (as defined in section 40102 of Title 49, United States Code) or a United States flag vessel (or a vessel based principally in the United States, on which United States income tax is paid and whose insurance coverage is subject to regulation in the United States), or the premises of a United States mission; and

4. To have been committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

No act may be certified as an act of terrorism if the act is committed as part of the course of a war declared by Congress (except for workers' compensation) or if losses resulting from the act, in the aggregate for insurance subject to TRIA, do not exceed $5,000,000.

Copyright © 2015 Zurich American Insurance Company
Includes copyrighted material of Insurance Services Office, Inc., with its permission.



# CAP ON LOSSES FROM CERTIFIED ACTS OF TERRORISM

| Insureds Name | Policy Number | Effective Date | Endorsement Number |
|---|---|---|---|
| ELDECO, INC. | GLO 8196150-19 | 03/01/2018 | |

## THIS ENDORSEMENT CHANGES YOUR POLICY. PLEASE READ IT CAREFULLY.

This endorsement modifies your insurance:

**A. Cap on Losses From Certified Terrorism Losses**

"Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in accordance with provisions of the federal Terrorism Risk Insurance Act ("TRIA"), to be an act of terrorism. The Terrorism Risk Insurance Act provides that the Secretary of Treasury shall certify an act of terrorism:

1. To be an act of terrorism;

2. To be a violent act or an act that is dangerous to human life, property or infrastructure;

3. To have resulted in damage within the United States, or outside of the United States in the case of an air carrier (as defined in section 40102 of Title 49, United States Code) or a United States flag vessel (or a vessel based principally in the United States, on which United States income tax is paid and whose insurance coverage is subject to regulation in the United States), or the premises of a United States mission; and

4. To have been committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

No act may be certified as an act of terrorism if the act is committed as part of the course of a war declared by Congress (except for workers' compensation) or if losses resulting from the act, in the aggregate for insurance subject to TRIA, do not exceed $5,000,000.

If aggregate insured losses attributable to one or more "certified acts of terrorism" exceed $100 billion in a calendar year (January 1 through December 31) and we have met our insurer deductible under the Terrorism Risk Insurance Act, we shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of Treasury.

**B. Application of Other Exclusions**

The terms and limitations of a terrorism exclusion or any other exclusion, or the inapplicability or omission of a terrorism exclusion or any other exclusion, do not serve to create coverage which would otherwise be excluded, limited or restricted under this policy.

Copyright © 2015 Zurich American Insurance Company
Includes copyrighted material of Insurance Services Office, Inc., with its permission.

# Disclosure Statement



It is our pleasure to present the enclosed policy to you
for presentation to your customer.

**INSTRUCTION TO AGENT OR BROKER:**

WE REQUIRE THAT YOU TRANSMIT THE ATTACHED/ENCLOSED DISCLOSURE STATEMENT TO THE CUSTOMER
WITH THE POLICY.

Once again, thank you for your interest, and we look forward to meeting your needs and those of your customers.

# Disclosure Statement



**NOTICE OF DISCLOSURE FOR AGENT & BROKER COMPENSATION**

If you want to learn more about the compensation Zurich pays agents and brokers visit:

http://www.zurichnaproducercompensation.com

or call the following toll-free number: (866) 903-1192.

This Notice is provided on behalf of Zurich American Insurance Company

and its underwriting subsidiaries.

**Policy Number**
**GLO 8196150-19**

### SCHEDULE OF FORMS AND ENDORSEMENTS

**Zurich American Insurance Company**

Named Insured  ELDECO, INC.

Effective Date: 03-01-18
12:01 A.M., Standard Time

Agent Name  MARSH & MCLENNAN AGENCY LLC

Agent No.  52045-000

COMMON POLICY FORMS AND ENDORSEMENTS

| | | |
|---|---|---|
| U-GU-630-D CW | 01-15 | DISCLOSURE OF INFO RELATING TO TRIA |
| U-GU-767-B CW | 01-15 | CAP ON LOSS FROM CERTIFIED ACTS OF TERR |
| U-GU-D-310-A | 01-93 | COMMON POLICY DECLARATIONS |
| U-GU-619-A CW | 10-02 | SCHEDULE OF FORMS AND ENDORSEMENTS |
| U-GU-319-F | 01-09 | IMPORTANT NOTICE - IN WITNESS CLAUSE |
| U-GU-621-A CW | 10-02 | SCHEDULE OF NAMED INSURED(S) |
| U-GU-406-B | 07-15 | INSTALLMENT PREMIUM SCHEDULE |
| U-GU-1016-A CW | 06-10 | KNOWLEDGE BY POSITION OR DEPARTMENT |
| IL 00 17 | 11-98 | COMMON POLICY CONDITIONS |
| IL 00 21 | 09-08 | NUCLEAR ENERGY LIABILITY EXCLUSION ENDT |
| IL 02 49 | 09-08 | SOUTH CAROLINA CHANGES-CANC & NONRENL |
| IL 02 77 | 01-18 | LOUISIANA CHANGES-CANC & NONRENL |
| U-GU-298-B CW | 04-94 | CANCELLATION BY US |
| IL 00 03 | 09-08 | CALCULATION OF PREMIUM |
| U-GU-1191-A CW | 03-15 | SANCTIONS EXCLUSION ENDORSEMENT |

GENERAL LIABILITY FORMS AND ENDORSEMENTS

| | | |
|---|---|---|
| U-GL-107-A CW | 10-16 | BLANKET NOTIFICATION TO OTHERS OF CANC |
| U-GL-1446-A CW | 05-10 | NOTIFICATION TO OTHERS OF CANCELLATION |
| U-GL-1447-A CW | 05-10 | NOTIF TO OTHERS OF CANC NONR OR REDUCT |
| U-GL-1517-B CW | 04-13 | RECORD OR DISTRB OF MATRL OR INFO EXCL |
| U-GL-851-B CW | 06-04 | EMPLOYEE BENEFITS LIAB (OCCURRENCE) COV |
| U-GL-917-C CW | 08-04 | INCIDENTAL MEDICAL MALPRACTICE COV ENDT |
| U-GL-923-B CW | 06-04 | SILICA OR SILICA MIXED DUST EXCLUSION |
| U-GL-D-851-B CW | 09-04 | EMPLOYEE BENEFITS LIAB (OCCURRENCE) COV |
| U-GL-D-1115-B CW | 09-04 | COMMERCIAL GL COVERAGE PART DECLARATIONS |
| CG 00 01 | 04-13 | COMMERCIAL GENERAL LIABILITY COV FORM |
| U-GL-1114-A CW | 10-02 | ACCOUNT RATE COMPUTATION ENDORSEMENT |
| U-GL-1114-A CW | 10-02 | AMENDED GENERAL LIABILITY SUPPLEMENTAL COVERAGE ENDT |
| U-GL-1114-A CW | 10-02 | ADDITIONAL INSURED OWNERS, LESSEES CG 20 10 07/04 |
| U-GL-1114-A CW | 10-02 | ADDITIONAL INSURED OWNERS, LESSEES CG 20 37 07/04 |
| U-GL-1114-A CW | 10-02 | DESIGNATED PROJECTS GENERAL AGGREGATE LIMIT |
| UGL1171ACW | 07-03 | FUNGI OR BACTERIA EXCLUSION |
| U-GL-1175-F CW | 04-13 | ADDL INSD-AUTO-OWNERS LESSEES CONTRACTR |
| U-GL-1205-B CW | 01-08 | WELDING HEALTH HAZARD EXCLUSION |
| U-GL-1342-A CW | 10-07 | LEAD LIABILITY EXCLUSION |
| U-GL-1178ACW | 07-03 | ASBESTOS EXCLUSION ENDORSEMENT |
| CG 01 13 | 12-04 | TX CHANGES-EXPERIENCE RATING MOD |
| CG 01 79 | 07-10 | VIRGINIA CHANGES |
| CG 02 20 | 03-12 | FL CHANGES - CANCELLATION & NONRENEWAL |
| U-GL-852-A CW | 07-96 | EMPL BENEFITS LIAB (OCCURRENCE) DED ENDT |
| CG 20 01 | 04-13 | PRIMARY AND NONCONTRIBUTORY - OTHER INSD |
| CG 20 07 | 04-13 | ADDL INSD-ENGINEERS,ARCHITECTS OR SURVEY |
| CG 20 10 | 04-13 | ADDL INSD - OWNERS/LESSEES/CONTRACTORS |
| CG 20 32 | 04-13 | ADDL INSD-ENGRS ARCHTS OR SURVEYORS |
| CG 20 37. | 04-13 | ADDL INSD-OWNERS/LESSEES/CONTR-COMP OPS |
| CG 21 08 | 05-14 | EXCL-ACC/DISCL OF CONFI OR PERSONAL INFO |
| CG 21 41 | 11-85 | EXCL-INTERCOMPANY PRODUCTS SUITS |

**Policy Number**
**GLO 8196150-19**

### SCHEDULE OF FORMS AND ENDORSEMENTS

**Zurich American Insurance Company**

Named Insured  ELDECO, INC.

Effective Date: 03-01-18
12:01 A.M., Standard Time

Agent Name  MARSH & MCLENNAN AGENCY LLC

Agent No.  52045-000

| | | |
|---|---|---|
| CG 21 47 | 12-07 | EMPLOYMENT-RELATED PRACTICES EXCLUSION |
| CG 21 54 | 01-96 | EXCL-DESIGNATED OPERATIONS |
| CG 21 55 | 09-99 | TOTAL POLLUTION EXCL. WITH HOSTILE FIRE |
| CG 22 79 | 04-13 | EXCL-CONTRACTORS-PROF LIAB |

**U-GU-619-A CW (10/02)**



# Important Notice – In Witness Clause

In return for the payment of premium, and subject to the terms of this policy, coverage is provided as stated in this policy.

IN WITNESS WHEREOF, this Company has executed and attested these presents and, where required by law, has caused this policy to be countersigned by its duly Authorized Representative(s).


President                                                      Corporate Secretary

---

**QUESTIONS ABOUT YOUR INSURANCE?** Your agent or broker is best equipped to provide information about your insurance. Should you require additional information or assistance in resolving a complaint, call or write to the following (please have your policy or claim number ready):

Zurich in North America
Customer Inquiry Center
1299 Zurich Way
Schaumburg, Illinois 60196-1056
**1-800-382-2150** (Business Hours: 8am - 4pm [CT])
**Email**: info.source@zurichna.com

---

**Policy Number**
**GLO 8196150-19**

**SCHEDULE OF NAMED INSURED(S)**

# ZURICH AMERICAN INSURANCE COMPANY

| Named Insured | ELDECO, INC. | Effective Date: | 03-01-18 |
|---|---|---|---|
| | | 12:01 A.M., Standard Time | |
| Agent Name | MARSH & MCLENNAN AGENCY LLC | Agent No. | 52045-000 |

NAMED INSURED

```
ELDECO, INC.
L & R PROPERTIES
TECHNI-TEST, A DIVISION OF ELDECO, INC.
LAM REALTY, INC.
HORIZON INSURANCE GROUP, INC.
ELDECO OF GEORGIA, INC.
ELDECO PIPE AND FABRICATION, LLC
MCKINNEY BROTHERS PROPERTIES, LLC
```

**U-GU-621-A CW (10/02)**



**ZURICH**®

---

### INSTALLMENT PREMIUM SCHEDULE

The total premium shown in the Declarations of this policy is made payable in installments, on the dates and in the amounts shown below.

| NAMED INSURED | POLICY NUMBER | ENDORSEMENT NUMBER |
|---|---|---|
| ELDECO, INC. | GLO 8196150-19 | |

| PAYMENT DUE | STANDARD PREMIUM | TAXES PREPAID | TOTAL PREMIUM |
|---|---|---|---|
| 03/01/18 | $ Redacted | $ Redacted | $ Redacted |
| 06/01/18 | $ | $ | $ |
| 09/01/18 | $ | $ | $ |
| 12/01/18 | $ | $ | $ |
| TOTAL | $ | $ | $ |

Failure to pay the installment Premium by the Due Date shown shall constitute non-payment of premium for which we may cancel this policy.

U-GU-406-B (07/15)

# Knowledge by Position or Department



| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer No. | Add'l. Prem | Return Prem. |
|---|---|---|---|---|---|---|
| GLO 8196150-19 | 03/01/2018 | 03/01/2019 | | 52045000 | **INCL** | |

### THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

This endorsement modifies insurance provided under the:

**Business Auto Coverage Part**
**Commercial General Liability Coverage Part**
**Liquor Liability Coverage Part**
**Products/Completed Operations Liability Coverage Part**
**Railroad Protective Liability Coverage Part**

### SCHEDULE

| **Position or Department:** | ANY PERSON IN THE RISK MANAGEMENT DEPARTMENT, THE |
|---|---|
| | LAW DEPARTMENT OR ANY EXECUTIVE THAT IS RESPONSIBLE |
| | FOR RECEIVING OR ACTING UPON SAID INFORMATION. |
| | |

The following Condition is added:

**Knowledge By Your Employee**

1. Knowledge of an "accident", "occurrence", offense, "injury", claim, "suit" or loss by your employee will not in and of itself be considered your knowledge of the "accident", "occurrence", offense, "injury", claim, "suit" or loss unless an employee who:

   **a.** Holds a position; or

   **b.** Is a member of a department;

   shown in the Schedule of this endorsement receives such knowledge.

2. This endorsement does not apply unless the Schedule of this endorsement indicates at least one Position or Department.

All other terms and conditions of this policy remain unchanged.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

U-GU-1016-A CW (06/10)
Page 1 of 1

IL 00 17 11 98

# COMMON POLICY CONDITIONS

All Coverage Parts included in this policy are subject to the following conditions.

**A. Cancellation**

1. The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

2. We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

   a. 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

   b. 30 days before the effective date of cancellation if we cancel for any other reason.

3. We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

4. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

5. If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

6. If notice is mailed, proof of mailing will be sufficient proof of notice.

**B. Changes**

This policy contains all the agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

**C. Examination Of Your Books And Records**

We may examine and audit your books and records as they relate to this policy at any time during the policy period and up to three years afterward.

**D. Inspections And Surveys**

1. We have the right to:

   a. Make inspections and surveys at any time;

   b. Give you reports on the conditions we find; and

   c. Recommend changes.

2. We are not obligated to make any inspections, surveys, reports or recommendations and any such actions we do undertake relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. And we do not warrant that conditions:

   a. Are safe or healthful; or

   b. Comply with laws, regulations, codes or standards.

3. Paragraphs **1.** and **2.** of this condition apply not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.

4. Paragraph **2.** of this condition does not apply to any inspections, surveys, reports or recommendations we may make relative to certification, under state or municipal statutes, ordinances or regulations, of boilers, pressure vessels or elevators.

**E. Premiums**

The first Named Insured shown in the Declarations:

1. Is responsible for the payment of all premiums; and

2. Will be the payee for any return premiums we pay.

**F. Transfer Of Your Rights And Duties Under This Policy**

Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual named insured.

If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

 Copyright, Insurance Services Office, Inc., 1998

IL 00 21 09 08

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT
### (Broad Form)

This endorsement modifies insurance provided under the following:

COMMERCIAL AUTOMOBILE COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
FARM COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
MEDICAL PROFESSIONAL LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
UNDERGROUND STORAGE TANK POLICY

**1.** The insurance does not apply:

**A.** Under any Liability Coverage, to "bodily injury" or "property damage":

**(1)** With respect to which an "insured" under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada or any of their successors, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

**(2)** Resulting from the "hazardous properties" of "nuclear material" and with respect to which **(a)** any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or **(b)** the "insured" is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

**B.** Under any Medical Payments coverage, to expenses incurred with respect to "bodily injury" resulting from the "hazardous properties" of "nuclear material" and arising out of the operation of a "nuclear facility" by any person or organization.

**C.** Under any Liability Coverage, to "bodily injury" or "property damage" resulting from "hazardous properties" of "nuclear material", if:

**(1)** The "nuclear material" **(a)** is at any "nuclear facility" owned by, or operated by or on behalf of, an "insured" or **(b)** has been discharged or dispersed therefrom;

**(2)** The "nuclear material" is contained in "spent fuel" or "waste" at any time possessed, handled, used, processed, stored, transported or disposed of, by or on behalf of an "insured"; or

**(3)** The "bodily injury" or "property damage" arises out of the furnishing by an "insured" of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any "nuclear facility", but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion **(3)** applies only to "property damage" to such "nuclear facility" and any property thereat.

**2.** As used in this endorsement:

"Hazardous properties" includes radioactive, toxic or explosive properties.

"Nuclear material" means "source material", "special nuclear material" or "by-product material".

 © ISO Properties, Inc., 2007 ☐

"Source material", "special nuclear material", and "by-product material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof.

"Spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor".

"Waste" means any waste material **(a)** containing "by-product material" other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its "source material" content, and **(b)** resulting from the operation by any person or organization of any "nuclear facility" included under the first two paragraphs of the definition of "nuclear facility".

"Nuclear facility" means:

    **(a)** Any "nuclear reactor";

    **(b)** Any equipment or device designed or used for **(1)** separating the isotopes of uranium or plutonium, **(2)** processing or utilizing "spent fuel", or **(3)** handling, processing or packaging "waste";

    **(c)** Any equipment or device used for the processing, fabricating, or alloying of "special nuclear material" if at any time the total amount of such material in the custody of the "insured" at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

    **(d)** Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of "waste";

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations.

"Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material.

"Property damage" includes all forms of radioactive contamination of property.

     © ISO Properties, Inc., 2007      **IL 00 21 09 08**    ☐

IL 02 49 09 08

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# SOUTH CAROLINA CHANGES – CANCELLATION AND NONRENEWAL

This endorsement modifies insurance provided under the following:

CAPITAL ASSETS PROGRAM (OUTPUT POLICY) COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
COMMERCIAL INLAND MARINE COVERAGE PART
COMMERCIAL PROPERTY COVERAGE PART
CRIME AND FIDELITY COVERAGE PART
EMPLOYMENT-RELATED PRACTICES LIABILITY COVERAGE PART
EQUIPMENT BREAKDOWN COVERAGE PART
FARM COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
MEDICAL PROFESSIONAL LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS / COMPLETED OPERATIONS LIABILITY COVERAGE PART

**A.** Paragraphs **2.** and **3.** of **Cancellation** Common Policy Condition are replaced by the following:

**2.** We may cancel this policy by mailing or delivering to the first Named Insured and the agent, if any, written notice of cancellation at least:

**a.** 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

**b.** 30 days before the effective date of cancellation if we cancel for any other reason.

**3.** We will mail or deliver our notice to the first Named Insured's and agent's last known addresses.

**B.** The following is added to the **Cancellation** Common Policy Condition:

**7. Cancellation Of Policies In Effect For 120 Days Or More**

If this policy has been in effect for 120 days or more, or is a renewal or continuation of a policy we issued, we may cancel this policy only for one or more of the following reasons:

**a.** Nonpayment of premium;

**b.** Material misrepresentation of fact which, if known to us, would have caused us not to issue the policy;

**c.** Substantial change in the risk assumed, except to the extent that we should reasonably have foreseen the change or contemplated the risk in writing the policy;

**d.** Substantial breaches of contractual duties, conditions or warranties; or

**e.** Loss of our reinsurance covering all or a significant portion of the particular policy insured, or where continuation of the policy would imperil our solvency or place us in violation of the insurance laws of South Carolina.

Prior to cancellation for reasons permitted in this Item **e.,** we will notify the Commissioner, in writing, at least 60 days prior to such cancellation and the Commissioner will, within 30 days of such notification, approve or disapprove such action.

Any notice of cancellation will state the precise reason for cancellation.

© ISO Properties, Inc., 2007

□

**C.** The following is added and supersedes any provisions to the contrary:

**Nonrenewal**

1. We will not refuse to renew a policy issued for a term of more than one year, until expiration of its full term, if anniversary renewal has been guaranteed by additional premium consideration.

2. If we decide not to renew this policy, we will:

   **a.** Mail or deliver written notice of nonrenewal to the first Named Insured and agent, if any, before:

   **(1)** The expiration date of this policy, if the policy is written for a term of one year or less; or

   **(2)** An anniversary date of this policy, if the policy is written for a term of more than one year or for an indefinite term; and

   **b.** Provide at least:

   **(1)** 60 days' notice of nonrenewal, when nonrenewal is to become effective between November 1 and May 31; or

   **(2)** 90 days' notice of nonrenewal, when nonrenewal is to become effective between June 1 and October 31.

3. Any notice of nonrenewal will be mailed or delivered to the first Named Insured's and agent's last known addresses. If notice is mailed, proof of mailing will be sufficient proof of notice.

4. Any notice of nonrenewal will state the precise reason for nonrenewal.

© ISO Properties, Inc., 2007 **IL 02 49 09 08** ☐

IL 02 77 01 18

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# LOUISIANA CHANGES – CANCELLATION AND NONRENEWAL

This endorsement modifies insurance provided under the following:

CAPITAL ASSETS PROGRAM (OUTPUT POLICY) COVERAGE PART
COMMERCIAL AUTOMOBILE COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
COMMERCIAL INLAND MARINE COVERAGE PART
COMMERCIAL LIABILITY UMBRELLA COVERAGE PART
COMMERCIAL PROPERTY COVERAGE PART
CRIME AND FIDELITY COVERAGE PART
EMPLOYMENT-RELATED PRACTICES LIABILITY COVERAGE PART
EQUIPMENT BREAKDOWN COVERAGE PART
FARM COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
MEDICAL PROFESSIONAL LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
STANDARD PROPERTY POLICY

**A.** Paragraph **2.** of the **Cancellation** Common Policy Condition is replaced by the following, which applies unless Paragraph **B.** of this endorsement applies:

**2. Notice Of Cancellation**

**a. Cancellation Of Policies In Effect For Fewer Than 60 Days Which Are Not Renewals**

If this policy has been in effect for fewer than 60 days and is not a renewal of a policy we issued, we may cancel this policy for any reason, subject to the following:

**(1)** Cancellation for nonpayment of premium:

We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least 10 days before the effective date of cancellation.

**(2)** Cancellation for any other reason:

We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least 60 days before the effective date of cancellation.

**b. Cancellation Of Renewal Policies And New Policies In Effect For 60 Days Or More**

If this policy has been in effect for 60 days or more, or is a renewal of a policy we issued, we may cancel only for one or more of the following reasons:

**(1)** Nonpayment of premium;

**(2)** Fraud or material misrepresentation made by you or with your knowledge with the intent to deceive in obtaining the policy, continuing the policy, or in presenting a claim under the policy;

**(3)** Activities or omissions by you which change or increase any hazard insured against;

**(4)** Change in the risk which increases the risk of loss after we issued or renewed this policy, including an increase in exposure due to regulation, legislation, or court decision;

**(5)** Determination by the Commissioner of Insurance that the continuation of this policy would jeopardize our solvency or would place us in violation of the insurance laws of this or any other state;

**(6)** The insured's violation or breach of any policy terms or conditions; or

**(7)** Any other reasons that are approved by the Commissioner of Insurance.

We will mail or deliver written notice of cancellation under Paragraph **A.2.b.** to the first Named Insured at least:

**(a)** 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

**(b)** 30 days before the effective date of cancellation if we cancel for a reason described in Paragraphs **A.2.b.(2)** through **(7)** above.

**B.** Paragraph **2.** of the **Cancellation** Common Policy Condition is replaced by the following, which applies with respect to premium payments due on new and renewal policies, including installment payments:

**2. Notice Of Cancellation**

**a.** If your premium payment check or other negotiable instrument is returned to us or our agent or a premium finance company because it is uncollectible for any reason, we may cancel the policy subject to Paragraphs **B.2.b.** and **B.2.c.**

**b.** We may cancel the policy effective from the date the premium payment was due, by sending you written notice by certified mail, or by delivering such notice to you within 10 days of the date that we receive notice of the returned check or negotiable instrument.

**c.** The cancellation notice will also advise you that the policy will be reinstated effective from the date the premium payment was due, if you present to us a cashier's check or money order for the full amount of the returned check or other negotiable instrument within 10 days of the date that the cancellation notice was mailed.

**C.** With respect to the Coverage Parts and Policies to which this endorsement applies, except the Equipment Breakdown Coverage Part, Paragraph **5.** of the **Cancellation** Common Policy Condition is replaced by the following:

**5. Premium Refund**

If this policy is cancelled, we will return any premium refund due, subject to Paragraphs **C.5.a., C.5.b., C.5.c., C.5.d.** and **C.5.e.** The cancellation will be effective even if we have not made or offered a refund.

**a.** If the first Named Insured cancels, the refund will not be less than 90% of the pro rata unearned premium, rounded to the next higher whole dollar. The refund will be returned within 30 days after the effective date of cancellation.

We will send the refund to the first Named Insured and any mortgagee that has provided us with written notice of the percentage of the premium being funded with the mortgagee's own funds. The percentage of the unearned premium attributable to the mortgagee shall be returned to the mortgagee and the percentage of the unearned premium attributable to the first Named Insured shall be returned to the first Named Insured.

**b.** If we cancel, the refund will be pro rata and we will send the refund to the first Named Insured unless Paragraph **C.5.c.** or **C.5.d.** applies.

**c.** If we cancel based on Paragraph **B.2.** of this endorsement, we will return the premium due, if any, within 10 days after the expiration of the 10-day period referred to in **B.2.c.** If the policy was financed by a premium finance company, or if payment was advanced by the insurance agent, we will send the return premium directly to such payor.

**d.** With respect to any cancellation of the Commercial Auto Coverage Part, we will send the return premium, if any, to the premium finance company if the premium was financed by such company.

**e.** When return premium payment is sent to the premium finance company or the agent of the insured, we will provide notice to you, at the time of cancellation, that a return of unearned premium may be generated by the cancellation.

**D.** With respect to the Equipment Breakdown Coverage Part, Paragraph **5.** of the **Cancellation** Common Policy Condition is replaced by the following:

**5. Premium Refund**

If this policy is cancelled, we will return any premium refund due, subject to Paragraphs **D.5.a., D.5.b., D.5.c., D.5.d.** and **D.5.e.** The cancellation will be effective even if we have not made or offered a refund.

**a.** If we cancel, the refund will be pro rata.

© Insurance Services Office, Inc., 2017

**b.** If the first Named Insured cancels, the refund will not be less than 75% of the pro rata unearned premium, rounded to the next higher whole dollar. The refund will be returned within 30 days after the effective date of cancellation.

**c.** We will send the refund to the first Named Insured unless Paragraph **D.5.d.** applies.

**d.** If we cancel based on Paragraph **B.2.** of this endorsement, we will return the premium due, if any, within 10 days after the expiration of the 10-day period referred to in **B.2.c.** If the policy was financed by a premium finance company, or if payment was advanced by the insurance agent, we will send the return premium directly to such payor.

**e.** When return premium payment is sent to the premium finance company or the agent of the insured, we will provide notice to you, at the time of cancellation, that a return of unearned premium may be generated by the cancellation.

**E.** The **Premiums** Common Policy Condition is replaced by the following:

**Premiums**

**1.** The first Named Insured shown in the Declarations is responsible for the payment of all premiums.

**2.** We will pay return premiums, if any, to the first Named Insured, unless another person or entity is entitled to be the payee in accordance with Paragraph **C.** or **D.** of this endorsement.

**F.** Paragraph **f.** of the **Mortgageholders** Condition in the Commercial Property Coverage Part, Standard Property Policy and the Capital Assets Program (Output Policy) Coverage Part, and Paragraph **4.f.** of the **Mortgageholders** Condition in the Farm Coverage Part are replaced by the following:

If we cancel a policy that has been in effect for fewer than 60 days and is not a renewal of a policy we issued, we will give written notice to the mortgageholder, pledgee or other known person shown in the policy to have an insurable interest in any loss, at least:

**(1)** 10 days before the effective date of cancellation, if we cancel for nonpayment of premium; or

**(2)** 60 days before the effective date of cancellation, if we cancel for any other reason.

If we cancel a policy that has been in effect for 60 days or more, or is a renewal of a policy we issued, we will give written notice to the mortgageholder, pledgee or other known person shown in the policy to have an insurable interest in any loss, at least:

**(1)** 10 days before the effective date of cancellation, if we cancel for nonpayment of premium; or

**(2)** 30 days before the effective date of cancellation, if we cancel for any other reason.

**G.** The following is added and supersedes any other provision to the contrary:

**Nonrenewal**

**1.** If we decide not to renew this policy, we will mail or deliver written notice of nonrenewal to the first Named Insured, mortgageholder, pledgee or other known person shown in the policy to have an insurable interest in any loss, at least 60 days before its expiration date, or its anniversary date if it is a policy written for a term of more than one year or with no fixed expiration date.

**2.** We need not mail or deliver this notice if:

**a.** We or another company within our insurance group have offered to issue a renewal policy; or

**b.** You have obtained replacement coverage or have agreed in writing to obtain replacement coverage.

**3.** Any notice of nonrenewal will be mailed or delivered to the first Named Insured, mortgageholder, pledgee or other known person shown in the policy to have an insurable interest in any loss, at the last mailing address known to us. If notice is mailed, proof of mailing will be sufficient proof of notice.

**4.** Such notice to the insured shall include the insured's loss run information for the period the policy has been in force within, but not to exceed, the last three years of coverage.

**COMMERCIAL INSURANCE**

---

**CANCELLATION BY US**

---

<strong>This endorsement changes the policy. Please read it carefully.</strong>

This endorsement modifies insurance provided by the following:

BOILER AND MACHINERY COVERAGE FORM
BUSINESS AUTO COVERAGE FORM
COMMERCIAL CRIME COVERAGE FORM
COMMERCIAL GENERAL LIABILITY COVERAGE FORM
COMMERCIAL INLAND MARINE COVERAGE FORM
COMMERCIAL PROPERTY COVERAGE FORM
FARM COVERAGE FORM
GARAGE COVERAGE FORM
LIQUOR LIABILITY COVERAGE FORM
MOTOR CARRIER COVERAGE FORM
POLLUTION LIABILITY COVERAGE FORM
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE FORM
TRUCKERS COVERAGE FORM

<strong>SCHEDULE</strong>

**Number of Days' Notice:**  60

(If no entry appears above, information required to complete this Schedule will be shown in the Declarations as applicable to this endorsement.)

For any statutorily permitted reason other than nonpayment of premium, the number of days required for notice of cancellation, as provided in paragraph 2, of either the CANCELLATION Common Policy Condition or as amended by an applicable state cancellation endorsement, is increased to the number of days shown in the Schedule above.

IL 00 03 09 08

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# CALCULATION OF PREMIUM

This endorsement modifies insurance provided under the following:

CAPITAL ASSETS PROGRAM (OUTPUT POLICY) COVERAGE PART
COMMERCIAL AUTOMOBILE COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
COMMERCIAL INLAND MARINE COVERAGE PART
COMMERCIAL PROPERTY COVERAGE PART
CRIME AND FIDELITY COVERAGE PART
EMPLOYMENT-RELATED PRACTICES LIABILITY COVERAGE PART
EQUIPMENT BREAKDOWN COVERAGE PART
FARM COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
MEDICAL PROFESSIONAL LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART

The following is added:

The premium shown in the Declarations was computed based on rates in effect at the time the policy was issued. On each renewal, continuation, or anniversary of the effective date of this policy, we will compute the premium in accordance with our rates and rules then in effect.

 © ISO Properties, Inc., 2007 □

# SANCTIONS EXCLUSION ENDORSEMENT



**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY**

The following exclusion is added to the policy to which it is attached and supersedes any existing sanctions language in the policy, whether included in an Exclusion Section or otherwise:

SANCTIONS EXCLUSION

Notwithstanding any other terms under this policy, we shall not provide coverage nor will we make any payments or provide any service or benefit to any insured, beneficiary, or third party who may have any rights under this policy to the extent that such cover, payment, service, benefit, or any business or activity of the insured would violate any applicable trade or economic sanctions law or regulation.

The term policy may be comprised of common policy terms and conditions, the declarations, notices, schedule, coverage parts, insuring agreement, application, enrollment form, and endorsements or riders, if any, for each coverage provided.  Policy may also be referred to as contract or agreement.

We may be referred to as insurer, underwriter, we, us, and our, or as otherwise defined in the policy, and shall mean the company providing the coverage.

Insured may be referred to as policyholder, named insured, covered person, additional insured or claimant, or as otherwise defined in the policy, and shall mean the party, person or entity having defined rights under the policy.

These definitions may be found in various parts of the policy and any applicable riders or endorsements.

**ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED**



# Important Notice to Florida Policyholders

In the event you need to contact someone about this policy, for any reason, please contact your agent. If you have additional questions, you may contact the Zurich U.S. office at the following address and telephone number:

Customer Inquiry Center
Zurich North America
1299 Zurich Way
Schaumburg, IL 60196
800-382-2150

If you have been unable to contact or obtain satisfaction from your agent or company, you may contact the Florida Office of Insurance Regulation at:

Office of Insurance Regulation
200 East Gaines Street
Tallahassee, Florida 32399
850-413-3140

ATTACH THIS NOTICE TO YOUR POLICY:
This notice is for information only and does not become a part or condition of the attached document.



**Important Notice**
# Texas Safety Consultation Services

Zurich in North America has loss control services available at no additional charge.

If you would like additional information regarding these services, please contact us at the address, or phone listed below.

Zurich Services Corporation
Risk Engineering
1299 Zurich Way
Schaumburg, Illinois 60196-1056
1-800-982-5964

**By email:** **risk.engineering@zurichna.com**



# Blanket Notification To Others Of Cancellation

| THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY. |
|---|

| Policy No. GLO 8196150-19 | Effective Date: 03/01/2018 |
|---|---|

This endorsement modifies insurance provided under the:

**Commercial General Liability Coverage Part**

**A.** If we cancel this Coverage Part by written notice to the first Named Insured for any reason other than nonpayment of premium, we will deliver electronic notification that such Coverage Part has been cancelled to each person or organization shown in a Schedule provided to us by the First Named Insured. Such Schedule:

    **1.** Must be initially provided to us within 15 days:

        **a.** After the beginning of the policy period shown in the Declarations; or

        **b.** After this endorsement has been added to policy;

    **2.** Must contain the names and e-mail addresses of only the persons or organizations requiring notification that such Coverage Part has been cancelled;

    **3.** Must be in an electronic format that is acceptable to us; and

    **4.** Must be accurate.

    Such Schedule may be updated and provided to us by the First Named Insured during the policy period. Such updated Schedule must comply with Paragraphs **2. 3.** and **4.** above.

**B.** Our delivery of the electronic notification as described in Paragraph **A.** of this endorsement will be based on the most recent Schedule in our records as of the date the notice of cancellation is mailed or delivered to the first Named Insured. Delivery of the notification as described in Paragraph **A.** of this endorsement will be completed as soon as practicable after the effective date of cancellation to the first Named Insured.

**C.** Proof of e-mailing the electronic notification will be sufficient proof that we have complied with Paragraphs **A.** and **B.** of this endorsement.

**D.** Our delivery of electronic notification described in Paragraphs **A.** and **B.** of this endorsement is intended as a courtesy only. Our failure to provide such delivery of electronic notification will not:

    **1.** Extend the Coverage Part cancellation date;

    **2.** Negate the cancellation; or

    **3.** Provide any additional insurance that would not have been provided in the absence of this endorsement.

**E.** We are not responsible for the accuracy, integrity, timeliness and validity of information contained in the Schedule provided to us as described in Paragraphs **A.** and **B.** of this endorsement.

All other terms, conditions, provisions and exclusions of this policy remain the same.

Includes copyrighted material of Insurance Services Office, Inc. with its permission.

# Notification to Others of Cancellation



| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer No. | Add'l. Prem | Return Prem. |
|---|---|---|---|---|---|---|
| GLO 8196150-19 | 03/01/2018 | 03/01/2019 | | 52045000 | **INCL** | |

### THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

This endorsement modifies insurance provided under the:

**Commercial General Liability Coverage Part**
**Liquor Liability Coverage Part**
**Products/Completed Operations Liability Coverage Part**

**A.** If we cancel this Coverage Part(s) by written notice to the first Named Insured for any reason other than nonpayment of premium, we will mail or deliver a copy of such written notice of cancellation:

   **1.** To the name and address corresponding to each person or organization shown in the Schedule below; and

   **2.** At least 10 days prior to the effective date of the cancellation, as advised in our notice to the first Named Insured, or the longer number of days notice if indicated in the Schedule below.

**B.** If we cancel this Coverage Part(s) by written notice to the first Named Insured for nonpayment of premium, we will mail or deliver a copy of such written notice of cancellation to the name and address corresponding to each person or organization shown in the Schedule below at least 10 days prior to the effective date of such cancellation.

**C.** If notice as described in Paragraphs **A.** or **B.** of this endorsement is mailed, proof of mailing will be sufficient proof of such notice.

| SCHEDULE | |
|---|---|
| **Name and Address of Other Person(s) / Organization(s):** | **Number of Days Notice:** |
| CHOATE CONSTRUCTION COMPANY, 8200 ROBERTS DRIVE, STE 600 | 30 |
| ALTANTA, GA 30350 | |
| | |
| | |
| | |
| | |
| | |
| | |

All other terms and conditions of this policy remain unchanged.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.



# Notification to Others of Cancellation, Nonrenewal or Reduction of Insurance

| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer No. | Add'l. Prem | Return Prem. |
|---|---|---|---|---|---|---|
| GLO8196150-14 | 03/01/2012 | 03/01/2013 | 10/25/2013 | | Incl | |

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

This endorsement modifies insurance provided under the:

**Commercial General Liability Coverage Part**
**Liquor Liability Coverage Part**
**Products/Completed Operations Liability Coverage Part**

**A.** If we cancel or non-renew this Coverage Part(s) by written notice to the first Named Insured for any reason other than nonpayment of premium, we will mail or deliver a copy of such written notice of cancellation or non-renewal:

   **1.** To the name and address corresponding to each person or organization shown in the Schedule below; and

   **2.** At least 10 days prior to the effective date of the cancellation or non-renewal, as advised in our notice to the first Named Insured, or the longer number of days notice if indicated in the Schedule below.

**B.** If we cancel this Coverage Part(s) by written notice to the first Named Insured for nonpayment of premium, we will mail or deliver a copy of such written notice of cancellation to the name and address corresponding to each person or organization shown in the Schedule below at least 10 days prior to the effective date of such cancellation.

**C.** If coverage afforded by this Coverage Part(s) is reduced or restricted, except for any reduction of Limits of Insurance due to payment of claims, we will mail or deliver notice of such reduction or restriction:

   **1.** To the name and address corresponding to each person or organization shown in the Schedule below; and

   **2.** At least 10 days prior to the effective date of the reduction or restriction, or the longer number of days notice if indicated in the Schedule below.

**D.** If notice as described in Paragraphs **A.**, **B.** or **C.** of this endorsement is mailed, proof of mailing will be sufficient proof of such notice.

| SCHEDULE | |
|---|---|
| **Name and Address of Other Person(s) / Organization(s):** | **Number of Days Notice:** |
| **US Nitrogen, LLC** **Attn: Dana Miller** **471 Pottertown Road, Midway, TN 37809** | **90 Days** |
| **Austin Powder Co.** **Attn: Jeffrey Creel** **471 Pottertown Road, Midway, TN 37809** | **90 Days** |
| | |
| | |

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

All other terms and conditions of this policy remain unchanged.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

# Notification to Others of Cancellation, Nonrenewal or Reduction of Insurance



| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer No. | Add'l. Prem | Return Prem. |
|---|---|---|---|---|---|---|
| | | | | | | |

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

This endorsement modifies insurance provided under the:

**Commercial General Liability Coverage Part**
**Liquor Liability Coverage Part**
**Products/Completed Operations Liability Coverage Part**

**A.** If we cancel or non-renew this Coverage Part(s) by written notice to the first Named Insured for any reason other than nonpayment of premium, we will mail or deliver a copy of such written notice of cancellation or non-renewal:

    **1.** To the name and address corresponding to each person or organization shown in the Schedule below; and

    **2.** At least 10 days prior to the effective date of the cancellation or non-renewal, as advised in our notice to the first Named Insured, or the longer number of days notice if indicated in the Schedule below.

**B.** If we cancel this Coverage Part(s) by written notice to the first Named Insured for nonpayment of premium, we will mail or deliver a copy of such written notice of cancellation to the name and address corresponding to each person or organization shown in the Schedule below at least 10 days prior to the effective date of such cancellation.

**C.** If coverage afforded by this Coverage Part(s) is reduced or restricted, except for any reduction of Limits of Insurance due to payment of claims, we will mail or deliver notice of such reduction or restriction:

    **1.** To the name and address corresponding to each person or organization shown in the Schedule below; and

    **2.** At least 10 days prior to the effective date of the reduction or restriction, or the longer number of days notice if indicated in the Schedule below.

**D.** If notice as described in Paragraphs **A.**, **B.** or **C.** of this endorsement is mailed, proof of mailing will be sufficient proof of such notice.

| SCHEDULE | |
|---|---|
| **Name and Address of Other Person(s) / Organization(s):** | **Number of Days Notice:** |
| THS Constructors, Inc.<br>150 Executive Centre Drive, #B108<br>Greenville, SC 29615 | 30 Days |
| | |
| | |

All other terms and conditions of this policy remain unchanged.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.



# Notification to Others of Cancellation, Nonrenewal or Reduction of Insurance

| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer No. | Add'l. Prem | Return Prem. |
|---|---|---|---|---|---|---|
|  |  |  |  |  |  |  |

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the:

**Commercial General Liability Coverage Part**
**Liquor Liability Coverage Part**
**Products/Completed Operations Liability Coverage Part**

**A.** If we cancel or non-renew this Coverage Part(s) by written notice to the first Named Insured for any reason other than nonpayment of premium, we will mail or deliver a copy of such written notice of cancellation or non-renewal:

    **1.** To the name and address corresponding to each person or organization shown in the Schedule below; and

    **2.** At least 10 days prior to the effective date of the cancellation or non-renewal, as advised in our notice to the first Named Insured, or the longer number of days notice if indicated in the Schedule below.

**B.** If we cancel this Coverage Part(s) by written notice to the first Named Insured for nonpayment of premium, we will mail or deliver a copy of such written notice of cancellation to the name and address corresponding to each person or organization shown in the Schedule below at least 10 days prior to the effective date of such cancellation.

**C.** If coverage afforded by this Coverage Part(s) is reduced or restricted, except for any reduction of Limits of Insurance due to payment of claims, we will mail or deliver notice of such reduction or restriction:

    **1.** To the name and address corresponding to each person or organization shown in the Schedule below; and

    **2.** At least 10 days prior to the effective date of the reduction or restriction, or the longer number of days notice if indicated in the Schedule below.

**D.** If notice as described in Paragraphs **A.**, **B.** or **C.** of this endorsement is mailed, proof of mailing will be sufficient proof of such notice.

| SCHEDULE | |
|---|---|
| **Name and Address of Other Person(s) / Organization(s):** | **Number of Days Notice:** |
| Auburn University – Design & Construction Services<br>116 West Samford Ave., Auburn, AL 36849-5514 | 60 Days |
| Rodgers Builders<br>1710 East 4th St<br>Charlotte, NC 28204 | 30 Days |
| Hardin Construction Co., LLC<br>Attn: Risk Management<br>3301 Windy Ridge Pkwy, Ste 400<br>Atlanta, GA 30339 | 30 Days |

All other terms and conditions of this policy remain unchanged.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

# Recording And Distribution Of Material Or Information In Violation Of Law Exclusion



| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer No. | Add'l. Prem | Return Prem. |
|---|---|---|---|---|---|---|
| GLO 8196150-19 | 03/01/2018 | 03/01/2019 | | 52045000 | **INCL** | |

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

This endorsement modifies insurance provided under the:

**Commercial General Liability Coverage Part**

**A.** Exclusion **q. Recording And Distribution Of Material Or Information In Violation Of Law** of Paragraph **2. Exclusions** of Section **I – Coverage A – Bodily Injury And Property Damage Liability** is replaced by the following:

**2. Exclusions**

This insurance does not apply to:

**q. Recording And Distribution Of Material Or Information In Violation Of Law**

"Bodily injury" or "property damage" directly or indirectly arising out of or based upon any action or omission that violates or is alleged to violate:

**(1)** The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law;

**(2)** The CAN-SPAM Act of 2003, including any amendment of or addition to such law;

**(3)** The Fair Credit Reporting Act (FCRA), and any amendment of or addition to such law, including the Fair and Accurate Credit Transaction Act (FACTA); or

**(4)** Any federal, state or local statute, ordinance or regulation, other than the TCPA, CAN-SPAM Act of 2003 or FCRA and their amendments and additions, or any other legal liability, at common law or otherwise, that addresses, prohibits, or limits the printing, dissemination, disposal, monitoring, collecting, recording, use of, sending, transmitting, communicating or distribution of material or information.

**B.** Exclusion **p. Recording And Distribution Of Material Or Information In Violation Of Law** of Paragraph **2. Exclusions** of Section **I – Coverage B – Personal And Advertising Injury Liability** is replaced by the following:

**2. Exclusions**

This insurance does not apply to:

**p. Recording And Distribution Of Material Or Information In Violation Of Law**

"Personal and advertising injury" directly or indirectly arising out of or based upon any action or omission that violates or is alleged to violate:

**(1)** The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law;

**(2)** The CAN-SPAM Act of 2003, including any amendment of or addition to such law;

**(3)** The Fair Credit Reporting Act (FCRA), and any amendment of or addition to such law, including the Fair and Accurate Credit Transaction Act (FACTA); or

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

**(4)** Any federal, state or local statute, ordinance or regulation, other than the TCPA, CAN-SPAM Act of 2003 or FCRA and their amendments and additions, or any other legal liability, at common law or otherwise, that addresses, prohibits, or limits the printing, dissemination, disposal, monitoring, collecting, recording, use of, sending, transmitting, communicating or distribution of material or information.

All other terms and conditions of this policy remain unchanged.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

# Policyholder Notice - General Liability Access Or Disclosure Of Confidential Or Personal Information Exclusions



This Notice does not form part of your policy. No coverage is provided by this Notice nor can it be construed to replace any provision of your policy.  You should read your policy and review your Declarations page for complete information on the coverages you are provided.  If there is a conflict between the Policy and this Notice, **THE PROVISIONS OF THE POLICY SHALL PREVAIL**.

Carefully read your policy, including the endorsements attached to your policy.

This Notice provides information concerning the following new endorsements, which applies to your renewal policy being issued by us:

**CG 21 06 05 14 – Exclusion – Access Or Disclosure Of Confidential Or Personal Information And Data – related Liability – With Limited Bodily Injury Exception (For Use With The Commercial General Liability Coverage Part)**

When this endorsement is attached to your policy:

- Under Coverage **A** – Bodily Injury And Property Damage Liability, coverage is excluded for damages arising out of any access to or disclosure of any person's or organization's confidential or personal information. This is a reinforcement of coverage intent.

- Under Coverage **B** - Personal And Advertising Injury Liability, coverage is excluded for personal and advertising injury arising out of any access to or disclosure of any person's or organization's confidential or personal information. To the extent that any access or disclosure of confidential or personal information results in an oral or written publication that violates a person's right of privacy, this may result in a reduction in coverage.

**CG 21 07 05 14 – Exclusion – Access or Disclosure of Confidential or Personal Information and Data-related Liability – Limited Bodily Injury Exception Not Included (For Use With The Commercial General Liability Coverage Part)**

When this endorsement is attached to your policy:

- Under Coverage **A** – Bodily Injury And Property Damage Liability, coverage is excluded for damages arising out of any access to or disclosure of any person's or organization's confidential or personal information.  This is a reinforcement of coverage intent.  Coverage is also excluded for damages because of bodily injury arising out of loss of, loss of use of, damage to, corruption of, inability to access, or inability to manipulate electronic data.  This is a reduction of coverage.

- Under Coverage **B** – Personal and Advertising Injury Liability, coverage is excluded for personal and advertising injury arising out of any access to or disclosure of any person's or organization's confidential or personal information.  To the extent that any access or disclosure of confidential or personal information results in an oral or written publication that violates a person's right of privacy, this may result in a reduction of coverage.

**CG 21 08 05 14 – Exclusion – Access Or Disclosure Of Confidential Or Personal Information (Coverage B Only) (For Use With The Commercial General Liability Coverage Part)**

When this endorsement is attached to your policy, coverage is excluded for personal and advertising injury arising out of any access to or disclosure of any person's or organization's confidential or personal information.  To the extent that any access or disclosure of confidential or personal information results in an oral or written publication that violates a person's right of privacy, this may result in a reduction in coverage.

**CG 04 37 05 14 – Electronic Data Liability (For Use With The Commercial General Liability Coverage Part)**

With respect to damages arising out of any access to or disclosure of any person's or organization's confidential or personal information, when this endorsement is attached to your policy:

- Under Coverage **A** – Bodily Injury And Property Damage Liability, coverage is excluded for damages arising out of any access to or disclosure of any person's or organization's confidential or personal information. This is a reinforcement of coverage intent.

- Under Coverage **B** – Personal And Advertising injury Liability, coverage is excluded for personal and advertising injury arising out of any access to or disclosure of any person's or organization's confidential or personal information. To the extent that any access or disclosure of confidential or personal information results in an oral or written publication that violates a person's right of privacy, this may result in a reduction of coverage.

**CG 33 53 05 14 – Exclusion – Access Or Disclosure Of Confidential Or Personal Information And Data – related Liability – With Limited Bodily Injury Exception (For Use With The Owners and Contractors Protective Liability Coverage Part and Products/Completed Operations Coverage Parts)**

When this endorsement is attached to your policy, coverage is excluded for damages arising out of any access to or disclosure of any person's or organization's confidential or personal information. This is a reinforcement of coverage intent.

**CG 33 59 05 14 – Exclusion – Access Or Disclosure Of Confidential Or Personal Information And Data-related Liability – Limited Bodily Injury Exception Not Included (For Use With The Owners And Contractors Protective Liability and Products/Completed Operations Liability Coverage Parts)**

When this endorsement is attached to your policy, coverage is excluded for damages arising out of any access to or disclosure of any person's or organization's confidential or personal information. This is a reinforcement of coverage intent. Coverage is also excluded for damages because of bodily injury arising out of loss, loss of use of, damage to, corruption of, inability to access, or inability to manipulate electronic data. This is a reduction of coverage.

# Employee Benefits Liability - Occurrence Coverage Form



This Coverage Form provides *occurrence* coverage. Please read the entire form carefully.

**Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties, and what is and is not covered.**

**Throughout this policy, the words 'you' and 'your' refer to the Named Insured shown in the Declarations. The words 'we', 'us', and 'our' refer to the Company providing this insurance.**

Other words and phrases that appear in quotes have special meaning. Refer to the Definitions Section.

## Section I. Coverage - Employee Benefit Liability

### 1. Insuring Agreement

**A.** We will pay those sums that the "insured" becomes legally obligated to pay as damages because of any act, error, or omission of the "insured" in the "administration" of the "insured's" "employee benefit programs". We will have the right and duty to defend the "insured" against any suit seeking those damages. However, we will have no duty to defend the "insured" against any "suit" seeking damages for any act, error, or omission for which this insurance does not apply. We may, at our discretion, investigate any claim and settle any "suit" that may result; but:

**1.** The amount we pay for damages is limited as described in Section II. - Limits of Insurance of this Coverage Part; and

**2.** Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under this Employee Benefit Liability coverage.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments of this Coverage Part.

**B.** This insurance applies to an act, error or omission only if:

**1.** The act, error, or omission takes place in the "coverage territory";

**2.** The "insured" had no knowledge of and could not have reasonably foreseen any circumstances which might result in a claim or "suit"; and

**3.** The act, error, or omission occurs during the policy period.

### 2. Exclusions

This insurance does not apply to any:

**A.** "Bodily injury", "property damage" or "personal and advertising injury";

**B.** Any "claim" or "suit" arising out of any dishonest, fraudulent, criminal or malicious act;

**C.** Any "claim" or "suit" arising out of discrimination or humiliation;

**D.** Any "claim" or "suit" arising out of an insurer's or other provider's failure to perform its contract;

**E.** Any "claim" or "suit" arising out of your failure to comply with any workers compensation, unemployment insurance, social security, or disability benefits law;

**F.** Any "claim" or "suit" arising out of the failure of any of your "employee benefit plans" to meet obligations due to insufficient funds;

**G.** Any "claim" or "suit" arising out of:

**a.** Advice given to any person to participate or not participate in a plan or program included in "employee benefit programs";

**b.** The appointment of, or failure to appoint, any investment manager, administrator, trustee, actuary, advisor, counsel, accountant, custodian, or consultant;

**c.** Any investment activity, including the management, administration, or disposition of assets of your "employee benefit programs"; or

**d.** Failure of any investment to perform as represented by any "insured".

**H.** Any "claim or "suit" arising out of an "Insured's" liability as a fiduciary under:

a. The Employee Retirement Income Security Act of 1974 (PL93-406) and its amendments; or

b. The Internal Revenue Code of 1986 (including the Internal Revenue Code of 1954) and its amendments.

**3. Supplementary Payments**

We will pay, in addition to the applicable Limits of Insurance, with respect to any claim we investigate or settle or "suit" we defend:

A. All expenses incurred by us, all costs taxed against the "insured" in any "suit" defended by us, and all interest on the full amount of any judgment which accrues after entry of the judgment and before we have paid or tendered or deposited in court, that part of the judgment which does not exceed the limit of our liability.

B. Premiums on appeal bonds required and on bonds to release attachments in any "suit". We do not have to furnish these bonds.

C. All reasonable expenses incurred by the "insured" at our request to assist us in the investigation or defense of the claim or "suit", including actual loss of earnings up to $250 a day because of time off from work.

D. Prejudgment interest awarded against the "insured" on that part of the judgment we pay. If we make an offer to pay the applicable limit of insurance, we will not pay any prejudgment interest based on that period of time after the offer.

## II. Limits of Insurance

A. The Limits of Insurance shown in the Declarations and the rules below establish the most we will pay regardless of the number of:

(1) "Insureds";

(2) Claims made or "suits" brought; or

(3) "Employees" or dependents or beneficiaries of "employees" making claims or bringing "suits".

B. The Aggregate Limit is the most we will pay for all damages because of all "claims" or "suits" arising from the "administration" of your "employee benefit programs" during the policy period.

C. Subject to the Aggregate Limit provisions in **B.** above, the Each Act, Error, or Omission Limit is the most we will pay for all damages sustained by any one "employee", including the "employee's" dependents and beneficiaries, because of acts, errors, or omissions committed in the "administration" of your "employee benefit programs".

D. The limits of this Coverage Part apply separately to each consecutive annual period and to any remain-

ing period of less than 12 months starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

## III. Conditions

**A. Bankruptcy**

Bankruptcy or insolvency of the "insured" or the "insured's" estate will not relieve us of our obligations.

**B. Duties in the Event of an Act, Error, Omission, Claim or Suit**

(1) Regardless of whether the loss exceeds any applicable deductible amount, you must see to it that we are notified as soon as practicable of any act, error, or omission which may result in a claim. To the extent possible, notice should include:

a. How, when, and where the act, error, or omission took place;

b. The names and addresses of any injured "employee", dependents, or beneficiaries of any "employee" and witnesses.

(2) If a claim is received by any "insured", you must:

a. Immediately record the specifics of the claim and the date received; and

b. Notify us as soon as practicable.

You must see to it that we receive written notice of the claim as soon as practicable.

(3) You and any other involved "insured" must:

a. Immediately send us copies of any demands, notices, summonses, or legal papers received in connection with the claim or "suit";

b. Authorize us to obtain records and other information;

c. Cooperate with us in the investigation, settlement, or defense of the claim or "suit"; and

d. Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the "insured" because of injury to which this insurance may also apply.

(4) No insureds will, except at their own cost, voluntarily make a payment, assume any obligation, or incur any expense without our consent.

**C. Legal Action Against Us**

No person or organization has a right:

**(1)** To join us as a party or otherwise bring us into a "suit" asking for damages from an "insured"; or

**(2)** To sue us on this Coverage Part unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an "insured" obtained after an actual trial, but we will not be liable for damages that are not payable under the terms of this Coverage Part or that are in excess of the applicable limit of insurance. An agreed settlement means a settlement and release of liability signed by us, the "insured", and the claimant or the claimant's legal representative.

**D. Other Insurance**

**(1)** This Coverage Part is primary insurance, except when stated, to apply in excess of or contingent upon the absence of other insurance. When this insurance is primary and the insured has other insurance which applies to the loss on an excess or contingent basis, the amount of our liability under this Coverage Part shall not be reduced because of such other insurance.

**(2)** When both this insurance and other insurance apply to the loss on the same basis, whether primary, excess, or contingent, we shall not be liable for a greater proportion of the loss than that stated in the applicable contribution provision below:

**a. Contribution by Equal Shares**

If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach, each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

**b. Contribution by Limits**

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

**E. Separation of Insureds**

Except with respect to the Limits of Insurance and any rights or duties specifically assigned in this Coverage Part to the first Named Insured, this insurance applies:

**(1)** As if each Named Insured were the only Named Insured; and

**(2)** Separately to each "insured" against whom claim is made or "suit" is brought.

**F. Transfer Of Rights Of Recovery Against Others To Us**

If the "insured" has rights to recover all or part of any payment we have made under this Coverage Part, those rights are transferred to us. The "insured" must do nothing after loss to impair them. At our request, the "insured" will bring "suit" or transfer those rights to us and help us enforce them.

**IV. Definitions**

**A.** "Advertisement" means a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters. For the purposes of this definition:

**(1)** Notices that are published include material placed on the Internet or on similar electronic means of communication; and

**(2)** Regarding web-sites, only that part of a web-site that is about your goods, products or services for the purposes of attracting customers or supporters is considered an advertisement.

**B.** "Administration" means:

**(1)** Counseling "employees", including their dependents and beneficiaries, with respect to "employee benefit programs";

**(2)** Handling records in connection with "employee benefit programs"; or

**(3)** Effecting or terminating an "employee's" participation in a plan included in "employee benefit programs".

**C.** "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

**D.** "Coverage territory" means:

**(1)** The United States of America (including its territories and possessions), Puerto Rico, and Canada; or

**(2)** All parts of the world if the "insured's" responsibility to pay damages is determined in a "suit" on the merits, in the territory described in **D. (1)** above, or in a settlement to which we agree.

**E.** "Employee" means:

Your officers and employees, whether actively employed, disabled, or retired.

**F.** "Employee benefit programs" mean:

Group life insurance, group accident or health insurance, profit sharing plans, pension plans, employee stock subscription plans, workers compensation, unemployment insurance, salary continuation

plans, social security, disability benefits insurance, savings plans, vacation plans, or any other similar plans or programs.

**G.** "Insured" means:

You and any of your partners, executive officers, directors, members, stockholders or "employees", provided such "employee" is authorized to act in the "administration" of your "employee benefit programs".

**H.** "Personal and advertising injury" means:

Injury, including consequential "bodily injury", arising out of one or more of the following offenses:

**(1)** False arrest, detention, or imprisonment;

**(2)** Malicious prosecution;

**(3)** The wrongful eviction from wrongful entry into, or invasion of the right of private occupancy of, a room, dwelling, or premises that a person occupies by or on behalf of its owner, landlord, or lessor;

**(4)** Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products, or services; or

**(5)** Oral or written publication,' in any manner, of material that violates a person's right of privacy;

**(6)** The use of another's advertising idea in your "advertisement"; or

**(7)** Infringing upon another's copyright, trade dress or slogan in your "advertisement".

**I.** "Property damage" means:

**(1)** Physical injury to tangible property, including all resulting loss of use of that property.

**(2)** Loss of use of tangible property that is not physically injured.

For the purposes of this insurance, electronic data is not tangible property.

As used in this definition, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications, software, hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

**J.** "Suit" means:

A civil proceeding in which damages to which this insurance applies is alleged. "Suit" includes:

**(1)** An arbitration proceeding in which such damages are claimed and to which you must submit or do submit with our consent; or

**(2)** Any other alternative dispute resolution proceeding in which such damages are claimed and to which you submit with our consent.

# Incidental Medical Malpractice
# Coverage Endorsement

| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer | Add'l Prem. | Return Prem. |
|---|---|---|---|---|---|---|
| GLO 8196150-19 | 03/01/2018 | 03/01/2019 | | 52045000 | $ **INCL** | $ |

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the:

**Commercial General Liability Coverage Part**

**I.** Sections **2.a.(1)(d)** of **Section II. WHO IS AN INSURED** are deleted and replaced by the following:

    **2.** Each of the following is also an insured:

        **a.** Your "volunteer workers" only while performing duties related to the conduct of your business, or your "employees", other than either your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business. However, none of these "employees" or "volunteer workers" are insured for:

        **(1)** "Bodily injury" or "personal and advertising injury":

            **(d)** Arising out of his or her providing or failing to provide professional health care services, except any "bodily injury" or "personal and advertising injury" arising out of:

                **(1)** medical or paramedical services to persons performed by any physician, dentist, nurse, emergency medical technician, paramedic or other licensed medical care person employed by you to provide such services: or

                **(2)** emergency cardiopulmonary resuscitation (CPR) or first aid services performed by any other employee of yours who is not a licensed medical professional.

**II.** Any insurance coverage provided by this endorsement is excess over any other valid and collectible insurance.

Includes copyrighted material of Insurance Services Office, Inc. with its permission.

# Silica or Silica Mixed Dust Exclusion

| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer | Add'l Prem. | Return Prem. |
|---|---|---|---|---|---|---|
| GLO 8196150-19 | 03/01/2018 | 03/01/2019 | | 52045000 | $ **INCL** | $ |

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the:

**Commercial General Liability Coverage Part**
**Products-Completed Operations Liability Coverage Part**

The following additional exclusion is added to **2. Exclusions** of **Section I. Coverages**:

**2.   Exclusions**

This insurance does not apply to:

**Silica or Silica Mixed Dust**

A.   "Bodily injury", "property damage"  or  "personal and advertising injury" caused directly or indirectly, in whole or in part, by  the actual, alleged or threatened inhalation, ingestion, absorption, exposure to, existence of or presence of "silica"; or

B.   Loss, costs or expenses arising out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any manner responding to or assessing the effects of "silica" by any insured or by any other person or entity.

C.   For the purposes of this exclusion, the following definition applies:

"Silica" means:

(1)   Any form of crystalline or non-crystalline (amorphous) silica, silica particles, silica compounds, silica dust or silica mixed or combined with dust or other particles; or

**(2)**   Synthetic silica, including precipitated silica, silica gel, pyrogenic or fumed silica or silica-flour.

Includes copyrighted material of Insurance Services Office, Inc. with its permission.

**EMPLOYEE BENEFIT LIABILITY COVERAGE PART – OCCURRENCE DECLARATIONS**

Policy Number: GLO 8196150-19

Named Insured: ELDECO, INC.

Policy Period: Coverage begins 03-01-2018 at 12:01 A.M; Coverage ends 03-01-2019 at 12:01 A.M.

Producer Name: MARSH & MCLENNAN AGENCY LLC

Producer No. 52045-000

**Item 1.** Limits of Insurance

$ 1,000,000 Aggregate Limit
$ 1,000,000 Each Act, Error or Omission Limit

**Item 2.** Form of Business:
☐ Individual  ☐ Partnership  ☐ Joint Venture  ☒ Corporation
☐ Other _____

**Item 3.** Premium Schedule:

| Code No. | Premium Basis (Estimated Number of Employees) | Rate | | Advance Premium | |
|----------|-----------------------------------------------|------|--------------|-----------------|------|
| 92100 | IF ANY | $ INCL | Per Employee | $ | INCL |
| | | $ INCL | Flat Charge | $ | INCL |

Total Advance Premium For This Coverage Part:  $ INCL

Audit Period: ☒ Annual  ☐ Semi-annual  ☐ Quarterly  ☐ Monthly

**Forms And Endorsements Applicable To This Coverage Part:**

**SEE SCHEDULE OF FORMS AND ENDORSEMENTS**

## COMMERCIAL GENERAL LIABILITY COVERAGE PART DECLARATIONS

Policy Number: GLO 8196150-19

# ZURICH AMERICAN INSURANCE COMPANY

Named Insured ELDECO, INC.

Policy Period: Coverage begins  03-01-2018  at 12:01 A.M.; Coverage ends  03-01-2019  at 12:01 A.M.

Producer Name: MARSH & MCLENNAN AGENCY LLC          Producer No. 52045-000

**Item 1.** Business Description:

**Item 2.** Limits of Insurance

| | |
|---|---|
| GENERAL AGGREGATE LIMIT | $ __2,000,000__ |
| PRODUCTS-COMPLETED OPERATIONS AGGREGATE LIMIT | $ __2,000,000__ |
| EACH OCCURRENCE LIMIT | $ __1,000,000__ |
| DAMAGE TO PREMISES RENTED TO YOU LIMIT | $ __1,000,000__ Any one premises |
| MEDICAL EXPENSE LIMIT | $ __10,000__ Any one person |
| PERSONAL AND ADVERTISING INJURY LIMIT | $ __1,000,000__ Any one person or organization |

**Item 3.** Retroactive Date  **(CG 00 02 ONLY)**

This insurance does not apply to "bodily injury", "property damage" or "personal and advertising injury" offense which occurs before the Retroactive Date, if any, shown here:  NONE _____

(Enter Date or "None" if no Retroactive Date applies)

**Item 4.** Form of Business and Location Premises

Form of Business: CORPORATION

Location of All Premises You Own, Rent or Occupy: **See Schedule of Locations**

**Item 5.** Schedule of Forms and Endorsements

Form(s) and Endorsement(s) made a part of this Policy at time of issue:
**See Schedule of Forms and Endorsements**

**Item 6.** Premiums

| | | |
|---|---|---|
| Coverage Part Premium: | $ | Redacted |
| Other Premium: | | |
| Total Premium: | $ | Redacted |

U-GL-D-1115-B CW (9/04)

# COMMERCIAL GENERAL LIABILITY COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words "we", "us" and "our" refer to the company providing this insurance.

The word "insured" means any person or organization qualifying as such under Section **II** – Who Is An Insured.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section **V** – Definitions.

## SECTION I – COVERAGES

### COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY

**1. Insuring Agreement**

**a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

**(1)** The amount we will pay for damages is limited as described in Section **III** – Limits Of Insurance; and

**(2)** Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C**.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** and **B**.

**b.** This insurance applies to "bodily injury" and "property damage" only if:

**(1)** The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

**(2)** The "bodily injury" or "property damage" occurs during the policy period; and

**(3)** Prior to the policy period, no insured listed under Paragraph **1.** of Section **II** – Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

**c.** "Bodily injury" or "property damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph **1.** of Section **II** – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim, includes any continuation, change or resumption of that "bodily injury" or "property damage" after the end of the policy period.

**d.** "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph **1.** of Section **II** – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

**(1)** Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

**(2)** Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

**(3)** Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

**e.** Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury".

 © Insurance Services Office, Inc., 2012

## 2. Exclusions

This insurance does not apply to:

### a. Expected Or Intended Injury

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

### b. Contractual Liability

"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

**(1)** That the insured would have in the absence of the contract or agreement; or

**(2)** Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract", reasonable attorneys' fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage", provided:

  **(a)** Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and

  **(b)** Such attorneys' fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

### c. Liquor Liability

"Bodily injury" or "property damage" for which any insured may be held liable by reason of:

**(1)** Causing or contributing to the intoxication of any person;

**(2)** The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

**(3)** Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in:

  **(a)** The supervision, hiring, employment, training or monitoring of others by that insured; or

  **(b)** Providing or failing to provide transportation with respect to any person that may be under the influence of alcohol;

if the "occurrence" which caused the "bodily injury" or "property damage", involved that which is described in Paragraph **(1)**, **(2)** or **(3)** above.

However, this exclusion applies only if you are in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages. For the purposes of this exclusion, permitting a person to bring alcoholic beverages on your premises, for consumption on your premises, whether or not a fee is charged or a license is required for such activity, is not by itself considered the business of selling, serving or furnishing alcoholic beverages.

### d. Workers' Compensation And Similar Laws

Any obligation of the insured under a workers' compensation, disability benefits or unemployment compensation law or any similar law.

### e. Employer's Liability

"Bodily injury" to:

**(1)** An "employee" of the insured arising out of and in the course of:

  **(a)** Employment by the insured; or

  **(b)** Performing duties related to the conduct of the insured's business; or

**(2)** The spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraph **(1)** above.

This exclusion applies whether the insured may be liable as an employer or in any other capacity and to any obligation to share damages with or repay someone else who must pay damages because of the injury.

This exclusion does not apply to liability assumed by the insured under an "insured contract".

© Insurance Services Office, Inc., 2012

**f. Pollution**

**(1)** "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

**(a)** At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured. However, this subparagraph does not apply to:

**(i)** "Bodily injury" if sustained within a building and caused by smoke, fumes, vapor or soot produced by or originating from equipment that is used to heat, cool or dehumidify the building, or equipment that is used to heat water for personal use, by the building's occupants or their guests;

**(ii)** "Bodily injury" or "property damage" for which you may be held liable, if you are a contractor and the owner or lessee of such premises, site or location has been added to your policy as an additional insured with respect to your ongoing operations performed for that additional insured at that premises, site or location and such premises, site or location is not and never was owned or occupied by, or rented or loaned to, any insured, other than that additional insured; or

**(iii)** "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire";

**(b)** At or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste;

**(c)** Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for:

**(i)** Any insured; or

**(ii)** Any person or organization for whom you may be legally responsible; or

**(d)** At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the "pollutants" are brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor. However, this subparagraph does not apply to:

**(i)** "Bodily injury" or "property damage" arising out of the escape of fuels, lubricants or other operating fluids which are needed to perform the normal electrical, hydraulic or mechanical functions necessary for the operation of "mobile equipment" or its parts, if such fuels, lubricants or other operating fluids escape from a vehicle part designed to hold, store or receive them. This exception does not apply if the "bodily injury" or "property damage" arises out of the intentional discharge, dispersal or release of the fuels, lubricants or other operating fluids, or if such fuels, lubricants or other operating fluids are brought on or to the premises, site or location with the intent that they be discharged, dispersed or released as part of the operations being performed by such insured, contractor or subcontractor;

**(ii)** "Bodily injury" or "property damage" sustained within a building and caused by the release of gases, fumes or vapors from materials brought into that building in connection with operations being performed by you or on your behalf by a contractor or subcontractor; or

**(iii)** "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire".

**(e)** At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants".

 © Insurance Services Office, Inc., 2012

**(2)** Any loss, cost or expense arising out of any:

**(a)** Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

**(b)** Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

However, this paragraph does not apply to liability for damages because of "property damage" that the insured would have in the absence of such request, demand, order or statutory or regulatory requirement, or such claim or "suit" by or on behalf of a governmental authority.

**g. Aircraft, Auto Or Watercraft**

"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading".

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage" involved the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft that is owned or operated by or rented or loaned to any insured.

This exclusion does not apply to:

**(1)** A watercraft while ashore on premises you own or rent;

**(2)** A watercraft you do not own that is:

**(a)** Less than 26 feet long; and

**(b)** Not being used to carry persons or property for a charge;

**(3)** Parking an "auto" on, or on the ways next to, premises you own or rent, provided the "auto" is not owned by or rented or loaned to you or the insured;

**(4)** Liability assumed under any "insured contract" for the ownership, maintenance or use of aircraft or watercraft; or

**(5)** "Bodily injury" or "property damage" arising out of:

**(a)** The operation of machinery or equipment that is attached to, or part of, a land vehicle that would qualify under the definition of "mobile equipment" if it were not subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged; or

**(b)** The operation of any of the machinery or equipment listed in Paragraph **f.(2)** or **f.(3)** of the definition of "mobile equipment".

**h. Mobile Equipment**

"Bodily injury" or "property damage" arising out of:

**(1)** The transportation of "mobile equipment" by an "auto" owned or operated by or rented or loaned to any insured; or

**(2)** The use of "mobile equipment" in, or while in practice for, or while being prepared for, any prearranged racing, speed, demolition, or stunting activity.

**i. War**

"Bodily injury" or "property damage", however caused, arising, directly or indirectly, out of:

**(1)** War, including undeclared or civil war;

**(2)** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**(3)** Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**j. Damage To Property**

"Property damage" to:

**(1)** Property you own, rent, or occupy, including any costs or expenses incurred by you, or any other person, organization or entity, for repair, replacement, enhancement, restoration or maintenance of such property for any reason, including prevention of injury to a person or damage to another's property;

**(2)** Premises you sell, give away or abandon, if the "property damage" arises out of any part of those premises;

**(3)** Property loaned to you;

**(4)** Personal property in the care, custody or control of the insured;

**(5)** That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

**(6)** That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

Paragraphs **(1)**, **(3)** and **(4)** of this exclusion do not apply to "property damage" (other than damage by fire) to premises, including the contents of such premises, rented to you for a period of seven or fewer consecutive days. A separate limit of insurance applies to Damage To Premises Rented To You as described in Section **III** – Limits Of Insurance.

Paragraph **(2)** of this exclusion does not apply if the premises are "your work" and were never occupied, rented or held for rental by you.

Paragraphs **(3)**, **(4)**, **(5)** and **(6)** of this exclusion do not apply to liability assumed under a sidetrack agreement.

Paragraph **(6)** of this exclusion does not apply to "property damage" included in the "products-completed operations hazard".

**k. Damage To Your Product**

"Property damage" to "your product" arising out of it or any part of it.

**l. Damage To Your Work**

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

**m. Damage To Impaired Property Or Property Not Physically Injured**

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

**(1)** A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

**(2)** A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

**n. Recall Of Products, Work Or Impaired Property**

Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

**(1)** "Your product";

**(2)** "Your work"; or

**(3)** "Impaired property";

if such product, work, or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

**o. Personal And Advertising Injury**

"Bodily injury" arising out of "personal and advertising injury".

**p. Electronic Data**

Damages arising out of the loss of, loss of use of, damage to, corruption of, inability to access, or inability to manipulate electronic data.

However, this exclusion does not apply to liability for damages because of "bodily injury".

As used in this exclusion, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

**q. Recording And Distribution Of Material Or Information In Violation Of Law**

"Bodily injury" or "property damage" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

**(1)** The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law;

**(2)** The CAN-SPAM Act of 2003, including any amendment of or addition to such law;

**(3)** The Fair Credit Reporting Act (FCRA), and any amendment of or addition to such law, including the Fair and Accurate Credit Transactions Act (FACTA); or

**(4)** Any federal, state or local statute, ordinance or regulation, other than the TCPA, CAN-SPAM Act of 2003 or FCRA and their amendments and additions, that addresses, prohibits, or limits the printing, dissemination, disposal, collecting, recording, sending, transmitting, communicating or distribution of material or information.

Exclusions **c.** through **n.** do not apply to damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner. A separate limit of insurance applies to this coverage as described in Section **III** – Limits Of Insurance.

## COVERAGE B – PERSONAL AND ADVERTISING INJURY LIABILITY

**1. Insuring Agreement**

**a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply. We may, at our discretion, investigate any offense and settle any claim or "suit" that may result. But:

**(1)** The amount we will pay for damages is limited as described in Section **III** – Limits Of Insurance; and

**(2)** Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C.**

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** and **B.**

**b.** This insurance applies to "personal and advertising injury" caused by an offense arising out of your business but only if the offense was committed in the "coverage territory" during the policy period.

**2. Exclusions**

This insurance does not apply to:

**a. Knowing Violation Of Rights Of Another**

"Personal and advertising injury" caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury".

**b. Material Published With Knowledge Of Falsity**

"Personal and advertising injury" arising out of oral or written publication, in any manner, of material, if done by or at the direction of the insured with knowledge of its falsity.

**c. Material Published Prior To Policy Period**

"Personal and advertising injury" arising out of oral or written publication, in any manner, of material whose first publication took place before the beginning of the policy period.

**d. Criminal Acts**

"Personal and advertising injury" arising out of a criminal act committed by or at the direction of the insured.

**e. Contractual Liability**

"Personal and advertising injury" for which the insured has assumed liability in a contract or agreement. This exclusion does not apply to liability for damages that the insured would have in the absence of the contract or agreement.

**f. Breach Of Contract**

"Personal and advertising injury" arising out of a breach of contract, except an implied contract to use another's advertising idea in your "advertisement".

**g. Quality Or Performance Of Goods – Failure To Conform To Statements**

"Personal and advertising injury" arising out of the failure of goods, products or services to conform with any statement of quality or performance made in your "advertisement".

**h. Wrong Description Of Prices**

"Personal and advertising injury" arising out of the wrong description of the price of goods, products or services stated in your "advertisement".

 © Insurance Services Office, Inc., 2012

**i. Infringement Of Copyright, Patent, Trademark Or Trade Secret**

"Personal and advertising injury" arising out of the infringement of copyright, patent, trademark, trade secret or other intellectual property rights. Under this exclusion, such other intellectual property rights do not include the use of another's advertising idea in your "advertisement".

However, this exclusion does not apply to infringement, in your "advertisement", of copyright, trade dress or slogan.

**j. Insureds In Media And Internet Type Businesses**

"Personal and advertising injury" committed by an insured whose business is:

**(1)** Advertising, broadcasting, publishing or telecasting;

**(2)** Designing or determining content of web sites for others; or

**(3)** An Internet search, access, content or service provider.

However, this exclusion does not apply to Paragraphs **14.a., b.** and **c.** of "personal and advertising injury" under the Definitions section.

For the purposes of this exclusion, the placing of frames, borders or links, or advertising, for you or others anywhere on the Internet, is not by itself, considered the business of advertising, broadcasting, publishing or telecasting.

**k. Electronic Chatrooms Or Bulletin Boards**

"Personal and advertising injury" arising out of an electronic chatroom or bulletin board the insured hosts, owns, or over which the insured exercises control.

**l. Unauthorized Use Of Another's Name Or Product**

"Personal and advertising injury" arising out of the unauthorized use of another's name or product in your e-mail address, domain name or metatag, or any other similar tactics to mislead another's potential customers.

**m. Pollution**

"Personal and advertising injury" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

**n. Pollution-related**

Any loss, cost or expense arising out of any:

**(1)** Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

**(2)** Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

**o. War**

"Personal and advertising injury", however caused, arising, directly or indirectly, out of:

**(1)** War, including undeclared or civil war;

**(2)** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**(3)** Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**p. Recording And Distribution Of Material Or Information In Violation Of Law**

"Personal and advertising injury" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

**(1)** The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law;

**(2)** The CAN-SPAM Act of 2003, including any amendment of or addition to such law;

**(3)** The Fair Credit Reporting Act (FCRA), and any amendment of or addition to such law, including the Fair and Accurate Credit Transactions Act (FACTA); or

**(4)** Any federal, state or local statute, ordinance or regulation, other than the TCPA, CAN-SPAM Act of 2003 or FCRA and their amendments and additions, that addresses, prohibits, or limits the printing, dissemination, disposal, collecting, recording, sending, transmitting, communicating or distribution of material or information.

**COVERAGE C – MEDICAL PAYMENTS**

**1. Insuring Agreement**

**a.** We will pay medical expenses as described below for "bodily injury" caused by an accident:

**(1)** On premises you own or rent;

**(2)** On ways next to premises you own or rent; or

**(3)** Because of your operations;

provided that:

**(a)** The accident takes place in the "coverage territory" and during the policy period;

**(b)** The expenses are incurred and reported to us within one year of the date of the accident; and

**(c)** The injured person submits to examination, at our expense, by physicians of our choice as often as we reasonably require.

**b.** We will make these payments regardless of fault. These payments will not exceed the applicable limit of insurance. We will pay reasonable expenses for:

**(1)** First aid administered at the time of an accident;

**(2)** Necessary medical, surgical, X-ray and dental services, including prosthetic devices; and

**(3)** Necessary ambulance, hospital, professional nursing and funeral services.

**2. Exclusions**

We will not pay expenses for "bodily injury":

**a. Any Insured**

To any insured, except "volunteer workers".

**b. Hired Person**

To a person hired to do work for or on behalf of any insured or a tenant of any insured.

**c. Injury On Normally Occupied Premises**

To a person injured on that part of premises you own or rent that the person normally occupies.

**d. Workers' Compensation And Similar Laws**

To a person, whether or not an "employee" of any insured, if benefits for the "bodily injury" are payable or must be provided under a workers' compensation or disability benefits law or a similar law.

**e. Athletics Activities**

To a person injured while practicing, instructing or participating in any physical exercises or games, sports, or athletic contests.

**f. Products-Completed Operations Hazard**

Included within the "products-completed operations hazard".

**g. Coverage A Exclusions**

Excluded under Coverage **A.**

**SUPPLEMENTARY PAYMENTS – COVERAGES A AND B**

**1.** We will pay, with respect to any claim we investigate or settle, or any "suit" against an insured we defend:

**a.** All expenses we incur.

**b.** Up to $250 for cost of bail bonds required because of accidents or traffic law violations arising out of the use of any vehicle to which the Bodily Injury Liability Coverage applies. We do not have to furnish these bonds.

**c.** The cost of bonds to release attachments, but only for bond amounts within the applicable limit of insurance. We do not have to furnish these bonds.

**d.** All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or "suit", including actual loss of earnings up to $250 a day because of time off from work.

**e.** All court costs taxed against the insured in the "suit". However, these payments do not include attorneys' fees or attorneys' expenses taxed against the insured.

**f.** Prejudgment interest awarded against the insured on that part of the judgment we pay. If we make an offer to pay the applicable limit of insurance, we will not pay any prejudgment interest based on that period of time after the offer.

© Insurance Services Office, Inc., 2012 **CG 00 01 04 13**

**g.** All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable limit of insurance.

These payments will not reduce the limits of insurance.

**2.** If we defend an insured against a "suit" and an indemnitee of the insured is also named as a party to the "suit", we will defend that indemnitee if all of the following conditions are met:

**a.** The "suit" against the indemnitee seeks damages for which the insured has assumed the liability of the indemnitee in a contract or agreement that is an "insured contract";

**b.** This insurance applies to such liability assumed by the insured;

**c.** The obligation to defend, or the cost of the defense of, that indemnitee, has also been assumed by the insured in the same "insured contract";

**d.** The allegations in the "suit" and the information we know about the "occurrence" are such that no conflict appears to exist between the interests of the insured and the interests of the indemnitee;

**e.** The indemnitee and the insured ask us to conduct and control the defense of that indemnitee against such "suit" and agree that we can assign the same counsel to defend the insured and the indemnitee; and

**f.** The indemnitee:

  **(1)** Agrees in writing to:

    **(a)** Cooperate with us in the investigation, settlement or defense of the "suit";

    **(b)** Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the "suit";

    **(c)** Notify any other insurer whose coverage is available to the indemnitee; and

    **(d)** Cooperate with us with respect to coordinating other applicable insurance available to the indemnitee; and

  **(2)** Provides us with written authorization to:

    **(a)** Obtain records and other information related to the "suit"; and

    **(b)** Conduct and control the defense of the indemnitee in such "suit".

So long as the above conditions are met, attorneys' fees incurred by us in the defense of that indemnitee, necessary litigation expenses incurred by us and necessary litigation expenses incurred by the indemnitee at our request will be paid as Supplementary Payments. Notwithstanding the provisions of Paragraph **2.b.(2)** of Section **I** – Coverage **A** – Bodily Injury And Property Damage Liability, such payments will not be deemed to be damages for "bodily injury" and "property damage" and will not reduce the limits of insurance.

Our obligation to defend an insured's indemnitee and to pay for attorneys' fees and necessary litigation expenses as Supplementary Payments ends when we have used up the applicable limit of insurance in the payment of judgments or settlements or the conditions set forth above, or the terms of the agreement described in Paragraph **f.** above, are no longer met.

**SECTION II – WHO IS AN INSURED**

**1.** If you are designated in the Declarations as:

**a.** An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner.

**b.** A partnership or joint venture, you are an insured. Your members, your partners, and their spouses are also insureds, but only with respect to the conduct of your business.

**c.** A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers.

**d.** An organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

**e.** A trust, you are an insured. Your trustees are also insureds, but only with respect to their duties as trustees.

**2.** Each of the following is also an insured:

**a.** Your "volunteer workers" only while performing duties related to the conduct of your business, or your "employees", other than either your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business. However, none of these "employees" or "volunteer workers" are insureds for:

**(1)** "Bodily injury" or "personal and advertising injury":

**(a)** To you, to your partners or members (if you are a partnership or joint venture), to your members (if you are a limited liability company), to a co-"employee" while in the course of his or her employment or performing duties related to the conduct of your business, or to your other "volunteer workers" while performing duties related to the conduct of your business;

**(b)** To the spouse, child, parent, brother or sister of that co-"employee" or "volunteer worker" as a consequence of Paragraph **(1)(a)** above;

**(c)** For which there is any obligation to share damages with or repay someone else who must pay damages because of the injury described in Paragraph **(1)(a)** or **(b)** above; or

**(d)** Arising out of his or her providing or failing to provide professional health care services.

**(2)** "Property damage" to property:

**(a)** Owned, occupied or used by;

**(b)** Rented to, in the care, custody or control of, or over which physical control is being exercised for any purpose by;

you, any of your "employees", "volunteer workers", any partner or member (if you are a partnership or joint venture), or any member (if you are a limited liability company).

**b.** Any person (other than your "employee" or "volunteer worker"), or any organization while acting as your real estate manager.

**c.** Any person or organization having proper temporary custody of your property if you die, but only:

**(1)** With respect to liability arising out of the maintenance or use of that property; and

**(2)** Until your legal representative has been appointed.

**d.** Your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this Coverage Part.

**3.** Any organization you newly acquire or form, other than a partnership, joint venture or limited liability company, and over which you maintain ownership or majority interest, will qualify as a Named Insured if there is no other similar insurance available to that organization. However:

**a.** Coverage under this provision is afforded only until the 90th day after you acquire or form the organization or the end of the policy period, whichever is earlier;

**b.** Coverage **A** does not apply to "bodily injury" or "property damage" that occurred before you acquired or formed the organization; and

**c.** Coverage **B** does not apply to "personal and advertising injury" arising out of an offense committed before you acquired or formed the organization.

No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.

**SECTION III – LIMITS OF INSURANCE**

**1.** The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

**a.** Insureds;

**b.** Claims made or "suits" brought; or

**c.** Persons or organizations making claims or bringing "suits".

**2.** The General Aggregate Limit is the most we will pay for the sum of:

**a.** Medical expenses under Coverage **C;**

**b.** Damages under Coverage **A,** except damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard"; and

**c.** Damages under Coverage **B.**

© Insurance Services Office, Inc., 2012

**3.** The Products-Completed Operations Aggregate Limit is the most we will pay under Coverage **A** for damages because of "bodily injury" and "property damage" included in the "products-completed operations hazard".

**4.** Subject to Paragraph **2.** above, the Personal And Advertising Injury Limit is the most we will pay under Coverage **B** for the sum of all damages because of all "personal and advertising injury" sustained by any one person or organization.

**5.** Subject to Paragraph **2.** or **3.** above, whichever applies, the Each Occurrence Limit is the most we will pay for the sum of:

   **a.** Damages under Coverage **A;** and

   **b.** Medical expenses under Coverage **C**

   because of all "bodily injury" and "property damage" arising out of any one "occurrence".

**6.** Subject to Paragraph **5.** above, the Damage To Premises Rented To You Limit is the most we will pay under Coverage **A** for damages because of "property damage" to any one premises, while rented to you, or in the case of damage by fire, while rented to you or temporarily occupied by you with permission of the owner.

**7.** Subject to Paragraph **5.** above, the Medical Expense Limit is the most we will pay under Coverage **C** for all medical expenses because of "bodily injury" sustained by any one person.

The Limits of Insurance of this Coverage Part apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

## SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS

**1. Bankruptcy**

   Bankruptcy or insolvency of the insured or of the insured's estate will not relieve us of our obligations under this Coverage Part.

**2. Duties In The Event Of Occurrence, Offense, Claim Or Suit**

   **a.** You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:

   **(1)** How, when and where the "occurrence" or offense took place;

   **(2)** The names and addresses of any injured persons and witnesses; and

   **(3)** The nature and location of any injury or damage arising out of the "occurrence" or offense.

   **b.** If a claim is made or "suit" is brought against any insured, you must:

   **(1)** Immediately record the specifics of the claim or "suit" and the date received; and

   **(2)** Notify us as soon as practicable.

   You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

   **c.** You and any other involved insured must:

   **(1)** Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

   **(2)** Authorize us to obtain records and other information;

   **(3)** Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and

   **(4)** Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

   **d.** No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

**3. Legal Action Against Us**

   No person or organization has a right under this Coverage Part:

   **a.** To join us as a party or otherwise bring us into a "suit" asking for damages from an insured; or

   **b.** To sue us on this Coverage Part unless all of its terms have been fully complied with.

   A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured; but we will not be liable for damages that are not payable under the terms of this Coverage Part or that are in excess of the applicable limit of insurance. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

 © Insurance Services Office, Inc., 2012

**4. Other Insurance**

If other valid and collectible insurance is available to the insured for a loss we cover under Coverages **A** or **B** of this Coverage Part, our obligations are limited as follows:

**a. Primary Insurance**

This insurance is primary except when Paragraph **b.** below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in Paragraph **c.** below.

**b. Excess Insurance**

**(1)** This insurance is excess over:

**(a)** Any of the other insurance, whether primary, excess, contingent or on any other basis:

**(i)** That is Fire, Extended Coverage, Builder's Risk, Installation Risk or similar coverage for "your work";

**(ii)** That is Fire insurance for premises rented to you or temporarily occupied by you with permission of the owner;

**(iii)** That is insurance purchased by you to cover your liability as a tenant for "property damage" to premises rented to you or temporarily occupied by you with permission of the owner; or

**(iv)** If the loss arises out of the maintenance or use of aircraft, "autos" or watercraft to the extent not subject to Exclusion **g.** of Section **I —** Coverage **A —** Bodily Injury And Property Damage Liability.

**(b)** Any other primary insurance available to you covering liability for damages arising out of the premises or operations, or the products and completed operations, for which you have been added as an additional insured.

**(2)** When this insurance is excess, we will have no duty under Coverages **A** or **B** to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit". If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

**(3)** When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:

**(a)** The total amount that all such other insurance would pay for the loss in the absence of this insurance; and

**(b)** The total of all deductible and self-insured amounts under all that other insurance.

**(4)** We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not bought specifically to apply in excess of the Limits of Insurance shown in the Declarations of this Coverage Part.

**c. Method Of Sharing**

If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

**5. Premium Audit**

**a.** We will compute all premiums for this Coverage Part in accordance with our rules and rates.

**b.** Premium shown in this Coverage Part as advance premium is a deposit premium only. At the close of each audit period we will compute the earned premium for that period and send notice to the first Named Insured. The due date for audit and retrospective premiums is the date shown as the due date on the bill. If the sum of the advance and audit premiums paid for the policy period is greater than the earned premium, we will return the excess to the first Named Insured.

**c.** The first Named Insured must keep records of the information we need for premium computation, and send us copies at such times as we may request.

**6. Representations**

By accepting this policy, you agree:

**a.** The statements in the Declarations are accurate and complete;

© Insurance Services Office, Inc., 2012

**b.** Those statements are based upon representations you made to us; and

**c.** We have issued this policy in reliance upon your representations.

### 7. Separation Of Insureds

Except with respect to the Limits of Insurance, and any rights or duties specifically assigned in this Coverage Part to the first Named Insured, this insurance applies:

**a.** As if each Named Insured were the only Named Insured; and

**b.** Separately to each insured against whom claim is made or "suit" is brought.

### 8. Transfer Of Rights Of Recovery Against Others To Us

If the insured has rights to recover all or part of any payment we have made under this Coverage Part, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them.

### 9. When We Do Not Renew

If we decide not to renew this Coverage Part, we will mail or deliver to the first Named Insured shown in the Declarations written notice of the nonrenewal not less than 30 days before the expiration date.

If notice is mailed, proof of mailing will be sufficient proof of notice.

### SECTION V – DEFINITIONS

**1.** "Advertisement" means a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters. For the purposes of this definition:

**a.** Notices that are published include material placed on the Internet or on similar electronic means of communication; and

**b.** Regarding web sites, only that part of a web site that is about your goods, products or services for the purposes of attracting customers or supporters is considered an advertisement.

**2.** "Auto" means:

**a.** A land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment; or

**b.** Any other land vehicle that is subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged.

However, "auto" does not include "mobile equipment".

**3.** "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

**4.** "Coverage territory" means:

**a.** The United States of America (including its territories and possessions), Puerto Rico and Canada;

**b.** International waters or airspace, but only if the injury or damage occurs in the course of travel or transportation between any places included in Paragraph **a.** above; or

**c.** All other parts of the world if the injury or damage arises out of:

**(1)** Goods or products made or sold by you in the territory described in Paragraph **a.** above;

**(2)** The activities of a person whose home is in the territory described in Paragraph **a.** above, but is away for a short time on your business; or

**(3)** "Personal and advertising injury" offenses that take place through the Internet or similar electronic means of communication;

provided the insured's responsibility to pay damages is determined in a "suit" on the merits, in the territory described in Paragraph **a.** above or in a settlement we agree to.

**5.** "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

**6.** "Executive officer" means a person holding any of the officer positions created by your charter, constitution, bylaws or any other similar governing document.

**7.** "Hostile fire" means one which becomes uncontrollable or breaks out from where it was intended to be.

**8.** "Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:

**a.** It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

**b.** You have failed to fulfill the terms of a contract or agreement;

if such property can be restored to use by the repair, replacement, adjustment or removal of "your product" or "your work" or your fulfilling the terms of the contract or agreement.

**9.** "Insured contract" means:

**a.** A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";

**b.** A sidetrack agreement;

**c.** Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

**d.** An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

**e.** An elevator maintenance agreement;

**f.** That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

Paragraph **f.** does not include that part of any contract or agreement:

**(1)** That indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, road-beds, tunnel, underpass or crossing;

**(2)** That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

**(a)** Preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

**(b)** Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage; or

**(3)** Under which the insured, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in **(2)** above and supervisory, inspection, architectural or engineering activities.

**10.** "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker".

**11.** "Loading or unloading" means the handling of property:

**a.** After it is moved from the place where it is accepted for movement into or onto an aircraft, watercraft or "auto";

**b.** While it is in or on an aircraft, watercraft or "auto"; or

**c.** While it is being moved from an aircraft, watercraft or "auto" to the place where it is finally delivered;

but "loading or unloading" does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the aircraft, watercraft or "auto".

**12.** "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

**a.** Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

**b.** Vehicles maintained for use solely on or next to premises you own or rent;

**c.** Vehicles that travel on crawler treads;

**d.** Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

**(1)** Power cranes, shovels, loaders, diggers or drills; or

**(2)** Road construction or resurfacing equipment such as graders, scrapers or rollers;

**e.** Vehicles not described in Paragraph **a., b., c.** or **d.** above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

**(1)** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

**(2)** Cherry pickers and similar devices used to raise or lower workers;

**f.** Vehicles not described in Paragraph **a., b., c.** or **d.** above maintained primarily for purposes other than the transportation of persons or cargo.

 © Insurance Services Office, Inc., 2012

However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":

**(1)** Equipment designed primarily for:

**(a)** Snow removal;

**(b)** Road maintenance, but not construction or resurfacing; or

**(c)** Street cleaning;

**(2)** Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

**(3)** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

However, "mobile equipment" does not include any land vehicles that are subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged. Land vehicles subject to a compulsory or financial responsibility law or other motor vehicle insurance law are considered "autos".

**13.** "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

**14.** "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

**a.** False arrest, detention or imprisonment;

**b.** Malicious prosecution;

**c.** The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

**d.** Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

**e.** Oral or written publication, in any manner, of material that violates a person's right of privacy;

**f.** The use of another's advertising idea in your "advertisement"; or

**g.** Infringing upon another's copyright, trade dress or slogan in your "advertisement".

**15.** "Pollutants" mean any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

**16.** "Products-completed operations hazard":

**a.** Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

**(1)** Products that are still in your physical possession; or

**(2)** Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:

**(a)** When all of the work called for in your contract has been completed.

**(b)** When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

**(c)** When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

**b.** Does not include "bodily injury" or "property damage" arising out of:

**(1)** The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you, and that condition was created by the "loading or unloading" of that vehicle by any insured;

**(2)** The existence of tools, uninstalled equipment or abandoned or unused materials; or

**(3)** Products or operations for which the classification, listed in the Declarations or in a policy Schedule, states that products-completed operations are subject to the General Aggregate Limit.

**17.** "Property damage" means:

**a.** Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

**b.** Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

For the purposes of this insurance, electronic data is not tangible property.

As used in this definition, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

**18.** "Suit" means a civil proceeding in which damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies are alleged. "Suit" includes:

**a.** An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or

**b.** Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.

**19.** "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

**20.** "Volunteer worker" means a person who is not your "employee", and who donates his or her work and acts at the direction of and within the scope of duties determined by you, and is not paid a fee, salary or other compensation by you or anyone else for their work performed for you.

**21.** "Your product":

**a.** Means:

**(1)** Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

**(a)** You;

**(b)** Others trading under your name; or

**(c)** A person or organization whose business or assets you have acquired; and

**(2)** Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

**b.** Includes:

**(1)** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

**(2)** The providing of or failure to provide warnings or instructions.

**c.** Does not include vending machines or other property rented to or located for the use of others but not sold.

**22.** "Your work":

**a.** Means:

**(1)** Work or operations performed by you or on your behalf; and

**(2)** Materials, parts or equipment furnished in connection with such work or operations.

**b.** Includes:

**(1)** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work"; and

**(2)** The providing of or failure to provide warnings or instructions.

 © Insurance Services Office, Inc., 2012 **CG 00 01 04 13**

**Policy Number**
**GLO 8196150-19**

**ENDORSEMENT**

# ZURICH AMERICAN INSURANCE COMPANY

| Named Insured | ELDECO, INC. | Effective Date: | 03-01-18 |
|---|---|---|---|
| | | | 12:01 A.M., Standard Time |
| Agent Name | MARSH & MCLENNAN AGENCY LLC | Agent No. | 52045-000 |

**ACCOUNT RATE COMPUTATION ENDORSEMENT**

TOTAL PROJECTED SALES      RATE/$1000              DEPOSIT PREMIUM

PREM/OPS  100,000,000      Redacted          REFER TO U-GU-D-310A(1/93)

PRODUCTS  100,000,000

DEFINITION OF SALES:

THE PREMIUM CHARGED AT INCEPTION WILL BE AN AVERAGE RATE CHARGED
AGAINST THE INITIAL ANNUAL SALES REPORTED. SALES DO NOT INCLUDE
INTERCOMPANY SALES FOR PREMISES/OPS OR PRODUCTS/COMPLETED OPERATIONS.
THE FINAL PREMIUM WILL BE DETERMINED AT AUDIT.

**U-GL-1114-A CW (10/02)**



# Amended General Liability Supplemental Coverage Endorsement

| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer No. | Add'l. Prem | Return Prem. |
|---|---|---|---|---|---|---|
| | | | | | | |

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the:

**Commercial General Liability Coverage Part**

The following changes apply to this Coverage Part. However, endorsements attached to this Coverage Part will supersede any provisions to the contrary in this General Liability Supplemental Coverage Endorsement.

**A.   Broadened Named Insured**

1.   The following is added to Section **II – Who Is An Insured**:

Any organization of yours, other than a partnership or joint venture, which is not shown in the Declarations, and over which you maintain an ownership interest of more than 50% of such organization as of the effective date of this Coverage Part, will qualify as a Named Insured. However, such organization will not qualify as a Named Insured under this provision if it:

a.   Is newly acquired or formed during the policy period;

b.   Is also an insured under another policy, other than a policy written to apply specifically in excess of this Coverage Part; or

c.   Would be an insured under another policy but for its termination or the exhaustion of its limits of insurance.

Each such organization remains qualified as a Named Insured only while you maintain an ownership interest of more than 50% in the organization during the policy period.

2.   The last paragraph of Section **II** – Who Is An Insured does not apply to this provision to the extent that such paragraph would conflict with this provision.

**B.   Newly Acquired or Formed Organizations as Named Insureds**

1.   Paragraph **3.** of Section **II – Who Is An Insured** is replaced by the following:

3.   Any organization you newly acquire or form during the policy period, other than a partnership or joint venture, and over which you maintain an ownership interest of more than 50% of such organization, will qualify as a Named Insured if there is no other similar insurance available to that organization. However:

a.   Coverage under this provision is afforded only until the 180th day after you acquire or form the organization or the end of the policy period, whichever is earlier;

b.   Coverage **A** does not apply to "bodily injury" or "property damage" that occurred before you acquired or formed the organization; and

c.   Coverage **B** does not apply to "personal and advertising injury" arising out of an offense committed before you acquired or formed the organization.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

An additional premium will apply in accordance with our rules and rates in effect on the date you acquired or formed the organization.

**2.** The last paragraph of Section **II – Who Is An Insured** does not apply to this provision to the extent that such paragraph would conflict with this provision.

**C. Insured Status – Employees**

Paragraph **2.a.(1)** of Section **II – Who Is An Insured** is replaced by the following:

**2.** Each of the following is also an insured:

**a.** Your "volunteer workers" only while performing duties related to the conduct of your business, or your "employees", other than either your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business. However, none of these "employees" or "volunteer workers" are insureds for:

**(1)** "Bodily injury" or "personal and advertising injury":

**(a)** To you, to your partners or members (if you are a partnership or joint venture), to your members (if you are a limited liability company), to a co-"employee" while in the course of his or her employment or performing duties related to the conduct of your business, or to your other "volunteer workers" while performing duties related to the conduct of your business;

**(b)** To the spouse, child, parent, brother or sister of that co-"employee" or "volunteer worker" as a consequence of Paragraph **(1)(a)** above;

**(c)** For which there is any obligation to share damages with or repay someone else who must pay damages because of the injury described in Paragraphs **(1)(a)** or **(b)** above; or

**(d)** Arising out of his or her providing or failing to provide professional health care services.

However:

Paragraphs **(1)(a)** and **(1)(d)** do not apply to your "employees" or "volunteer workers", who are not employed by you or volunteering for you as health care professionals, for "bodily injury" arising out of "Good Samaritan Acts" while the "employee" or "volunteer worker" is performing duties related to the conduct of your business.

"Good Samaritan Acts" mean any assistance of a medical nature rendered or provided in an emergency situation for which no remuneration is demanded or received.

Paragraphs **(1)(a)**, **(b)** and **(c)** do not apply to any "employee" designated as a supervisor or higher in rank, with respect to "bodily injury" to co-"employees". As used in this provision, "employees" designated as a supervisor or higher in rank means only "employees" who are authorized by you to exercise direct or indirect supervision or control over "employees" or "volunteer workers" and the manner in which work is performed.

**D. Additional Insureds – Lessees of Premises**

**1.** Section **II – Who Is An Insured** is amended to include as an additional insured any person(s) or organization(s) who leases or rents a part of the premises you own or manage who you are required to add as an additional insured on this policy under a written contract or written agreement, but only with respect to liability arising out of your ownership, maintenance or repair of that part of the premises which is not reserved for the exclusive use or occupancy of such person or organization or any other tenant or lessee.

This provision does not apply after the person or organization ceases to lease or rent premises from you.

However, the insurance afforded to such additional insured:

**a.** Only applies to the extent permitted by law; and

**b.** Will not be broader than that which you are required by the written contract or written agreement to provide for such additional insured.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

2. With respect to the insurance afforded to the additional insureds under this endorsement, the following is added to Section **III – Limits Of Insurance**:

The most we will pay on behalf of the additional insured is the amount of insurance:

a. Required by the written contract or written agreement referenced in Subparagraph **D.1.** above (of this endorsement); or

b. Available under the applicable Limits of Insurance shown in the Declarations,

whichever is less.

This Paragraph **D.** shall not increase the applicable Limits of Insurance shown in the Declarations.

**E. Additional Insured – Vendors**

1. The following change applies if this Coverage Part provides insurance to you for "bodily injury" and "property damage" included in the "products-completed operations hazard":

Section **II – Who Is An Insured** is amended to include as an additional insured any person or organization (referred to throughout this Paragraph **E.** as vendor) who you have agreed in a written contract or written agreement, prior to loss, to name as an additional insured, but only with respect to "bodily injury" or "property damage" arising out of "your products" which are distributed or sold in the regular course of the vendor's business:

However, the insurance afforded to such vendor:

a. Only applies to the extent permitted by law; and

b. Will not be broader than that which you are required by the written contract or written agreement to provide for such vendor.

2. With respect to the insurance afforded to these vendors, the following additional exclusions apply:

a. The insurance afforded the vendor does not apply to:

(1) "Bodily injury" or "property damage" for which the vendor is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages that the vendor would have in the absence of the contract or agreement;

(2) Any express warranty unauthorized by you;

(3) Any physical or chemical change in the product made intentionally by the vendor;

(4) Repackaging, except when unpacked solely for the purpose of inspection, demonstration, testing, or the substitution of parts under instructions from the manufacturer, and then repackaged in the original container;

(5) Any failure to make such inspections, adjustments, tests or servicing as the vendor has agreed to make or normally undertakes to make in the usual course of business, in connection with the distribution or sale of the products;

(6) Demonstration, installation, servicing or repair operations, except such operations performed at the vendor's premises in connection with the sale of the product;

(7) Products which, after distribution or sale by you, have been labeled or relabeled or used as a container, part or ingredient of any other thing or substance by or for the vendor; or

(8) "Bodily injury" or "property damage" arising out of the sole negligence of the vendor for its own acts or omissions or those of its employees or anyone else acting on its behalf. However, this exclusion does not apply to:

(a) The exceptions contained in Subparagraphs **(4)** or **(6)**; or

(b) Such inspections, adjustments, tests or servicing as the vendor has agreed to make or normally undertakes to make in the usual course of business, in connection with the distribution or sale of the products.

b. This insurance does not apply to any insured person or organization, from whom you have acquired such products, or any ingredient, part or container, entering into, accompanying or containing such products.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

    **c.** This insurance does not apply to any of "your products" for which coverage is excluded under this Coverage Part.

  **3.** With respect to the insurance afforded to the vendor under this endorsement, the following is added to Section **III – Limits Of Insurance**:

    The most we will pay on behalf of the vendor is the amount of insurance:

    **a.** Required by the written contract or written agreement referenced in Subparagraph **E.1.** above (of this endorsement); or

    **b.** Available under the applicable Limits of Insurance shown in the Declarations,

    whichever is less.

    This Paragraph **E.** shall not increase the applicable Limits of Insurance shown in the Declarations.

**F.**   **Additional Insured – Managers, Lessors or Governmental Entity**

  **1.** Section **II – Who Is An Insured** is amended to include as an insured any person or organization who is a manager, lessor or governmental entity who you are required to add as an additional insured on this policy under a written contract, written agreement or permit, but only with respect to liability for "bodily injury", "property damage" or "personal and advertising injury" caused, in whole or in part, by:

    **a.** Your acts or omissions; or

    **b.** The acts or omission of those acting on your behalf; and

    resulting directly from:

    **a.** Operations performed by you or on your behalf for which the state or political subdivision has issued a permit;

    **b.** Ownership, maintenance, occupancy or use of premises by you; or

    **c.** Maintenance, operation or use by you of equipment leased to you by such person or organization.

    However, the insurance afforded to such additional insured:

    **a.** Only applies to the extent permitted by law; and

    **b.** Will not be broader than that which you are required by the written contract or written agreement to provide for such additional insured.

  **2.** This provision does not apply:

    **a.** Unless the written contract or written agreement has been executed, or the permit has been issued, prior to the "bodily injury", "property damage" or offense that caused "personal and advertising injury";

    **b.** To any person or organization included as an insured under Paragraph **3.** of Section **II** – Who Is An Insured;

    **c.** To any lessor of equipment if the "occurrence" or offense takes place after the equipment lease expires;

    **d.** To any:

      **(1)** Owners or other interests from whom land has been leased by you; or

      **(2)** Managers or lessors of premises, if:

        **(a)** The "occurrence" or offense takes place after the expiration of the lease or you cease to be a tenant in that premises;

        **(b)** The "bodily injury", "property damage" or "personal and advertising injury" arises out of the structural alterations, new construction or demolition operations performed by or on behalf of the manager or lessor; or

        **(c)** The premises are excluded under this Coverage Part.

  **3.** With respect to the insurance afforded to the additional insureds under this endorsement, the following is added to Section **III – Limits Of Insurance**:

    The most we will pay on behalf of the additional insured is the amount of insurance:

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

    **a.** Required by the written contract or written agreement referenced in Subparagraph **F.1.** above (of this endorsement); or

    **b.** Available under the applicable Limits of Insurance shown in the Declarations,

    whichever is less.

    This Paragraph **F.** shall not increase the applicable Limits of Insurance shown in the Declarations.

## G. Damage to Premises Rented or Occupied by You

**1.** The last paragraph under Paragraph **2. Exclusions** of Section **I – Coverage A – Bodily Injury And Property Damage Liability** is replaced by the following:

Exclusions **c.** through **n.** do not apply to damage by "specific perils" to premises while rented to you or temporarily occupied by you with permission of the owner. A separate Damage To Premises Rented To You Limit of Insurance applies to this coverage as described in Section **III – Limits Of Insurance.**

**2.** Paragraph **6.** of Section **III – Limits Of Insurance** is replaced by the following:

**6.** Subject to Paragraph **5.** above, the Damage To Premises Rented To You Limit is the most we will pay under Coverage **A** for damages because of "property damage" to any one premises while rented to you, or in the case of damage by one or more "specific perils" to any one premises, while rented to you or temporarily occupied by you with permission of the owner.

## H. Broadened Contractual Liability

The "insured contract" definition under the **Definitions** Section is replaced by the following:

"Insured contract" means:

**a.** A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by "specific perils" to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";

**b.** A sidetrack agreement;

**c.** Any easement or license agreement;

**d.** An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

**e.** An elevator maintenance agreement;

**f.** That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury", "property damage", or "personal and advertising injury" arising out of the offenses of false arrest, detention or imprisonment, to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

Paragraph **f.** does not include that part of any contract or agreement:

**(1)** That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

    **(a)** Preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

    **(b)** Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage; or

**(2)** Under which the insured, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in Paragraph **(1)** above and supervisory, inspection, architectural or engineering activities.

## I. Definition – Specific Perils

The following definition is added to the **Definitions** Section:

"Specific perils" means:

**a.** Fire;

**b.** Lightning;

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

   **c.** Explosion;

   **d.** Windstorm or hail;

   **e.** Smoke;

   **f.** Aircraft or vehicles;

   **g.** Vandalism;

   **h.** Weight of snow, ice or sleet;

   **i.** Leakage from fire extinguishing equipment, including sprinklers; or

   **j.** Accidental discharge or leakage of water or steam from any part of a system or appliance containing water or steam.

**J. Limited Contractual Liability Coverage – Personal and Advertising Injury**

   **1.** Exclusion **e.** of Section **I – Coverage B – Personal And Advertising Injury Liability** is replaced by the following:

      **2. Exclusions**

      This insurance does not apply to:

      **e. Contractual Liability**

      "Personal and advertising injury" for which the insured has assumed liability in a contract or agreement.

      This exclusion does not apply to:

      **(1)** Liability for damages that the insured would have in the absence of the contract or agreement; or

      **(2)** Liability for "personal and advertising injury" if:

        **(a)** The "personal and advertising injury" arises out of the offenses of false arrest, detention or imprisonment;

        **(b)** The liability pertains to your business and is assumed in a written contract or written agreement in which you assume the tort liability of another.  Tort liability means a liability that would be imposed by law in the absence of any contract or agreement; and

        **(c)** The "personal and advertising injury" occurs subsequent to the execution of the written contract or written agreement.

      Solely for purposes of liability so assumed in such written contract or written agreement, reasonable attorney fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "personal and advertising injury" described in Paragraph **(a)** above, provided:

      **(i)** Liability to such party for, or for the cost of, that party's defense has also been assumed in the same written contract or written agreement; and

      **(ii)** Such attorney fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

   **2.** Paragraph **2.d.** of Section **I – Supplementary Payments – Coverages A and B** is replaced by the following:

      **d.** The allegations in the "suit" and the information we know about the "occurrence" or offense are such that no conflict appears to exist between the interests of the insured and the interests of the indemnitee;

   **3.** The following is added to the paragraph directly following Paragraph **2.f.** of Section **I – Supplementary Payments – Coverages A and B**:

      Notwithstanding the provisions of Paragraph **2.e.(2)** of Section **I – Coverage B – Personal And Advertising Injury Liability**, such payments will not be deemed to be damages for "personal and advertising injury" and will not reduce the limits of insurance.

**K. Supplementary Payments**

   The following changes apply to **Supplementary Payments – Coverages A and B**:

   Paragraphs **1.b.** and **1.d.** are replaced by the following:

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

**b.** Up to $2,500 for the cost of bail bonds required because of accidents or traffic law violations arising out of the use of any vehicle to which the Bodily Injury Liability Coverage applies. We do not have to furnish these bonds.

**d.** All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or "suit", including actual loss of earnings up to $500 a day because of time off from work.

## L. Broadened Property Damage

**1. Property Damage to Contents of Premises Rented Short-Term**

The paragraph directly following Paragraph **(6)** in Exclusion **j.** of Section **I – Coverage A – Bodily Injury And Property Damage Liability** is replaced by the following:

Paragraphs **(1)**, **(3)** and **(4)** of this exclusion do not apply to "property damage" to premises (other than damage by "specific perils"), including "property damage" to the contents of such premises, rented to you under a rental agreement for a period of 14 or fewer consecutive days. A separate Limit of Insurance applies to Damage to Premises Rented to You as described in Section **III** – Limits Of Insurance.

**2. Elevator Property Damage**

**a.** The following is added to Exclusion **j.** of Section **I – Coverage A – Bodily Injury And Property Damage Liability**:

Paragraphs **(3)** and **(4)** of this exclusion do not apply to "property damage" arising out of the use of an elevator at premises you own, rent or occupy.

**b.** The following is added to Section **III – Limits Of Insurance**:

Subject to Paragraph **5.** above, the most we will pay under Coverage **A** for damages because of "property damage" to property loaned to you or personal property in the care, custody or control of the insured arising out of the use of an elevator at premises you own, rent or occupy is $25,000 per "occurrence".

**3. Property Damage to Borrowed Equipment**

**a.** The following is added to Exclusion **j.** of Section **I – Coverage A – Bodily Injury And Property Damage Liability**:

Paragraph **(4)** of this exclusion does not apply to "property damage" to equipment you borrow from others at a jobsite.

**b.** The following is added to Section **III – Limits Of Insurance**:

Subject to Paragraph **5.** above, the most we will pay under Coverage **A** for damages because of "property damage" to equipment you borrow from others is $25,000 per "occurrence".

## M. Definitions – Bodily Injury

The "bodily injury" definition under the **Definitions** Section is replaced by the following:

"Bodily injury" means bodily injury, sickness or disease sustained by a person, including mental anguish, mental injury, shock, fright or death sustained by that person which results from that bodily injury, sickness or disease.

## N. Insured Status – Amateur Athletic Participants

Section **II – Who Is An Insured** is amended to include as an insured any person you sponsor while participating in amateur athletic activities. However, no such person is an insured for:

**a.** "Bodily injury" to:

**(1)** Your "employee", "volunteer worker" or any person you sponsor while participating in such amateur athletic activities; or

**(2)** You, any partner or member (if you are a partnership or joint venture), or any member (if you are a limited liability company) while participating in such amateur athletic activities; or

**b.** "Property damage" to property owned, occupied or used by, rented to, in the care, custody or control of, or over which the physical control is being exercised for any purpose by:

**(1)** Your "employee", "volunteer worker" or any person you sponsor; or

**(2)** You, any partner or member (if you are a partnership or joint venture), or any member (if you are a limited liability company).

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

**O. Non-Owned Aircraft, Auto and Watercraft**

Exclusion **g.** of Section **I – Coverage A – Bodily Injury And Property Damage Liability** is replaced by the following:

**g. Aircraft, Auto Or Watercraft**

"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading".

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage" involved the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft that is owned or operated by or rented or loaned to any insured.

This exclusion does not apply to:

**(1)** A watercraft while ashore on premises you own or rent;

**(2)** A watercraft you do not own that is:

    **(a)** Less than 51 feet long; and

    **(b)** Not being used to carry persons for a charge;

**(3)** Parking an "auto" on, or on the ways next to, premises you own or rent, provided the "auto" is not owned by or rented or loaned to you or the insured;

**(4)** Liability assumed under any "insured contract" for the ownership, maintenance or use of aircraft or watercraft;

**(5)** An aircraft that is hired or chartered by you or loaned to you, with a paid and licensed crew, and is not owned in whole or in part by an insured; or

**(6)** "Bodily injury" or "property damage" arising out of:

    **(a)** The operation of machinery or equipment that is attached to, or part of, a land vehicle that would qualify under the definition of "mobile equipment" if it were not subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged; or

    **(b)** The operation of any of the machinery or equipment listed in Paragraph **f.(2)** or **f.(3)** of the definition of "mobile equipment".

**P. Definitions – Leased Worker, Temporary Worker and Labor Leasing Firm**

**1.** The "leased worker" and "temporary worker" definitions under the **Definitions** Section are replaced by the following:

"Leased worker" means a person leased to you by a "labor leasing firm" under a written agreement between you and the "labor leasing firm", to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker".

"Temporary worker" means a person who is furnished to you to support or supplement your work force during "employee" absences, temporary skill shortages, upturns or downturns in business or to meet seasonal or short-term workload conditions. "Temporary worker" does not include a "leased worker".

**2.** The following definition is added to the **Definitions** Section:

"Labor leasing firm" means any person or organization who hires out workers to others, including any:

**a.** Employment agency, contractor or services;

**b.** Professional employer organization; or

**c.** Temporary help service.

**Q. Definition – Mobile Equipment**

Paragraph **f.** of the "mobile equipment" definition under the **Definitions** Section is replaced by the following:

**f.** Vehicles not described in Paragraph **a.**, **b.**, **c.** or **d.** above maintained primarily for purposes other than the transportation of persons or cargo.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

However, self-propelled vehicles with the following types of permanently attached equipment, exceeding a combined gross vehicle weight of 1000 pounds, are not "mobile equipment" but will be considered "autos":

**(1)** Equipment designed primarily for:

    **(a)** Snow removal;

    **(b)** Road maintenance, but not construction or resurfacing; or

    **(c)** Street cleaning;

**(2)** Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

**(3)** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

**R. Definitions – Your Product and Your Work**

The "your product" and "your work" definitions under the **Definitions** Section are replaced by the following:

"Your product":

**a.** Means:

**(1)** Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

    **(a)** You;

    **(b)** Others trading under your name; or

    **(c)** A person or organization whose business or assets you have acquired; and

**(2)** Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

**b.** Includes:

**(1)** Warranties or representations made at any time with respect to the fitness, quality, durability, performance, use, handling, maintenance, operation or safety of "your product"; and

**(2)** The providing of or failure to provide warnings or instructions.

**c.** Does not include vending machines or other property rented to or located for the use of others but not sold.


"Your work":

**a.** Means:

**(1)** Work, services or operations performed by you or on your behalf; and

**(2)** Materials, parts or equipment furnished in connection with such work, services or operations.

**b.** Includes:

**(1)** Warranties or representations made at any time with respect to the fitness, quality, durability, performance, use, handling, maintenance, operation or safety of "your work"; and

**(2)** The providing of or failure to provide warnings or instructions.

**S.**    **Priority Condition**

The following paragraph is added to Section **III – Limits Of Insurance**:

In the event a claim is made or "suit" is brought against more than one insured seeking damages because of "bodily injury" or "property damage" caused by the same "occurrence" or "personal and advertising injury" caused by the same offense, we will apply the Limits of Insurance in the following order:

**(a)** You;

**(b)** Your "executive officers", partners, directors, stockholders, members, managers (if you are a limited liability company) or "employees"; and

**(c)** Any other insured in any order that we choose.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

**T. Duties in the Event of Occurrence, Offense, Claim or Suit Condition**

The following paragraphs are added to Paragraph **2. Duties In The Event Of Occurrence, Offense, Claim Or Suit** of Section **IV – Commercial General Liability Conditions**:

Notice of an "occurrence" or of an offense which may result in a claim under this insurance or notice of a claim or "suit" shall be given to us as soon as practicable after knowledge of the "occurrence", offense, claim or "suit" has been reported to any insured listed under Paragraph **1.** of Section **II** – Who Is An Insured or an "employee" authorized by you to give or receive such notice. Knowledge by other "employees" of an "occurrence", offense, claim or "suit" does not imply that you also have such knowledge.

In the event that an insured reports an "occurrence" to the workers compensation carrier of the Named Insured and this "occurrence" later develops into a General Liability claim, covered by this Coverage Part, the insured's failure to report such "occurrence" to us at the time of the "occurrence" shall not be deemed to be a violation of this Condition. You must, however, give us notice as soon as practicable after being made aware that the particular claim is a General Liability rather than a Workers Compensation claim.

**U. Other Insurance Condition**

Paragraphs **4.a.** and **4.b.(1)** of the Other Insurance Condition of Section **IV – Commercial General Liability Conditions** are replaced by the following:

**4. Other Insurance**

If other valid and collectible insurance is available to the insured for a loss we cover under Coverages **A** or **B** of this Coverage Part, our obligations are limited as follows:

**a. Primary Insurance**

This insurance is primary except when Paragraph **b.** below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in Paragraph **c.** below. However, this insurance is primary to and will not seek contribution from any other insurance available to an additional insured provided that:

**(1)** The additional insured is a Named Insured under such other insurance; and

**(2)** You are required by written contract or written agreement that this insurance be primary and not seek contribution from any other insurance available to the additional insured.

Other insurance includes any type of self insurance or other mechanism by which an insured arranges for funding of its legal liabilities.

**b. Excess Insurance**

**(1)** This insurance is excess over:

**(a)** Any of the other insurance, whether primary, excess, contingent or on any other basis:

**(i)** That is property insurance, Builder's Risk, Installation Risk or similar coverage for "your work";

**(ii)** That is property insurance purchased by you (including any deductible or self insurance portion thereof) to cover premises rented to you or temporarily occupied by you with permission of the owner;

**(iii)** That is insurance purchased by you (including any deductible or self insurance portion thereof) to cover your liability as a tenant for "property damage" to premises rented to you or temporarily occupied by you with permission of the owner;

**(iv)** If the loss arises out of the maintenance or use of aircraft, "autos" or watercraft to the extent not subject to Exclusion **g.** of Section **I** – Coverage **A** – Bodily Injury And Property Damage Liability; or

**(v)** That is property insurance (including any deductible or self insurance portion thereof) purchased by you to cover damage to:

Equipment you borrow from others; or

Property loaned to you or personal property in the care, custody or control of the insured arising out of the use of an elevator at premises you own, rent or occupy.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

**(b)** Any other primary insurance (including any deductible or self insurance portion thereof) available to the insured covering liability for damages arising out of the premises, operations, products, work or services for which the insured has been granted additional insured status either by policy provision or attachment of any endorsement. Other primary insurance includes any type of self insurance or other mechanism by which an insured arranges for funding of its legal liabilities.

**(c)** Any of the other insurance, whether primary, excess, contingent or on any other basis, available to an additional insured, in which the additional insured on our policy is also covered as an additional insured on another policy providing coverage for the same "occurrence", claim or "suit". This provision does not apply to any policy in which the additional insured is a Named Insured on such other policy and where our policy is required by written contract or written agreement to provide coverage to the additional insured on a primary and non-contributory basis.

## V. Unintentional Failure to Disclose All Hazards

Paragraph **6. Representations** of Section **IV – Commercial General Liability Conditions** is replaced by the following:

**6. Representations**

By accepting this policy, you agree:

**a.** The statements in the Declarations are accurate and complete;

**b.** Those statements are based upon representations you made to us; and

**c.** We have issued this policy in reliance upon your representations.

Coverage will continue to apply if you unintentionally:

**a.** Fail to disclose all hazards existing at the inception of this policy; or

**b.** Make an error, omission or improper description of premises or other statement of information stated in this policy.

You must notify us as soon as possible after the discovery of any hazards or any other information that was not provided to us prior to inception of this Coverage Part.

## W. Waiver of Right of Subrogation

Paragraph **8. Transfer Of Rights Of Recovery Against Others To Us** of Section **IV – Commercial General Liability Conditions** is replaced by the following:

**8. Transfer Of Rights Of Recovery Against Others To Us**

**a.** If the insured has rights to recover all or part of any payment we have made under this Coverage Part, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them.

**b.** If the insured waives its right to recover payments for injury or damage from another person or organization in a written contract executed prior to a loss, we waive any right of recovery we may have against such person or organization because of any payment we have made under this Coverage Part. The written contract will be considered executed when the insured's performance begins, or when it is signed, whichever happens first. This waiver of rights shall not be construed to be a waiver with respect to any other operations in which the insured has no contractual interest.

## X. Liberalization Condition

The following condition is added to Section **IV – Commercial General Liability Conditions**:

**Liberalization Clause**

If we revise this Coverage Part to broaden coverage without an additional premium charge, your policy will automatically provide the additional coverage as of the day the revision is effective in the state shown in the mailing address of your policy.

All other terms and conditions of this policy remain unchanged.

UGL 1114A CW
Page 11 of 11

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

| | Policy Number |
|---|---|

# ADDITIONAL INSURED – OWNERS, LESSEES OR CONTRACTORS – SCHEDULED PERSON OR ORGANIZATION ENDORSEMENT

## COMPANY

**Named Insured:**

**Effective Date:**
12:01 A.M., Standard Time

**Agent Name:**

**Agent No.**

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

### SCHEDULE

| Name Of Additional Insured Person(s) Or Organization(s): | Location(s) Of Covered Operations |
|---|---|
| Landmark Builders, but only when you are required to provide additional insured status in a written contract or written agreement executed prior to loss. | 1730 Kenersville Medical Parkway, Kernersville, NC 27284 |

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

**A.** **Section II – Who Is An Insured** is amended to include as an additional insured the person(s) or organization(s) shown in the Schedule, but only with respect to liability for "bodily injury", "property damage" or "personal and advertising injury" caused, in whole or in part, by:

  **1.** Your acts or omissions; or

  **2.** The acts or omissions of those acting on your behalf;

  in the performance of your ongoing operations for the additional insured(s) at the location(s) designated above.

  The insurance afforded to such additional insured only applies to the extent permitted by law.

**B.** With respect to the insurance afforded to these additional insureds, the following additional exclusions apply:

  This insurance does not apply to "bodily injury" or "property damage" occurring after:

  **1.** All work, including materials, parts or equipment furnished in connection with such work, on the project (other than service, maintenance or repairs) to be performed by or on behalf of the additional insured(s) at the location of the covered operations has been completed; or

  **2.** That portion of "your work" out of which the injury or damage arises has been put to its intended use by any person or organization other than another contractor or subcontractor engaged in performing operations for a principal as a part of the same project.

U-GL-1114-A CW (10/02)

| Policy Number |
|---|

# ADDITIONAL INSURED – OWNERS, LESSEES OR CONTRACTORS – COMPLETED OPERATIONS ENDORSEMENT

### COMPANY

**Named Insured:**

**Effective Date:**
12:01 A.M., Standard Time

**Agent Name:**

**Agent No.**

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

### SCHEDULE

| Name Of Additional Insured Person(s) Or Organization(s): | Location And Description of Completed Operations |
|---|---|
| Landmark Builders, but only when you are required to provide additional insured status in a written contract or written agreement executed prior to loss. | 1730 Kernersville Medical Parkway, Kernersville, NC 27284 |

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

**Section II – Who Is An Insured** is amended to include as an additional insured the person(s) or organization(s) shown in the Schedule, but only with respect to liability for "bodily injury" or "property damage" caused, in whole or in part, by "your work" at the location designated and described in the schedule of this endorsement performed for that  additional insured and included in the "products-completed operations hazard".

The insurance afforded to such additional insured only applies to the extent permitted by law.

U-GL-1114-A CW (10/02)

**Policy Number**
**GLO8196150**

# ADDITIONAL INSURED – OWNERS, LESSEES OR CONTRACTORS – SCHEDULED PERSON OR ORGANIZATION ENDORSEMENT

## ZURICH AMERICAN INSURANCE COMPANY

Named Insured: Eldeco, Inc.

**Effective Date: 03/01/2018**
12:01 A.M., Standard Time

Agent Name:     Marsh & McLennan Agency LLC

**Agent No. 52045-000**

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

### SCHEDULE

| Name Of Additional Insured Person(s) Or Organization(s): | Location(s) Of Covered Operations |
|---|---|
| DPR Construction, A General Partnership, but only if you are required to Provide additional insured status in a written Contract or written agreement executed prior to Loss and where that contract specifically Requires the ISO CG2010 07/2004 edition for or The equivalent of same | DPR Job# D5-I7003-00-LG Tennessee Manufacturing Plant – Phase 1 Location 3501 Jim Johnson Rd., Clarksville, TN 37040 |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. | |

A. **Section II – Who Is An Insured** is amended to include as an additional insured the person(s) or organization(s) shown in the Schedule, but only with respect to liability for "bodily injury", "property damage" or "personal and advertising injury" caused, in whole or in part, by:

   1. Your acts or omissions; or

   2. The acts or omissions of those acting on your behalf;

   in the performance of your ongoing operations for the additional insured(s) at the location(s) designated above.

   The insurance afforded to such additional insured only applies to the extent permitted by law.

B. With respect to the insurance afforded to these additional insureds, the following additional exclusions apply:

   This insurance does not apply to "bodily injury" or "property damage" occurring after:

   1. All work, including materials, parts or equipment furnished in connection with such work, on the project (other than service, maintenance or repairs) to be performed by or on behalf of the additional insured(s) at the location of the covered operations has been completed; or

   2. That portion of "your work" out of which the injury or damage arises has been put to its intended use by any person or organization other than another contractor or subcontractor engaged in performing operations for a principal as a part of the same project.

U-GL-1114-A CW (10/02)

| | Policy Number |
|---|---|

# ADDITIONAL INSURED – OWNERS, LESSEES OR CONTRACTORS – COMPLETED OPERATIONS ENDORSEMENT

## COMPANY

**Named Insured:**

**Effective Date:**
12:01 A.M., Standard Time

**Agent Name:**

**Agent No.**

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

### SCHEDULE

| Name Of Additional Insured Person(s) Or Organization(s): | Location And Description of Completed Operations |
|---|---|
| DPR Construction, A General Partnership, but only if you are required to Provide additional insured status in a written Contract or written agreement executed prior to Loss and where that contract specifically Requires the ISO CG2037 07/2004 edition for or The equivalent of same | DPR Job# D5-I7003-00-LG Tennessee Manufacturing Plant – Phase 1 Location 3501 Jim Johnson Rd., Clarksville, TN 37040 |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. | |

**Section II – Who Is An Insured** is amended to include as an additional insured the person(s) or organization(s) shown in the Schedule, but only with respect to liability for "bodily injury" or "property damage" caused, in whole or in part, by "your work" at the location designated and described in the schedule of this endorsement performed for that  additional insured and included in the "products-completed operations hazard".

The insurance afforded to such additional insured only applies to the extent permitted by law.

U-GL-1114-A CW (10/02)

**Policy Number**
**GLO 8196150-19**

**ENDORSEMENT**

# ZURICH AMERICAN INSURANCE COMPANY

| Named Insured | ELDECO, INC. | Effective Date: | 03-01-18 |
|---|---|---|---|
| | | | 12:01 A.M., Standard Time |
| Agent Name | MARSH & MCLENNAN AGENCY LLC | Agent No. | 52045-000 |

## DESIGNATED PROJECTS GENERAL AGGREGATE LIMIT

DESIGNATED PROJECTS GENERAL AGGREGATE LIMIT (ERODES ALL DESIGNATED PROJECTS TOTAL GENERAL AGGREGATE LIMIT)

PROJECTS:EACH CONSTRUCTION PROJECT WHERE THE NAMED INSURED IS PERFORMING OPERATIONS EXCEPT WHERE THE NAMED INSURED IS PERFORMING OPERATIONS THAT ARE INSURED UNDER A WRAP UP OR ANY OTHER COMBINED, CONSOLIDATED OR SIMILAR INSURANCE PROGRAM. ALL DESIGNATED PROJECTS TOTAL GENERAL AGGREGATE LIMIT: $10,000,000

**U-GL-1114-A CW (10/02)**

# Fungi Or Bacteria Exclusion Endorsement

| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer | Add'l Prem. | Return Prem. |
|---|---|---|---|---|---|---|
| GLO 8196150-19 | 03/01/2018 | 03/01/2019 | | 52045000 | $  **INCL** | $ |

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the:

**Commercial General Liability Coverage Part**

The following exclusion is added to paragraph **2. Exclusions** of **Section I. – Coverage A – Bodily Injury And Property Damage Liability** and paragraph **2. Exclusions** of **Coverage B – Personal And Advertising Injury Liability**:

**2.  Exclusions**

This insurance does not apply to:

**Fungi or Bacteria**

A.  "Bodily injury", "property damage" or "personal and advertising injury " caused directly or indirectly by the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of any:

1.  "Fungi"or "bacteria"; or

2.   Substance, vapor or gas produced by or arising out of any "fungi" or "bacteria".

B.  Loss, costs or expenses arising out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to, or assessing the effects of, "fungi" or "bacteria", by any insured or by any other person or entity.

C.  For the purposes of this exclusion, the following definitions are added:

1.  "Fungi" means any type or form of fungus, including mold or mildew and any mycotoxins, "spores", scents or byproducts produced or released by fungi.

2.  "Spores" means reproductive bodies produced by or arising out of  "fungi".

3.  "Bacteria" means any type or form of bacteria and any materials or substances that are produced or released by bacteria.

This exclusion does not apply to any "fungi"or "bacteria" that are, are on, or are contained in, an edible good or edible product intended for human or animal consumption.

Includes copyrighted material of Insurance Services Office, Inc. with its permission



# Additional Insured – Automatic – Owners, Lessees Or Contractors

| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer No. | Add'l. Prem | Return Prem. |
|---|---|---|---|---|---|---|
| GLO 8196150-19 | 03/01/2018 | 03/01/2019 | | 52045000 | **INCL** | |

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

**Named Insured**: ELDECO, INC.
**Address (including ZIP Code)**:
5751 AUGUSTA RD
GREENVILLE, SC    29605
This endorsement modifies insurance provided under the:
**Commercial General Liability Coverage Part**

**A.** Section **II – Who Is An Insured** is amended to include as an additional insured any person or organization whom you are required to add as an additional insured on this policy under a written contract or written agreement. Such person or organization is an additional insured only with respect to liability for "bodily injury", "property damage" or "personal and advertising injury" caused, in whole or in part, by:

**1.** Your acts or omissions; or

**2.** The acts or omissions of those acting on your behalf,

in the performance of your ongoing operations or "your work" as included in the "products-completed operations hazard", which is the subject of the written contract or written agreement.

However, the insurance afforded to such additional insured:

**1.** Only applies to the extent permitted by law; and

**2.** Will not be broader than that which you are required by the written contract or written agreement to provide for such additional insured.

**B.** With respect to the insurance afforded to these additional insureds, the following additional exclusion applies:

This insurance does not apply to:

"Bodily injury", "property damage" or "personal and advertising injury" arising out of the rendering of, or failure to render, any professional architectural, engineering or surveying services including:

**a.** The preparing, approving or failing to prepare or approve maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

**b.** Supervisory, inspection, architectural or engineering activities.

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage", or the offense which caused the "personal and advertising injury", involved the rendering of or the failure to render any professional architectural, engineering or surveying services.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

**C.** The following is added to Paragraph **2.** Duties In The Event Of Occurrence, Offense, Claim Or Suit of Section **IV – Commercial General Liability Conditions**:

The additional insured must see to it that:

**1.** We are notified as soon as practicable of an "occurrence" or offense that may result in a claim;

**2.** We receive written notice of a claim or "suit" as soon as practicable; and

**3.** A request for defense and indemnity of the claim or "suit" will promptly be brought against any policy issued by another insurer under which the additional insured may be an insured in any capacity. This provision does not apply to insurance on which the additional insured is a Named Insured if the written contract or written agreement requires that this coverage be primary and non-contributory.

**D.** For the purposes of the coverage provided by this endorsement:

**1.** The following is added to the Other Insurance Condition of Section **IV – Commercial General Liability Conditions**:

**Primary and Noncontributory insurance**

This insurance is primary to and will not seek contribution from any other insurance available to an additional insured provided that:

**a.** The additional insured is a Named Insured under such other insurance; and

**b.** You are required by written contract or written agreement that this insurance be primary and not seek contribution from any other insurance available to the additional insured.

**2.** The following paragraph is added to Paragraph **4.b.** of the Other Insurance Condition of Section **IV – Commercial General Liability Conditions**:

This insurance is excess over:

Any of the other insurance, whether primary, excess, contingent or on any other basis, available to an additional insured, in which the additional insured on our policy is also covered as an additional insured on another policy providing coverage for the same "occurrence", offense, claim or "suit". This provision does not apply to any policy in which the additional insured is a Named Insured on such other policy and where our policy is required by a written contract or written agreement to provide coverage to the additional insured on a primary and non-contributory basis.

**E.** This endorsement does not apply to an additional insured which has been added to this policy by an endorsement showing the additional insured in a Schedule of additional insureds, and which endorsement applies specifically to that identified additional insured.

**F.** With respect to the insurance afforded to the additional insureds under this endorsement, the following is added to Section **III – Limits Of Insurance**:

The most we will pay on behalf of the additional insured is the amount of insurance:

**1.** Required by the written contract or written agreement referenced in Paragraph **A.** of this endorsement; or

**2.** Available under the applicable Limits of Insurance shown in the Declarations,

whichever is less.

This endorsement shall not increase the applicable Limits of Insurance shown in the Declarations.

All other terms and conditions of this policy remain unchanged.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

# Welding Health Hazard Exclusion



| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer | Add'l Prem. | Return Prem. |
|---|---|---|---|---|---|---|
| GLO 8196150-19 | 03/01/2018 | 03/01/2019 | | 52045000 | $  **INCL** | $ |

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

This endorsement modifies insurance provided under the:
**Commercial General Liability Coverage  Part**
**Owners and Contractors Protective Liability Coverage Form—Coverage For Operations of Designated Contractor**
**Products-Completed Operations Liability Coverage  Part**
**Railroad Protective Liability Coverage  Form**

The following additional exclusion is added to **2. Exclusions** of **Section I.  Coverages**:

**2.    Exclusions**

This insurance does not apply to:

**Welding Health  Hazard**

"Bodily injury" caused directly or indirectly by the actual, alleged or threatened inhalation, ingestion, absorption, or exposure to harmful fumes or gases caused by "welding materials and equipment" used in connection with the process of welding or fusing together of any metals or other   materials.

For the purposes of this exclusion, the following definition applies:

"Welding materials and equipment" means:

(1)   Welding machinery or other welding process  equipment;

(2)   Welding rods;

(3)   Electrodes; or

(4)   Any consumable products including, but not limited to, wires, fluxes, coatings or cleaning agents.

Includes copyrighted material of Insurance Services Office, Inc. with its  permission.

# Lead Liability Exclusion



| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer | Add'l Prem. | Return Prem. |
|---|---|---|---|---|---|---|
| GLO 8196150-19 | 03/01/2018 | 03/01/2019 | | 52045000 | $  **INCL** | $ |

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the:

**Commercial General Liability Coverage Part**

The following exclusion is added to Paragraph **2. Exclusions,** of **Section I - Coverage A - Bodily Injury And Property Damage Liability** and Paragraph **2**. **Exclusions**, of **Coverage B - Personal And Advertising Injury Liability**:

This insurance does not apply to:

**Lead**

**(1)** "Bodily injury", "property damage" or "personal and advertising injury" arising out of, resulting from, caused by or related to: the actual, alleged or threatened:

  **(a)** Exposure to or existence of lead, paint containing lead, or any other material, product  or substance containing lead; or

  **(b)** Manufacture, distribution, sale, resale, re-branding, installation, repair, removal, encapsulation, abatement, replacement or handling of lead, paint containing lead, or any other material, product or substance containing lead,

  whether the lead is or was at any time airborne, ingested, inhaled, absorbed, transmitted in any fashion, or found in any form whatsoever, or whether any other cause, event, material, product or substance contributed concurrently or in any sequence to the injury or damage.;

**(2)** Any sums that any insured or other entity must pay, repay or reimburse because of any:

  **(a)** Request, demand, order or statutory or regulatory requirement that any insured or others test for, sample, monitor, clean up, remove, abate, cover, contain, treat, mitigate, or neutralize lead, paint containing lead, or any other material, product or substance containing lead, or in any way respond to, or assess the effects of lead in any form; or

  **(b)** Claim or "suit" for damages relating to testing for, sampling, monitoring, cleaning up, removing, abating, covering, containing, treating, mitigating, or neutralizing lead, paint containing lead, or any other material, product or substance containing lead or in any way responding to or assessing the effects of lead in any form.

**(3)** Any other loss, cost or expense arising out of, caused by or relating in any way to lead.

# Asbestos Exclusion Endorsement

| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer | Add'l Prem. | Return Prem. |
|---|---|---|---|---|---|---|
| GLO 8196150-19 | 03/01/2018 | 03/01/2019 | | 52045000 | $    **INCL** | $ |

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

This endorsement modifies insurance provided under the:

**Commercial General Liability Coverage Part**

The following exclusion is added to paragraph **2. Exclusions** of **Section I - Coverage A – Bodily Injury And Property Damage Liability** and **Coverage B - Personal And Advertising Injury Liability:**

**2. Exclusions**

This insurance does not apply to:

**Asbestos**

**A.** "Bodily injury", "property damage" or "personal and advertising injury" arising out of or which would not have occurred, in whole or in part, but for the actual, alleged or threatened discharge, dispersal, release, leakage, leaching, friability, flaking, escape or presence of asbestos, regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to the injury or damage; or

**B.** Any sums that any insured or other entity must pay, repay or reimburse because of any:

1. Request, demand, order, statutory or regulatory requirement, direction or determination  that any insured or  others test for, investigate, monitor, clean up, remove, study, contain, treat, encapsulate, control or take any other action regarding asbestos; or

2. Claim  or "suit"  for damages arising out of or relating in any way to any request, demand, order, statutory or regulatory requirement, direction or determination  that any insured or  others  test for, investigate, monitor, clean up, remove, study, contain, treat, encapsulate, control or take any other action regarding asbestos; or

**C.** Any other loss, cost or expense arising out of or relating in any way to asbestos.

Includes copyrighted material of Insurance Services Office, Inc. with its permission.

POLICY NUMBER: GLO 8196150-19

**COMMERCIAL GENERAL LIABILITY**
CG 01 13 12 04

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# TEXAS CHANGES – EXPERIENCE RATING MODIFICATION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCT WITHDRAWAL COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART

**SCHEDULE**

| |
|---|
| Rating Date: |
| (If no date is entered, the Rating Date is the effective date of the policy.) |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. |

The rates for this insurance are subject to modification as of the Rating Date as shown in the Schedule, and if this policy is written for three years, the next two anniversary dates of the Rating Date. In each case the modification is to be in accordance with the Manual Rules and General Liability Experience Rating Plan approved for Texas and in effect as of the respective dates.

COMMERCIAL GENERAL LIABILITY
CG 01 79 07 10

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# VIRGINIA CHANGES

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

Paragraph **f.(1)(a)(i)** under Paragraph **2. Exclusions** of **Section I – Coverage A – Bodily Injury And Property Damage Liability** is replaced by the following:

    **(i)** "Bodily injury" or "property damage" if sustained within a building and caused by smoke, fumes, vapor or soot produced by or originating from equipment that is used to heat, cool or dehumidify the building, or equipment that is used to heat water for personal use, by the building's occupants or their guests.

© Insurance Services Office, Inc., 2010

COMMERCIAL GENERAL LIABILITY
CG 02 20 03 12

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# FLORIDA CHANGES – CANCELLATION AND NONRENEWAL

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
ELECTRONIC DATA LIABILITY COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCT WITHDRAWAL COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

**A.** Paragraph **2.** of the **Cancellation** Common Policy Condition is replaced by the following:

**2. Cancellation Of Policies In Effect**

**a. For 90 Days Or Less**

If this policy has been in effect for 90 days or less, we may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation, accompanied by the reasons for cancellation, at least:

**(1)** 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

**(2)** 20 days before the effective date of cancellation if we cancel for any other reason, except we may cancel immediately if there has been:

**(a)** A material misstatement or misrepresentation; or

**(b)** A failure to comply with the underwriting requirements established by the insurer.

**b. For More Than 90 Days**

If this policy has been in effect for more than 90 days, we may cancel this policy only for one or more of the following reasons:

**(1)** Nonpayment of premium;

**(2)** The policy was obtained by a material misstatement;

**(3)** Failure to comply with underwriting requirements established by the insurer within 90 days of the effective date of coverage;

**(4)** A substantial change in the risk covered by the policy; or

**(5)** The cancellation is for all insureds under such policies for a given class of insureds.

If we cancel this policy for any of these reasons, we will mail or deliver to the first Named Insured written notice of cancellation, accompanied by the reasons for cancellation, at least:

**(a)** 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

**(b)** 45 days before the effective date of cancellation if we cancel for any of the other reasons stated in Paragraph **2.b.**

**B.** Paragraph **3.** of the **Cancellation** Common Policy Condition is replaced by the following:

**3.** We will mail or deliver our notice to the first Named Insured at the last mailing address known to us.

 © Insurance Services Office, Inc., 2011

**C.** Paragraph **5.** of the **Cancellation** Common Policy Condition is replaced by the following:

**5.** If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. If the return premium is not refunded with the notice of cancellation or when this policy is returned to us, we will mail the refund within 15 working days after the date cancellation takes effect, unless this is an audit policy.

If this is an audit policy, then, subject to your full cooperation with us or our agent in securing the necessary data for audit, we will return any premium refund due within 90 days of the date cancellation takes effect. If our audit is not completed within this time limitation, then we shall accept your own audit, and any premium refund due shall be mailed within 10 working days of receipt of your audit.

The cancellation will be effective even if we have not made or offered a refund.

**D.** The following is added and supersedes any other provision to the contrary:

**Nonrenewal**

**1.** If we decide not to renew this policy, we will mail or deliver to the first Named Insured written notice of nonrenewal, accompanied by the reason for nonrenewal, at least 45 days prior to the expiration of this policy.

**2.** Any notice of nonrenewal will be mailed or delivered to the first Named Insured at the last mailing address known to us. If notice is mailed, proof of mailing will be sufficient proof of notice.

 © Insurance Services Office, Inc., 2011 **CG 02 20 03 12**



# Deductible Endorsement - Occurrence

| Policy No. | Exp. Date of Pol. | Eff. Date of End. | Agency No. | Addl. Prem. | Return Prem. |
|---|---|---|---|---|---|
| | | | | | |

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the:

**Employee Benefits Liability Coverage Part**

It is agreed that the following deductible provisions are added to the policy as respects the Employee Benefit Liability Coverage Part:

**Deductible:** $ 1,000

1. The deductible amount stated above shall be deducted from the amount of all claims arising out of the same act, error, or omission. We shall be liable only for the difference between such deductible amount and the amount of insurance otherwise applicable on a per act, error, or omission basis. The Aggregate Limit will not be reduced by the application of such deductible.

2. The terms of this Coverage Part apply regardless of the application of the deductible amount. This includes those terms with respect to:

   a. Our rights and duties with respect to the defense of "suits"; and

   b. The "insured's" duties in the event of an act, error, or omission or a claim or "suit".

3. We may pay any part or all of the deductible amount to effect settlement of any claim or "suit". You shall promptly reimburse us for such part of the deductible amount as has been paid by us after we notify you of our action.

COMMERCIAL GENERAL LIABILITY
CG 20 01 04 13

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# PRIMARY AND NONCONTRIBUTORY — OTHER INSURANCE CONDITION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

The following is added to the **Other Insurance** Condition and supersedes any provision to the contrary:

**Primary And Noncontributory Insurance**

This insurance is primary to and will not seek contribution from any other insurance available to an additional insured under your policy provided that:

**(1)** The additional insured is a Named Insured under such other insurance; and

**(2)** You have agreed in writing in a contract or agreement that this insurance would be primary and would not seek contribution from any other insurance available to the additional insured.

COMMERCIAL GENERAL LIABILITY
CG 20 07 04 13

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED – ENGINEERS, ARCHITECTS OR SURVEYORS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A. Section II – Who Is An Insured** is amended to include as an additional insured any architect, engineer, or surveyor engaged by you but only with respect to liability for "bodily injury", "property damage" or "personal and advertising injury" caused, in whole or in part, by your acts or omissions or the acts or omissions of those acting on your behalf:

**1.** In connection with your premises; or

**2.** In the performance of your ongoing operations.

However:

**1.** The insurance afforded to such additional insured only applies to the extent permitted by law; and

**2.** If coverage provided to the additional insured is required by a contract or agreement, the insurance afforded to such additional insured will not be broader than that which you are required by the contract or agreement to provide for such additional insured.

**B.** With respect to the insurance afforded to these additional insureds, the following additional exclusion applies:

This insurance does not apply to "bodily injury", "property damage" or "personal and advertising injury" arising out of the rendering of or the failure to render any professional services by or for you, including:

**1.** The preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

**2.** Supervisory, inspection, architectural or engineering activities.

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage", or the offense which caused the "personal and advertising injury", involved the rendering of or the failure to render any professional services by or for you.

**C.** With respect to the insurance afforded to these additional insureds, the following is added to **Section III – Limits Of Insurance:**

If coverage provided to the additional insured is required by a contract or agreement, the most we will pay on behalf of the additional insured is the amount of insurance:

**1.** Required by the contract or agreement; or

**2.** Available under the applicable Limits of Insurance shown in the Declarations;

whichever is less.

This endorsement shall not increase the applicable Limits of Insurance shown in the Declarations.

 © Insurance Services Office, Inc., 2012

POLICY NUMBER:GLO 8196150-19

**COMMERCIAL GENERAL LIABILITY**
CG 20 10 04 13

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED – OWNERS, LESSEES OR CONTRACTORS – SCHEDULED PERSON OR ORGANIZATION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

## SCHEDULE

| Name Of Additional Insured Person(s) Or Organization(s) | Location(s) Of Covered Operations |
|---|---|
| SKANSKA USA BUILDING, INC, SKANSKA USA, INC. AND KANNAPOLIS LOGISTICS CENTER, LLC  LOCATION OF COVERED | ELECTRICAL @KANNAPOLIS LOGISTICS CENTER, 6500 DAVIDSON HWAY., CONCORD, NC |

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

**A. Section II – Who Is An Insured** is amended to include as an additional insured the person(s) or organization(s) shown in the Schedule, but only with respect to liability for "bodily injury", "property damage" or "personal and advertising injury" caused, in whole or in part, by:

**1.** Your acts or omissions; or

**2.** The acts or omissions of those acting on your behalf;

in the performance of your ongoing operations for the additional insured(s) at the location(s) designated above.

However:

**1.** The insurance afforded to such additional insured only applies to the extent permitted by law; and

**2.** If coverage provided to the additional insured is required by a contract or agreement, the insurance afforded to such additional insured will not be broader than that which you are required by the contract or agreement to provide for such additional insured.

**B.** With respect to the insurance afforded to these additional insureds, the following additional exclusions apply:

This insurance does not apply to "bodily injury" or "property damage" occurring after:

**1.** All work, including materials, parts or equipment furnished in connection with such work, on the project (other than service, maintenance or repairs) to be performed by or on behalf of the additional insured(s) at the location of the covered operations has been completed; or

**2.** That portion of "your work" out of which the injury or damage arises has been put to its intended use by any person or organization other than another contractor or subcontractor engaged in performing operations for a principal as a part of the same project.

© Insurance Services Office, Inc., 2012

**C.** With respect to the insurance afforded to these additional insureds, the following is added to **Section III – Limits Of Insurance:**

If coverage provided to the additional insured is required by a contract or agreement, the most we will pay on behalf of the additional insured is the amount of insurance:

    **1.** Required by the contract or agreement; or

**2.** Available under the applicable Limits of Insurance shown in the Declarations;

whichever is less.

This endorsement shall not increase the applicable Limits of Insurance shown in the Declarations.

© Insurance Services Office, Inc., 2012

POLICY NUMBER:GLO 8196150-19

**COMMERCIAL GENERAL LIABILITY**
**CG 20 10 04 13**

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# ADDITIONAL INSURED – OWNERS, LESSEES OR CONTRACTORS – SCHEDULED PERSON OR ORGANIZATION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

### SCHEDULE

| Name Of Additional Insured Person(s) Or Organization(s) | Location(s) Of Covered Operations |
|---|---|
| B.L. HARBERT INTERNATIONAL, LLC LOCATION OF COVERED | PROJECT 17-521-33 DYNETICS HARDWARE INTEGRATION FACILITY AT 60 BOOSTER BLVD, DECATUR, AL 35601 |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. | |

**A. Section II – Who Is An Insured** is amended to include as an additional insured the person(s) or organization(s) shown in the Schedule, but only with respect to liability for "bodily injury", "property damage" or "personal and advertising injury" caused, in whole or in part, by:

**1.** Your acts or omissions; or

**2.** The acts or omissions of those acting on your behalf;

in the performance of your ongoing operations for the additional insured(s) at the location(s) designated above.

However:

**1.** The insurance afforded to such additional insured only applies to the extent permitted by law; and

**2.** If coverage provided to the additional insured is required by a contract or agreement, the insurance afforded to such additional insured will not be broader than that which you are required by the contract or agreement to provide for such additional insured.

**B.** With respect to the insurance afforded to these additional insureds, the following additional exclusions apply:

This insurance does not apply to "bodily injury" or "property damage" occurring after:

**1.** All work, including materials, parts or equipment furnished in connection with such work, on the project (other than service, maintenance or repairs) to be performed by or on behalf of the additional insured(s) at the location of the covered operations has been completed; or

**2.** That portion of "your work" out of which the injury or damage arises has been put to its intended use by any person or organization other than another contractor or subcontractor engaged in performing operations for a principal as a part of the same project.

**CG 20 10 04 13** © Insurance Services Office, Inc., 2012 **Page 1 of 2**

**C.** With respect to the insurance afforded to these additional insureds, the following is added to **Section III – Limits Of Insurance:**

If coverage provided to the additional insured is required by a contract or agreement, the most we will pay on behalf of the additional insured is the amount of insurance:

    **1.** Required by the contract or agreement; or

**2.** Available under the applicable Limits of Insurance shown in the Declarations;

whichever is less.

This endorsement shall not increase the applicable Limits of Insurance shown in the Declarations.

© Insurance Services Office, Inc., 2012

**CG 20 10 04 13**

POLICY NUMBER: GLO 8196150-19

**COMMERCIAL GENERAL LIABILITY**
CG 20 32 04 13

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED – ENGINEERS, ARCHITECTS OR SURVEYORS NOT ENGAGED BY THE NAMED INSURED

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

## SCHEDULE

| Name Of Additional Insured Engineers, Architects Or Surveyors Not Engaged By The Named Insured: |
|---|
| ANY ENGINEER, ARCHITECT OR SURVEYOR NOT ENGAGED BY YOU WHEN YOU AGREED UNDER A WRITTEN CONTRACT OR AGREEMENT TO ADD TO THIS POLICY AS AN ADDITIONAL INSURED. |

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

**A. Section II – Who Is An Insured** is amended to include as an additional insured the architects, engineers or surveyors shown in the Schedule, but only with respect to liability for "bodily injury", "property damage" or "personal and advertising injury" caused, in whole or in part, by:

**1.** Your acts or omissions; or

**2.** The acts or omissions of those acting on your behalf;

in the performance of your ongoing operations performed by you or on your behalf.

Such architects, engineers or surveyors, while not engaged by you, are contractually required to be added as an additional insured to your policy.

However, the insurance afforded to such additional insured:

**1.** Only applies to the extent permitted by law; and

**2.** Will not be broader than that which you are required by the contract or agreement to provide for such additional insured.

**B.** With respect to the insurance afforded to these additional insureds, the following additional exclusion applies:

This insurance does not apply to "bodily injury", "property damage" or "personal and advertising injury" arising out of the rendering of or the failure to render any professional services, including:

**1.** The preparing, approving, or failing to prepare or approve, maps, drawings, opinions, reports, surveys, change orders, designs or specifications; or

**2.** Supervisory, inspection or engineering services.

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage", or the offense which caused the "personal and advertising injury", involved the rendering of or the failure to render any professional services.

CG 20 32 04 13

© Insurance Services Office, Inc., 2012

Page 1 of 2

**C.** With respect to the insurance afforded to these additional insureds, the following is added to **Section III – Limits Of Insurance:**

The most we will pay on behalf of the additional insured is the amount of insurance:

   **1.** Required by the contract or agreement; or

   **2.** Available under the applicable Limits of Insurance shown in the Declarations;

whichever is less.

This endorsement shall not increase the applicable Limits of Insurance shown in the Declarations.

© Insurance Services Office, Inc., 2012

CG 20 32 04 13

POLICY NUMBER: GLO 8196150-19

**COMMERCIAL GENERAL LIABILITY**
**CG 20 37 04 13**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED – OWNERS, LESSEES OR CONTRACTORS – COMPLETED OPERATIONS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

### SCHEDULE

| Name Of Additional Insured Person(s) Or Organization(s) | Location And Description Of Completed Operations |
|---|---|
| B.L. HARBERT INTERNATIONAL, LLC | PROJECT 17-521-33 DYNETICS HARDWARE INTEGRATION FACILITY AT 60 BOOSTER BLVD, DECATUR, AL 35601 |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. | |

**A. Section II – Who Is An Insured** is amended to include as an additional insured the person(s) or organization(s) shown in the Schedule, but only with respect to liability for "bodily injury" or "property damage" caused, in whole or in part, by "your work" at the location designated and described in the Schedule of this endorsement performed for that additional insured and included in the "products-completed operations hazard".

However:

1. The insurance afforded to such additional insured only applies to the extent permitted by law; and

2. If coverage provided to the additional insured is required by a contract or agreement, the insurance afforded to such additional insured will not be broader than that which you are required by the contract or agreement to provide for such additional insured.

**B.** With respect to the insurance afforded to these additional insureds, the following is added to **Section III – Limits Of Insurance:**

If coverage provided to the additional insured is required by a contract or agreement, the most we will pay on behalf of the additional insured is the amount of insurance:

1. Required by the contract or agreement; or

2. Available under the applicable Limits of Insurance shown in the Declarations;

whichever is less.

This endorsement shall not increase the applicable Limits of Insurance shown in the Declarations.

POLICY NUMBER: GLO 8196150-19

**COMMERCIAL GENERAL LIABILITY**
**CG 20 37 04 13**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED – OWNERS, LESSEES OR CONTRACTORS – COMPLETED OPERATIONS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

## SCHEDULE

| Name Of Additional Insured Person(s) Or Organization(s) | Location And Description Of Completed Operations |
|---|---|
| SKANSKA USA BUILDING, INC., SKANSKA USA, INC. AND KANNAPOLIS LOGISTICS CENTER, LLC | ELECTRICAL @KANNAPOLIS LOGISTICS CENTER, 6500 DAVIDSON HWAY., CONCORD, NC |

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

**A. Section II – Who Is An Insured** is amended to include as an additional insured the person(s) or organization(s) shown in the Schedule, but only with respect to liability for "bodily injury" or "property damage" caused, in whole or in part, by "your work" at the location designated and described in the Schedule of this endorsement performed for that additional insured and included in the "products-completed operations hazard".

However:

1. The insurance afforded to such additional insured only applies to the extent permitted by law; and

2. If coverage provided to the additional insured is required by a contract or agreement, the insurance afforded to such additional insured will not be broader than that which you are required by the contract or agreement to provide for such additional insured.

**B.** With respect to the insurance afforded to these additional insureds, the following is added to **Section III – Limits Of Insurance:**

If coverage provided to the additional insured is required by a contract or agreement, the most we will pay on behalf of the additional insured is the amount of insurance:

1. Required by the contract or agreement; or

2. Available under the applicable Limits of Insurance shown in the Declarations;

whichever is less.

This endorsement shall not increase the applicable Limits of Insurance shown in the Declarations.

CG 20 37 04 13

© Insurance Services Office, Inc., 2012

Page 1 of 1

COMMERCIAL GENERAL LIABILITY
CG 21 08 05 14

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION – ACCESS OR DISCLOSURE OF CONFIDENTIAL OR PERSONAL INFORMATION (COVERAGE B ONLY)

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

The following is added to Paragraph **2. Exclusions** of **Section I – Coverage B – Personal And Advertising Injury Liability:**

**2. Exclusions**

This insurance does not apply to:

**Access Or Disclosure Of Confidential Or Personal Information**

"Personal and advertising injury" arising out of any access to or disclosure of any person's or organization's confidential or personal information, including patents, trade secrets, processing methods, customer lists, financial information, credit card information, health information or any other type of nonpublic information.

This exclusion applies even if damages are claimed for notification costs, credit monitoring expenses, forensic expenses, public relations expenses or any other loss, cost or expense incurred by you or others arising out of any access to or disclosure of any person's or organization's confidential or personal information.

 © Insurance Services Office, Inc., 2013

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION – INTERCOMPANY PRODUCTS SUITS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

This insurance does not apply to any claim for damages by any Named Insured against another Named Insured because of "bodily injury" or "property damage" arising out of "your products" and included within the "products-completed operations hazard."

 Copyright, Insurance Services Office, Inc., 1984 ☐

COMMERCIAL GENERAL LIABILITY
CG 21 47 12 07

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EMPLOYMENT-RELATED PRACTICES EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** The following exclusion is added to Paragraph **2., Exclusions** of Section **I — Coverage A — Bodily Injury And Property Damage Liability:**

This insurance does not apply to:

"Bodily injury" to:

**(1)** A person arising out of any:

  **(a)** Refusal to employ that person;

  **(b)** Termination of that person's employment; or

  **(c)** Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination or malicious prosecution directed at that person; or

**(2)** The spouse, child, parent, brother or sister of that person as a consequence of "bodily injury" to that person at whom any of the employment-related practices described in Paragraphs **(a), (b),** or **(c)** above is directed.

This exclusion applies:

**(1)** Whether the injury-causing event described in Paragraphs **(a), (b)** or **(c)** above occurs before employment, during employment or after employment of that person;

**(2)** Whether the insured may be liable as an employer or in any other capacity; and

**(3)** To any obligation to share damages with or repay someone else who must pay damages because of the injury.

**B.** The following exclusion is added to Paragraph **2., Exclusions** of Section **I — Coverage B — Personal And Advertising Injury Liability:**

This insurance does not apply to:

"Personal and advertising injury" to:

**(1)** A person arising out of any:

  **(a)** Refusal to employ that person;

  **(b)** Termination of that person's employment; or

  **(c)** Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination or malicious prosecution directed at that person; or

**(2)** The spouse, child, parent, brother or sister of that person as a consequence of "personal and advertising injury" to that person at whom any of the employment-related practices described in Paragraphs **(a), (b),** or **(c)** above is directed.

This exclusion applies:

**(1)** Whether the injury-causing event described in Paragraphs **(a), (b)** or **(c)** above occurs before employment, during employment or after employment of that person;

**(2)** Whether the insured may be liable as an employer or in any other capacity; and

**(3)** To any obligation to share damages with or repay someone else who must pay damages because of the injury.

 © ISO Properties, Inc., 2006 ☐

POLICY NUMBER: GLO 8196150-19
COMMERCIAL GENERAL LIABILITY
CG 21 54 01 96

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION - DESIGNATED OPERATIONS COVERED BY A CONSOLIDATED (WRAP-UP) INSURANCE PROGRAM

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

### SCHEDULE

**Description and Location of Operation(s):**

ALL PROJECTS FOR WHICH THERE IS A WRAP-UP OR CONSOLIDATED OR SIMILAR INSURANCE PROGRAM AND SPECIFIC TO WORK BEING DONE FOR DPR CONSTRUCTION UNDER PROJECT NUMBER D5-117003-00 AT LOCATION 3525 JIM JOHNSON RD., CLARKSVILLE, TN 37040. EXCLUSION DOES NOT APPLY TO ANY OFFSITE WORK RELATED TO THIS PROJECT.

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

The following exclusion is added to paragraph **2.**, Exclusions of COVERAGE A **-** BODILY INJURY AND PROPERTY DAMAGE LIABILITY (Section **I -** Coverages):

This insurance does not apply to "bodily injury" or "property damage" arising out of either your ongoing operations or operations included within the "products-completed operations hazard" at the location described in the Schedule of this endorsement, as a consolidated (wrap-up) insurance program has been provided by the

prime contractor/project manager or owner of the construction project in which you are involved.

This exclusion applies whether or not the consolidated (wrap-up) insurance program:

**(1)** Provides coverage identical to that provided by this Coverage Part;

**(2)** Has limits adequate to cover all claims; or

**(3)** Remains in effect.

**CG 21 54 01 96**
Copyright, Insurance Services Office, Inc., 1994
Page **1** of 1

COMMERCIAL GENERAL LIABILITY
CG 21 55 09 99

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# TOTAL POLLUTION EXCLUSION
# WITH A HOSTILE FIRE EXCEPTION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

Exclusion **f.** under Paragraph **2., Exclusions** of **Section I - Coverage A - Bodily Injury And Property Damage Liability** is replaced by the following:

This insurance does not apply to:

**f.   Pollution**

(1)  "Bodily injury" or "property damage" which would not have occurred in whole or part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

This exclusion does not apply to "bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire" unless that "hostile fire" occurred or originated:

(a)  At any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste; or

(b)  At any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations to test for, monitor, clean up, remove, contain, treat, detoxify, neutralize or in any way respond to, or assess the effects of, "pollutants".

(2)  Any loss, cost or expense arising out of any:

(a)  Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

(b)  Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

 Copyright, Insurance Services Office, Inc., 1998  ☐

COMMERCIAL GENERAL LIABILITY
CG 22 79 04 13

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION – CONTRACTORS – PROFESSIONAL LIABILITY

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

The following exclusion is added to Paragraph **2. Exclusions** of **Section I – Coverage A – Bodily Injury And Property Damage Liability** and Paragraph **2. Exclusions** of **Section I – Coverage B – Personal And Advertising Injury Liability:**

**1.** This insurance does not apply to "bodily injury", "property damage" or "personal and advertising injury" arising out of the rendering of or failure to render any professional services by you or on your behalf, but only with respect to either or both of the following operations:

**a.** Providing engineering, architectural or surveying services to others in your capacity as an engineer, architect or surveyor; and

**b.** Providing, or hiring independent professionals to provide, engineering, architectural or surveying services in connection with construction work you perform.

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage", or the offense which caused the "personal and advertising injury", involved the rendering of or failure to render any professional services by you or on your behalf with respect to the operations described above.

**2.** Subject to Paragraph **3.** below, professional services include:

**a.** Preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders, or drawings and specifications; and

**b.** Supervisory or inspection activities performed as part of any related architectural or engineering activities.

**3.** Professional services do not include services within construction means, methods, techniques, sequences and procedures employed by you in connection with your operations in your capacity as a construction contractor.

 © Insurance Services Office, Inc., 2012



# Pollution Liability Exclusion Disclosure Notice

**This insurance policy does not apply to or provides very limited coverage as respects pollution liability. You should refer to the specific pollution liability policy exclusions or pollution liability exclusion endorsements of your policy for determination of specific terms and conditions as respects exclusion of any pollution liability exposures that you may have. The policy exclusions of the Commercial General Liability Coverage Part, form CG 00 01, apply to pollution exposures in the "coverage territory" unless replaced or modified, as indicated in the applicable endorsement, by one or more of the following pollution exclusion endorsements. The pollution exclusion endorsements that are checked ⊠ apply to pollution exposures in the indicated area(s) of the "coverage territory":**

<u>ISO FORM CG 00 01</u>

☐ Total Pollution Exclusion Endorsement, ISO Form CG 21 49

☐ All states in the "coverage territory" except:

⊠ Total Pollution Exclusion **-** Hostile Fire Exception, ISO Form CG 21 55

☐ All states in the "coverage territory" except:

☐ Only applicable in the following state(s)

☐ Total Pollution Exclusion with a Building Heating Equipment Exception and a Hostile Fire Exception ISO Form CG 21 65

☐ All states in the "coverage territory" except:

☐ Only applicable in the following state(s)

**Other State Endorsements**:

☐ Indiana Changes **-** Pollution Exclusion, ISO Form CG 01 23

☐ Indiana

☐ Missouri Changes **-** Pollution Exclusion, ISO Form CG 01 34; or

☐ Missouri

☐ Missouri Changes – Gasoline Risks **-** Pollution Ex-clusion,
      ISO Form  CG 01 35;

☐ Missouri

☐ Vt. Changes **-** Pollution, ISO form CG 01 54

☐ Vermont

☐ Other

☐ Applicable in the following states:

# EXHIBIT B

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | | |
|---|---|---|
| IHI E&C INTERNATIONAL CORPORATION, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | |
| ROBINSON MECHANICAL CONTRACTORS, INC., d/b/a ROBINSON CONSTRUCTION COMPANY and FIDELITY AND DEPOSIT COMPANY of MARYLAND, | ) ) ) ) ) ) | CIVIL ACTION FILE NO. 1:19-CV-04137-JPB |
| Defendants, | ) ) | |
| ROBINSON MECHANICAL CONTRACTORS, INC., d/b/a ROBINSON CONSTRUCTION COMPANY, | ) ) ) ) ) | |
| Defendant/Third-Party Plaintiff, | ) ) | |
| v. | ) ) | |
| INDUSTRIAL TECHNICAL COATINGS, INC., J.T. THORPE & SONS, INC., and PATRIOT MODULAR, LLC, | ) ) ) ) ) | |
| Third-Party Defendants, | ) | |

| PATRIOT MODULAR, LLC, | ) |
| | ) |
|       Third-Party Defendant/Fourth Party Plaintiff, | ) |
| | ) |
| | ) |
| v. | ) |
| | ) |
| ELDECO PIPE AND FABRICATION, LLC and DIXIE MECHANICAL, INC., | ) |
| | ) |
| | ) |
|       Fourth-Party Defendants, | ) |
| | ) |
| ELDECO PIPE AND FABRICATION, LLC, | ) |
| | ) |
| | ) |
|       Fourth-Party Defendants/Fifth-Party Plaintiff, | ) |
| | ) |
| | ) |
| v. | ) |
| | ) |
| BAKER TESTING SERVICES, INC. and WELD-SPECT TECHNOLOGIES, INC., | ) |
| | ) |
|       Fifth-Party Defendants. | ) |

## <u>FIFTH-PARTY PLAINTIFF ELDECO PIPE AND FABRICATION, LLC'S FIFTH-PARTY COMPLAINT AGAINST BAKER TESTING SERVICES, INC. AND WELD-SPECT TECHNOLOGIES, INC.</u>

Pursuant to Rule 14 of the Federal Rules of Civil Procedure, and subject to the defenses set forth in the Answer and Defenses of Fourth-Party Defendant Eldeco Pipe and Fabrication, LLC to Fourth-Party Plaintiff Patriot Modular, LLC's Fourth-Party Claim, which defenses are expressly preserved, Eldeco Pipe and

Fabrication, LLC ("EPF") as Fifth-Party Plaintiff asserts its fifth-party claim against Baker Testing Services, Inc. ("Baker") and Weld-Spect Technologies, Inc. ("Weld-Spect") who are or may be liable to EPF for all or part of Fourth-Party Plaintiff, Patriot Modular, LLC's ("Patriot") claims against EPF for which EPF may be found liable to Patriot, and for EPF's Fifth-Party Complaint against Baker and Weld-Spect ("Fifth-Party Claim"), EPF states:

1.

IHI E&C International Corporation ("IHI") is a Delaware Corporation with its principal place of business in Houston, Texas 77079. IHI has filed a Complaint in the Federal Court for the Northern District of Georgia in civil case: 1:19-CV-04137-JBP against Robinson Mechanical Contractors, Inc., d/b/a Robinson Construction Company ("Robinson") and Fidelity & Deposit Company of Maryland ("Fidelity") (the "Original Claim").

2.

Robinson is a Missouri corporation with its principal place of business in Perryville, Missouri. Robinson has filed a Third-Party Complaint against Patriot in the Federal Court for the Northern District of Georgia in civil case: 1:19-CV-04137-JPB.

3.

Patriot is a Texas corporation with its principal place of business in Pasadena, Texas 77506.  Patriot has filed a Fourth-Party Complaint against EPF and Dixie Mechanical, Inc. ("Dixie") in the Federal Court for the Northern District of Georgia in civil case: 1:19-CV-04137-JPB.

4.

EPF is a South Carolina corporation with its principal place of business in Richburg, South Carolina and is now asserting this Fifth-Party Complaint against Baker and Weld-Spect.

5.

Baker is a Massachusetts corporation with principal place of business in Massachusetts. Service may be perfected upon Baker by service upon its registered agent for service, James W. Rowe, at 22 Reservoir Park Drive Unit 1, Rockland, Massachusetts 02370.

6.

Weld-Spect is a South Carolina corporation with principal place of business in South Carolina. Service may be perfected upon Weld-Spect by service upon its

registered agent for service, Hsueh-Mei Yang, at 18 Crossbow Lakes Ct.,

Columbia, South Carolina 29212.

7.

EPF's claims, among other things, arise out of Weld-Spect's and Baker's

transaction of business and presence in, and contacts with, Georgia and each of

their respective conduct, acts, omissions, and/or use of resources in and directed at

Georgia as pled herein, including contacts and communications directed to and

from Georgia in connection with performing under contracts with EPF, over the

course of over a year, for the purpose of fabricating, facilitating, inspecting,

testing, and delivering certain piping to the State of Georgia for the known and

collective intention of effecting the real property construction and improvements

on Elba Island in the State of Georgia (the "Elba Island Project").

8.

This Court has jurisdiction over the subject matter of this civil action

pursuant to 18 U.S.C. §§ 1332, 1367 because there is complete diversity of

citizenship between the parties to the Original Claim and between the parties to

this Fifth-Party Claim and because the amount in controversy exceeds $75,000.00

exclusive of interest and costs. The amount in controversy between EPF and Weld-

Spect and between EPF and Baker also exceeds $75,000.00 exclusive of interest and costs

9.

This Court is an appropriate venue for this civil action pursuant to 28 U.S.C. § 1391 and ancillary venue.

10.

Upon information and belief, and according to the allegations of Patriot, Robinson was a party to three separate contracts with IHI, namely Purchase Orders No. 15026-1200-01-01 and 15026-1200-01-2 and a Subcontract Agreement dated September 28, 2017 under which Robinson agreed to furnish certain materials and services to the Elba Island Project.

11.

Upon information and belief, and according to the allegations of Patriot, Robinson entered into two subcontract agreements with Patriot dated October 9, 2017 and June 15, 2016.

- 6 -

12.

On or about November 15, 2016, Patriot and EPF entered into a Subcontract Agreement (the "Patriot-EPF Subcontract") for the welding and inspection of pipe to be fabricated by EPF, as specified in the Patriot-EPF Subcontract.

13.

While Patriot's obligations to Robinson were separate, and different in scope, from EPF's obligations to Patriot under the Patriot-EPF Subcontract, in connection with EPF's performance under the Patriot-EPF Subcontract, EPF subcontracted inspection and testing to Baker and Weld-Spect.

14.

With respect to Baker, EPF contracted with Baker for the inspection and testing for the Elba Island Project, based on the acceptance criteria and other requirements under the Patriot-EPF Subcontract, and to do so using certified and qualified technicians in accordance with ASME-B31.3 Process Piping Code and applicable industry standards, with responsibility for its workmanship and tracking and reporting based on, *inter alia*, project number, spool number, weld number and welder identification, and Baker agreed to undertake same (collectively, the "Baker Subcontract").

- 7 -

15.

With respect to Weld-Spect, EPF contracted with Weld-Spect for the inspection and testing for the Elba Island Project, based on the acceptance criteria and other requirements under the Patriot-EPF Subcontract, and to do so using certified and qualified technicians in accordance with ASME-B31.3 Process Piping Code and applicable industry standards, with responsibility for its workmanship and tracking and reporting based on, *inter alia*, project number, spool number, weld number and welder identification, and Weld-Spect agreed to undertake same (the "Weld-Spect Subcontract").

16.

Pursuant to their respective contracts with EPF, Baker and Weld-Spect were responsible for testing and inspection and related workmanship as required and based on the applicable standards and acceptance criteria under the Patriot-EPF Subcontract, as a prerequisite to EPF's completion of its work under the Patriot-EPF Subcontract.

17.

Over the course of many months and thousands of weld inspections and x-rays, each of Baker and Weld-Spect provided third-party inspections of the pipe for integration into the Elba Island facility pursuant to the Elba Island Project.

18.

In the course of testing and inspecting the pipe pursuant to their respective contracts with EPF, Baker and Weld-Spect had numerous communications and interactions with the various other contractors involved in the Elba Island Project and their agents. These interactions included regular interaction with the independent inspector for IHI, Intertek, which, along with Baker and Weld-Spect, approved that the inspections of the pipe and welds met all applicable requirements.

19.

Following delivery of the pipe materials to the Elba Island Project site, IHI later notified Robinson of claimed alleged deficiencies relating to the NDE of the welds and related aspects of the inspection and testing by Baker and Weld-Spect. Robinson, Patriot and others now dispute these contentions. Nevertheless, Robinson elected to re-inspect, repair and take other actions allegedly in an effort

to address the claimed deficiencies and did so over the objections of Baker and Weld-Spect.

20.

In Patriot's Fourth-Party Claim, Patriot includes allegations and claims regarding the testing and inspection that was subcontracted by EPF to Baker and Weld-Spect.

21.

In Patriot's Fourth-Party Claim, Patriot alleges that "Robinson's Third-Party Complaint against Patriot alleges that Patriot breached its obligations under its subcontract with Robinson and is liable, along with IHI, to Robinson for the $4.6 million Robinson was required to spend in connection with re-x-raying and repairing some of the welds and piping." (Doc. 60, Fourth-Party Claim, at ¶ 18.)

22.

In Patriot's Fourth-Party Claim, Patriot further alleges the following:

(a) "Pursuant to Robinson's Third Party Complaint, IHI's allegations against Robinson stem from the work performed by Patriot and its subcontractors in performance of Robinson's scope of work including, punchlist clearing, heat trace testing, reinstatement and Quality

Assurance and Quality Control sell-off and numerous system turnover packages, and installation of insulation, which was defective and incomplete."

(b) "Robinson asserts that IHI's allegations pertaining to Robinson's defective or late workmanship was subcontracted by Robinson through a workmanship provision in the agreement between Robinson and Patriot."

(c) "Patriot's workmanship was subcontracted to Eldeco and Dixie pursuant to their agreements. The subcontracts included a workmanship provisions entailing that Eldeco's and Dixie's work was to be executed in strict accordance with the subcontract agreement and in a sound, workmanlike, and substantial manner."

(Doc. 60, Fourth-Party Claim, at ¶¶ 22-24.)

23.

Over the course of several months after delivery to the Elba Island Project site, discussions among IHI, Patriot, Robinson and their respective agents ensued with Baker and Weld-Spect directly involved in numerous communications, meetings, and analyses with the Project participants for the purpose of addressing the concerns raised by Robinson after delivery, including a meeting held at the

Elba Island Project site to address the inspection and testing work that was performed by Baker and Weld-Spect pursuant to their respective contracts with EPF.

24.

While EPF also objects to, and maintains its defenses to, the contentions of IHI, Robinson and/or Patriot, EPF, in connection with addressing the above disputes and related actions of others involved in the Elba Island Project, also incurred substantial sums as a result and in an effort to address alleged deficiencies in the work of Baker and Weld-Spect.

**COUNT I**

25.

EPF incorporates as if fully repeated and set out in full its allegations to Paragraphs 1-24 above.

26.

IHI has filed its Original Claim against Robinson and Fidelity, alleging, among other things, that Robinson breached its contractual obligations with IHI. And Robison has filed, among other claims, its Third-Party Complaint against Patriot, alleging that if found liable to IHI, it seeks recovery from Patriot.

27.

While the subject of dispute, as well as defenses asserted and preserved by EPF, Patriot contends that EPF's testing and inspection and related workmanship under the Patriot-EPF Subcontract are at issue in Robinson's Third-Party Complaint and the subject of Robinson's Rule 14 claims against Patriot.

28.

Pursuant to the Baker Subcontract and Weld-Spect Subcontract, EPF subcontracted testing and inspection and related workmanship to Baker and Weld-Spect, and Baker and Weld-Spect were each responsible for the inspection and testing for the Elba Island Project, based on the acceptance criteria and other requirements under the Patriot-EPF Subcontract, and to do so using certified and qualified technicians in accordance with ASME-B31.3 Process Piping Code and applicable industry standards, with responsibility for its workmanship and tracking and reporting.

29.

To the extent and amount that EPF is found liable to Patriot for any defective work, delays, or breaches of contract, which work was the responsibility of Baker and Weld-Spect under its subcontracts with EPF, then to the same extent

and amount that EPF may be found liable to Patriot, Baker and Weld-Spect are liable to EPF and EPF is entitled to recover such amounts from Baker and Weld-Spect. All conditions precedent, if any, to EPF's right to recover from Baker and Weld-Spect have been performed or satisfied by EPF, or otherwise waived by Fifth-Party Defendants.

## COUNT II - Indemnification

### 30.

EPF incorporates as if fully repeated and set out in full its allegations to Paragraphs 1-29 above.

### 31.

If, and to the extent that, Baker's and Weld-Spect's actions and omissions in the performance of their respective contracts with EPF was deficient and/or in breach, same have resulted in, and are the basis of, Patriot asserting claims against EPF.

### 32.

Under principles of indemnity, compensation is owed where a first party is liable to pay a second party for a loss or damage the second party incurs to a third party. EPF has a right to indemnity from Baker and Weld-Spect by contract, express or implied, and/or by operation of law and/or equity because the respective

relationship between the EPF and each of Baker and Weld-Spect is such that EPF has been exposed to potential liability by their wrongful acts.

33.

Baker's and Weld-Spect's respective actions and omissions in the performance of the contracts and their breaches of the subcontracts have resulted in Patriot asserting a third party claim against EPF to indemnify Patriot for substantial damages, losses, liabilities and expenses. Consequently, Baker and Weld-Spect owe EPF indemnification for any damages or award arising out of Patriot's claims against EPF.

**Count III- Attorney Fees**

34.

Paragraphs 1 through 33 above are incorporated herein by reference as if rewritten in their entirety.

35.

Fifth-Party Plaintiff EPF has incurred attorney's fees and litigation expenses and will incur additional attorney's fees and litigation expenses as a result of Fifth-Party Defendants' conduct that forced Fifth-Party Plaintiff EPF to bring and prosecute this lawsuit.

36.

Based on Baker's and Weld-Spect's respective obligations to EPF set forth above and obligations to indemnify EPF, EPF is entitled to recover its expenses of this litigation and attorney's fees, including expert fees and other litigation costs.

WHEREFORE, Fifth-Party Plaintiff EPF prays for:

(1) to the extent and amount that the court finds Fifth-Party Plaintiff liable to Patriot, that the same extent and amount of liability is found against Baker and/or Weld-Spect pursuant to the claims herein;

(2) that the Court award EPF prejudgment interest and post-judgment legal interest, and attorney's fees, litigation expenses, and costs;

(3) that the Court award EPF such other and further relief as the Court may deem just and proper; and

(4) that all issues triable be tried by jury.

Respectfully submitted, this 13th day of October, 2020.

**WOMBLE BOND DICKINSON (US), LLP**

By: /s/ Jennifer S. Collins
Jennifer S. Collins
State Bar No. 436806
271 17th Street, NW, Suite 2400
Atlanta, Georgia 30363-1017
Phone: (404) 879-2472

- 16 -

Jennifer.Collins@wbd-us.com

William R. Warnock, Jr.
*Application for Admission Pro Hac Vice to be filed*
Womble Bond Dickinson (US) LLP
5 Exchange Street
Charleston, SC 29401
Telephone: (843) 722-3400
Bill.Warnock@wbd-us.com

*Attorneys for Fourth-Party Defendant Eldeco Pipe and Fabrication, LLC*

- 17 -

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the within and foregoing **FIFTH-PARTY PLAINTIFF ELDECO PIPE AND FABRICATION, LLC'S FIFTH-PARTY CLAIM AGAINST BAKER TESTING SERVICES, INC. AND WELD-SPECT TECHNOLOGIES, INC.** was electronically filed with the Clerk of Court using the CM/ECF system, which will automatically send email notification of such filing to the following attorneys of record:

John T. Gallagher
Martin R. Salzman
Hendrick Phillips Salzman & Siegel, P.C.
Suite 2500
230 Peachtree Street, N.W.
Atlanta, GA 30303

Charles A. Weiss
Curtis J. Romig
Nicholas A. Bedo
Bryan Cave Leighton Paisner LLP
Suite 3600
Metropolitan Square Building
211 North Broadway
St. Louis, MO 63102-2750

Gregory R. Veal
Bovis, Kyle, Burch & Medlin, LLC
Suite 500
200 Ashford Center North
Atlanta, GA 30338-2668

Ronald S. Masterson
Michael P. DiOrio
Lewis, Brisbois, Bisgaard & Smith, LLP
Suite 2900
1180 Peachtree Street, N.E.
Atlanta, GA 30309-3521

Kristen W Goodman
Megan K. Jones
Hall Gilligan Roberts & Shanlever, LLP
3340 Peachtree Road NE

Jack G. Kowalski
Michelle L. McClafferty
Burr & Forman, LLP
Suite 1100

- 18 -

Suite 1900                                    171 17th St., N.W.
Atlanta, GA 31406                             Atlanta, GA 30363

James W. Hardee
W. Jason Pettus
Robyn M. Roth
Fain, Major & Brennan, P.C.
One Premier Plaza
5605 Glenridge Dr., N.E., Suite 900
Atlanta, GA 30342

     In addition, the following parties will be served pursuant to Fed. R. Civ. P.

4:

Baker Testing Services, Inc.                  Weld-Spect Technologies, Inc.
Registered Agent: James W. Rowe               Registered Agent: Hsueh-Mei Yang
22 Reservoir Park Drive, Unit 1               18 Crossbow Lakes Ct
Rockland, MA 02370                            Columbia, SC 29212


     This 13th day of October, 2020.

              **WOMBLE BOND DICKINSON (US), LLP**

          By:   /s/ Jennifer S. Collins
                Jennifer S. Collins
                Georgia Bar No. 436806

- 19 -

# EXHIBIT  C

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

IHI E & C INTERNATIONAL
CORPORATION,

      Plaintiff,

v.

ROBINSON MECHANICAL
CONTRACTORS, INC., d/b/a
ROBINSON CONSTRUCTION COMPANY
and FIDELITY AND DEPOSIT COMPANY
of MARYLAND

      Defendants.

ROBINSON MECHANICAL
CONTRACTORS, INC., d/b/a
ROBINSON CONSTRUCTION COMPANY

      Defendant/Third Party Plaintiff

v.

PATRIOT MODULAR, LLC
120 Bearle Street
Pasadena, Texas 77506

      Third-Party Defendant/Fourth Party
      Plaintiff,

v.

ELDECO PIPE AND FABRICATION, LLC
AND DIXIE MECHANICAL, INC.

      Fourth-Party Defendants.

CIVIL ACTION FILE NO.:

1:19-CV-04137-JPB

1

**FOURTH-PARTY PLAINTIFF PATRIOT MODULAR, LLC'S FOURTH-PARTY CLAIM AGAINST ELDECO PIPE AND FABRICATION, LLC AND DIXIE MECHANICAL, INC.**

Pursuant to Rule 14, FRCP, Patriot Modular, LLC ("Patriot") as Fourth-Party Plaintiff asserts its fourth-party claim against Eldeco Pipe and Fabrication, LLC ("Eldeco") and Dixie Mechanical, Inc. ("Dixie") who are or may be liable to Patriot for all or part of Third-Party Plaintiff, Robinson Mechanical, Inc. ("Robinson") claims against Patriot for which Patriot may be found liable to Robinson, and for Patriot's Fourth-Party claim against Eldeco and Dixie, Patriot states:

1.

IHI E&C International Corporation ("IHI") is a Delaware Corporation with its principal place of business in Houston, Texas 77079. IHI has filed a Complaint in the Federal Court for the Northern District of Georgia in civil case: 1:19-CV-04137-JBP against Robinson and Fidelity & Deposit Company of Maryland.

2.

Robinson is a Missouri Corporation with its principal place of business in Perryville, Missouri 63775. Robinson has filed a Third-Party Complaint against Patriot in the Federal Court for the Northern District of Georgia in civil case: 1:19-CV-04137-JPB.

2

3.

Patriot is a Texas Corporation with its principal place of business in Pasadena, Texas 77506 and is now asserting this Fourth-Party Complaint against Eldeco and Dixie.

4.

Dixie is an Alabama Corporation with its principal place of business in Tuscaloosa, Alabama 35401.

5.

Eldeco is a South Carolina Corporation with its principal place of business in Richburg, South Carolina 29729.

6.

Patriot's claims, among other things, arise out of Eldeco's and Dixie's performance of their subcontracts with Patriot.

7.

This matter in controversy between Patriot and Eldeco exceeds $75,000.00 exclusive of interest and costs.

8.

This matter in controversy between Patriot and Dixie exceeds $75,000.00 exclusive of interests and costs.

9.

Robinson was a party to three separate contacts with IHI namely, Purchase Orders No. 15026-1200-01-01 and 15026-1200-01-2 and a Subcontract agreement dated September 28, 2017 under which Robinson agreed to furnish certain materials and services to the 17-312 Elba Island Rack Hookup Project ("Project") for which IHI was a general contractor to Kinder Morgan for the Project.

10.

In turn, Robinson entered into two subcontract agreements with Patriot dated October 9, 2017 and June 15, 2016.

11.

Patriot under its two subcontracts with Robinson agreed to meet the same specifications and requirements as Robinson agreed to meet under its contracts with IHI.

12.

Robinson subcontracted with Patriot to provide the piping for the modules, including procurement of materials, fabrication, welding, testing and inspection of the fabrication and welding to ensure that those goods and services met the required specifications outlined in the agreement.

13.

On November 15, 2016, Patriot subcontracted with Eldeco to perform all work necessary or incidental to complete the work for the Project in strict accordance with and reasonably inferable from the Contract Documents and specified in Specification Sections and Contract Drawings.

14.

Eldeco was to provide all necessary labor, materials, equipment, supervision, consumables, documentation, operation and maintenance manuals, warranties, startup services, etc. necessary for: Pipe Fabrication, shop drawings, NDE, coatings per Contract Documents, Quantification of welds is provided in each RFQ folder for weld count. BOM's are provided in RFQ folders for quantification of material for coating and handling baseline.

15.

Patriot subcontracted with Dixie to perform the fabrication, welding, testing, and inspection of the pipes and work. This included a purchase order agreement signed by Dixie on April 25, 2017 for the delivery of certain items and services related to Patriot's obligations under its contracts with Robinson. Dixie represented and warranted that "the items and services to be furnished…shall be free from defects in materials and workmanship shall be in full conformity with buyer's plans, drawings and specifications."

5

## Count I

16.

Patriot incorporates as if fully repeated and set out in full its allegations to Paragraphs 1-15 above.

17.

IHI has filed a Complaint against Robinson and Fidelity & Deposit Company of Maryland alleging that Robinson breached its contractual obligations with IHI under Robinson's two Purchase Orders and the Subcontracts with IHI.

18.

Robinson's Third-Party Complaint against Patriot alleges that Patriot breached its obligations under its subcontract with Robinson and is liable, along with IHI, to Robinson for the $4.6 million Robinson was required to spend in connection with re-x-raying and repairing some of the welds and piping.

19.

Robinson's Third-Party complaint further alleges that IHI asserted that Robinson's welding and inspection of the welds was defective and that Robinson had subcontracted with Patriot in regard to the welding and inspection pipe work.

20.

In turn, Patriot subcontracted the welding and inspection of the pipe to Eldeco and Dixie.

21.

Pursuant to the contract dated November 29, 2016 between Patriot and Eldeco, Eldeco is contractually responsible for meeting the IHI project specifications and quality requirements regarding the required welding, testing, and inspection of the subject pipes.

22.

Pursuant to Robinson's Third Party Complaint, IHI's allegations against Robinson stem from the work performed by Patriot and its subcontractors in performance of Robinson's scope of work including, punchlist clearing, heat trace testing, reinstatement and Quality Assurance and Quality Control sell-off and numerous system turnover packages, and installation of insulation, which was defective and incomplete.

23.

Robinson asserts that IHI's allegations pertaining to Robinson's defective or late workmanship was subcontracted by Robinson through a workmanship provision in the agreement between Robinson and Patriot.

24.

Patriot's workmanship was subcontracted to Eldeco and Dixie pursuant to their agreements. The subcontracts included a workmanship provisions entailing that Eldeco's and Dixie's work was to be executed in strict accordance with the subcontract agreement and in a sound, workmanlike, and substantial manner.

25.

To the extent and amount that Patriot is found liable to Robinson for any defective work, delays, or breaches of contract, which work was the responsibility of Eldeco and Dixie under its subcontracts with Patriot, then to the same extent and amount that Patriot may be found liable to Robinson, Eldeco and Dixie are liable to Patriot and Patriot is entitled to recover such amounts from Eldeco and Dixie. All conditions precedent to Patriot's right to recover from Eldeco and Dixie have been performed or satisfied by Patriot, or otherwise waived by Fourth-Party Defendants.

## Count II- Indemnification

26.

Patriot incorporates as if fully repeated and set out in full its allegations to Paragraphs 1-25 above.

27.

Pursuant to Article 13 of Eldeco's subcontract with Patriot, Eldeco promised to defend, indemnify and hold harmless Patriot from and against all claims, damages,

loss and expenses, including but not limited to attorney fees, arising out of or resulting from an act, omission, or conduct of Eldeco or anyone directly or indirectly employed by Eldeco.

28.

Pursuant to Article 18 of Dixie's subcontract with Patriot, Dixie promised to defend, indemnify and hold harmless Patriot from and against all claims, damages, loss and expenses, including but not limited to attorney fees, arising out of or resulting from an act, omission, or conduct of Dixie or anyone directly or indirectly employed by Dixie.

29.

Eldeco's and Dixie's actions and omissions in the performance of the subcontracts and their breaches of the subcontracts have resulted in Robinson asserting a third party claim against Patriot to indemnify Robinson for substantial damages, losses, liabilities and expenses. Consequently, Eldeco and Dixie owe Patriot indemnification for any damages or award arising out of Robinson's claims against Patriot.

**Count III- Attorney Fees**

30.

Paragraphs 1 through 29 above are incorporated herein by reference as if rewritten in their entirety.

9

31.

Fourth-Party Plaintiff has incurred attorney's fees and litigation expenses and will incur additional attorney's fees and litigation expenses as a result of Fourth-Party Defendants' conduct that forced Fourth-Party Plaintiff to bring and prosecute this lawsuit.

32.

Within the meaning of O.C.G.A. § 13-6-11, Defendants have acted in bad faith, been stubbornly litigious, and/or caused Fourth-Party Plaintiff unnecessary trouble and expense, thereby entitling Fourth-Party Plaintiff to recover its expenses of this litigation including reasonable attorney's fees, expert fees, and other litigation costs.

33.

Dixie and Eldeco are also contractually liable to Patriot for its attorney's fees.

WHEREFORE, Fourth-Party Plaintiff prays for (1) to the extent and amount that the court finds Fourth-Party Plaintiff liable to Robinson, that the same extent and amount of liability is found against Dixie and/or Eldeco pursuant to the indemnification provisions contained within the subcontract agreements entered into by Patriot and Dixie and Eldeco; (2) that the Court award Patriot prejudgment interest and post-judgment legal interest, and reasonable attorney fees and costs; and (3) The Court award Patriot such other and further relief as the Court may deem just and

proper. Patriot requests trial by jury.

Respectfully submitted this 10th day of August, 2020.

**LEWIS BRISBOIS BISGAARD & SMITH LLP**

*/s/ Michael P. DiOrio*

R. Scott Masterson
Georgia Bar No.476356
Michael P. DiOrio
Georgia Bar No. 647866

1180 Peachtree Street, NE
Suite 2900
Atlanta, Georgia 30309
404.348.8585 – Telephone
404.467-8845 – Facsimile
Scott.Masterson@lewisbrisbois.com
Mike.DiOrio@lewisbrisbois.com

*Attorneys for Third Party Defendant/ Fourth Party Plaintiff Patriot Modular, LLC*

## CERTIFICATE OF FONT

Pursuant to N.D. Ga. Local Rules 5.1(B) and 7.1(D), we hereby certify that this

document is submitted in Times New Roman 14 point type.

Respectfully submitted this 10th day of August, 2020.

**LEWIS BRISBOIS BISGAARD &
SMITH LLP**

*/s/ Michael P. DiOrio*

R. Scott Masterson
Georgia Bar No.476356
Michael P. DiOrio
Georgia Bar No. 647866

1180 Peachtree Street, NE
Suite 2900
Atlanta, Georgia 30309
404.348.8585 – Telephone
404.467-8845 – Facsimile
Scott.Masterson@lewisbrisbois.com
Mike.DiOrio@lewisbrisbois.com

*Attorneys for Third Party Defendant/
Fourth Party Plaintiff Patriot Modular,
LLC*

## CERTIFICATE OF SERVICE

I CERTIFY that on August 10th, 2020, I e-filed the forgoing ***FOURTH-PARTY PLAINTIFF'S CLAIM*** with the Clerk of Court using CM/ECF, which will serve this filing via e-notice on all counsel registered with the Northern District of Georgia. I also certify that the foregoing document is being served via e-mail this day on all counsel of record identified on the attached Service List.

Curtis Romig
***BRYAN CAVE, LEIGHTON PAISNER, LLP***
One Atlantic Center, 14th Floor
1201 W. Peachtree St. N.W.
Atlanta, Georgia
*Attorney for Third Party Plaintiff Robinson Mechanical Contractors, Inc. d/b/a Robinson Construction Company*

Martin R. Salzman, Esq.
John T. Gallagher, Esq.
***HENDRICK PHILLIPS SALZMAN & SIEGEL***
230 Peachtree Street NW, Suite 2500
Atlanta, Georgia 30303
*Attorneys for IHI E & C International Corporation*

Gregory R. Veal.
200 Ashford Center North, Suite 500
Atlanta, Georgia 30338-2680
*Attorneys for Fidelity & Deposit Company of Maryland*

Eldeco Pipe and Fabrication, LLC
Registered Agent: C T Corporation System
289 S Culver St, Lawrenceville, GA 30046-4805
.

Dixie Mechanical, Inc.
Registered Agent: Gregory J. Howell
2645 18th street
Tuscaloosa, Al 35401

Respectfully submitted this 10th day of August, 2020.

**LEWIS BRISBOIS BISGAARD &
SMITH LLP**

*/s/ Michael P. DiOrio*
R. Scott Masterson
Georgia Bar No.476356
Michael P. DiOrio
Georgia Bar No. 647866

1180 Peachtree Street, NE
Suite 2900
Atlanta, Georgia  30309
404.348.8585 – Telephone
404.467-8845 – Facsimile
Scott.Masterson@lewisbrisbois.com
Mike.DiOrio@lewisbrisbois.com

*Attorneys for Third Party Defendant/
Fourth Party Plaintiff Patriot Modular,
LLC*

JS44 (Rev. 6/2017 NDGA)

# CIVIL COVER SHEET

The JS44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form is required for the use of the Clerk of Court for the purpose of initiating the civil docket record. (SEE INSTRUCTIONS ATTACHED)

## I. (a) PLAINTIFF(S)

## DEFENDANT(S)

**(b)** COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF_____
(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT_____
(IN U.S. PLAINTIFF CASES ONLY)

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED

## (c) ATTORNEYS (FIRM NAME, ADDRESS, TELEPHONE NUMBER, AND E-MAIL ADDRESS)

## ATTORNEYS (IF KNOWN)

## II. BASIS OF JURISDICTION
(PLACE AN "X" IN ONE BOX ONLY)

☐ 1 U.S. GOVERNMENT PLAINTIFF

☐ 2 U.S. GOVERNMENT DEFENDANT

☐ 3 FEDERAL QUESTION (U.S. GOVERNMENT NOT A PARTY)

☐ 4 DIVERSITY (INDICATE CITIZENSHIP OF PARTIES IN ITEM III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES
(PLACE AN "X" IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT)
(FOR DIVERSITY CASES ONLY)

| PLF | DEF | | PLF | DEF | |
|---|---|---|---|---|---|
| ☐ 1 | ☐ 1 | CITIZEN OF THIS STATE | ☐ 4 | ☐ 4 | INCORPORATED OR PRINCIPAL PLACE OF BUSINESS IN THIS STATE |
| ☐ 2 | ☐ 2 | CITIZEN OF ANOTHER STATE | ☐ 5 | ☐ 5 | INCORPORATED AND PRINCIPAL PLACE OF BUSINESS IN ANOTHER STATE |
| ☐ 3 | ☐ 3 | CITIZEN OR SUBJECT OF A FOREIGN COUNTRY | ☐ 6 | ☐ 6 | FOREIGN NATION |

## IV. ORIGIN (PLACE AN "X "IN ONE BOX ONLY)

☐ 1 ORIGINAL PROCEEDING

☐ 2 REMOVED FROM STATE COURT

☐ 3 REMANDED FROM APPELLATE COURT

☐ 4 REINSTATED OR REOPENED

☐ 5 TRANSFERRED FROM ANOTHER DISTRICT (Specify District)

☐ 6 MULTIDISTRICT LITIGATION - TRANSFER

☐ 7 APPEAL TO DISTRICT JUDGE FROM MAGISTRATE JUDGE JUDGMENT

☐ 8 MULTIDISTRICT LITIGATION - DIRECT FILE

## V. CAUSE OF ACTION (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE - DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY)

**(IF COMPLEX, CHECK REASON BELOW)**

1. Unusually large number of parties.

2. Unusually large number of claims or defenses.

3. Factual issues are exceptionally complex

4. Greater than normal volume of evidence.

5. Extended discovery period is needed.

6. Problems locating or preserving evidence

7. Pending parallel investigations or actions by government.

8. Multiple use of experts.

9. Need for discovery outside United States boundaries.

10. Existence of highly technical issues and proof.

## CONTINUED ON REVERSE

FOR OFFICE USE ONLY

RECEIPT #_____   AMOUNT $_____   APPLYING IFP_____   MAG. JUDGE (IFP)_____

JUDGE_____   MAG. JUDGE_____   NATURE OF SUIT_____   CAUSE OF ACTION_____
_(Referral)_

# VI. NATURE OF SUIT (PLACE AN "X" IN ONE BOX ONLY)

**CONTRACT - "0" MONTHS DISCOVERY TRACK**
150 RECOVERY OF OVERPAYMENT & ENFORCEMENT OF JUDGMENT
152 RECOVERY OF DEFAULTED STUDENT LOANS (Excl. Veterans)
153 RECOVERY OF OVERPAYMENT OF VETERAN'S BENEFITS

**CONTRACT - "4" MONTHS DISCOVERY TRACK**
110 INSURANCE
120 MARINE
130 MILLER ACT
140 NEGOTIABLE INSTRUMENT
151 MEDICARE ACT
160 STOCKHOLDERS' SUITS
190 OTHER CONTRACT
195 CONTRACT PRODUCT LIABILITY
196 FRANCHISE

**REAL PROPERTY - "4" MONTHS DISCOVERY TRACK**
210 LAND CONDEMNATION
220 FORECLOSURE
230 RENT LEASE & EJECTMENT
240 TORTS TO LAND
245 TORT PRODUCT LIABILITY
290 ALL OTHER REAL PROPERTY

**TORTS - PERSONAL INJURY - "4" MONTHS DISCOVERY TRACK**
310 AIRPLANE
315 AIRPLANE PRODUCT LIABILITY
320 ASSAULT, LIBEL & SLANDER
330 FEDERAL EMPLOYERS' LIABILITY
340 MARINE
345 MARINE PRODUCT LIABILITY
350 MOTOR VEHICLE
355 MOTOR VEHICLE PRODUCT LIABILITY
360 OTHER PERSONAL INJURY
362 PERSONAL INJURY - MEDICAL MALPRACTICE
365 PERSONAL INJURY - PRODUCT LIABILITY
367 PERSONAL INJURY - HEALTH CARE/ PHARMACEUTICAL PRODUCT LIABILITY
368 ASBESTOS PERSONAL INJURY PRODUCT LIABILITY

**TORTS - PERSONAL PROPERTY - "4" MONTHS DISCOVERY TRACK**
370 OTHER FRAUD
371 TRUTH IN LENDING
380 OTHER PERSONAL PROPERTY DAMAGE
385 PROPERTY DAMAGE PRODUCT LIABILITY

**BANKRUPTCY - "0" MONTHS DISCOVERY TRACK**
422 APPEAL 28 USC 158
423 WITHDRAWAL 28 USC 157

**CIVIL RIGHTS - "4" MONTHS DISCOVERY TRACK**
440 OTHER CIVIL RIGHTS
441 VOTING
442 EMPLOYMENT
443 HOUSING/ ACCOMMODATIONS
445 AMERICANS with DISABILITIES - Employment
446 AMERICANS with DISABILITIES - Other
448 EDUCATION

**IMMIGRATION - "0" MONTHS DISCOVERY TRACK**
462 NATURALIZATION APPLICATION
465 OTHER IMMIGRATION ACTIONS

**PRISONER PETITIONS - "0" MONTHS DISCOVERY TRACK**
463 HABEAS CORPUS- Alien Detainee
510 MOTIONS TO VACATE SENTENCE
530 HABEAS CORPUS
535 HABEAS CORPUS DEATH PENALTY
540 MANDAMUS & OTHER
550 CIVIL RIGHTS - Filed Pro se
555 PRISON CONDITION(S) - Filed Pro se
560 CIVIL DETAINEE: CONDITIONS OF CONFINEMENT

**PRISONER PETITIONS - "4" MONTHS DISCOVERY TRACK**
550 CIVIL RIGHTS - Filed by Counsel
555 PRISON CONDITION(S) - Filed by Counsel

**FORFEITURE/PENALTY - "4" MONTHS DISCOVERY TRACK**
625 DRUG RELATED SEIZURE OF PROPERTY 21 USC 881
690 OTHER

**LABOR - "4" MONTHS DISCOVERY TRACK**
710 FAIR LABOR STANDARDS ACT
720 LABOR/MGMT. RELATIONS
740 RAILWAY LABOR ACT
751 FAMILY and MEDICAL LEAVE ACT
790 OTHER LABOR LITIGATION
791 EMPL. RET. INC. SECURITY ACT

**PROPERTY RIGHTS - "4" MONTHS DISCOVERY TRACK**
820 COPYRIGHTS
840 TRADEMARK

**PROPERTY RIGHTS - "8" MONTHS DISCOVERY TRACK**
830 PATENT
835 PATENT-ABBREVIATED NEW DRUG APPLICATIONS (ANDA) - a/k/a Hatch-Waxman cases

**SOCIAL SECURITY - "0" MONTHS DISCOVERY TRACK**
861 HIA (1395ff)
862 BLACK LUNG (923)
863 DIWC (405(g))
863 DIWW (405(g))
864 SSID TITLE XVI
865 RSI (405(g))

**FEDERAL TAX SUITS - "4" MONTHS DISCOVERY TRACK**
870 TAXES (U.S. Plaintiff or Defendant)
871 IRS - THIRD PARTY 26 USC 7609

**OTHER STATUTES - "4" MONTHS DISCOVERY TRACK**
375 FALSE CLAIMS ACT
376 Qui Tam 31 USC 3729(a)
400 STATE REAPPORTIONMENT
430 BANKS AND BANKING
450 COMMERCE/ICC RATES/ETC.
460 DEPORTATION
470 RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS
480 CONSUMER CREDIT
490 CABLE/SATELLITE TV
890 OTHER STATUTORY ACTIONS
891 AGRICULTURAL ACTS
893 ENVIRONMENTAL MATTERS
895 FREEDOM OF INFORMATION ACT
899 ADMINISTRATIVE PROCEDURES ACT / REVIEW OR APPEAL OF AGENCY DECISION
950 CONSTITUTIONALITY OF STATE STATUTES

**OTHER STATUTES - "8" MONTHS DISCOVERY TRACK**
410 ANTITRUST
850 SECURITIES / COMMODITIES / EXCHANGE

**OTHER STATUTES - "0" MONTHS DISCOVERY TRACK**
896 ARBITRATION (Confirm / Vacate / Order / Modify)

**\* PLEASE NOTE DISCOVERY TRACK FOR EACH CASE TYPE. SEE LOCAL RULE 26.3**

---

# VII. REQUESTED IN COMPLAINT:

**CHECK IF CLASS ACTION UNDER F.R.Civ.P. 23    DEMAND $_____**

**JURY DEMAND    YES    NO  (CHECK YES ONLY IF DEMANDED IN COMPLAINT)**

---

# VIII. RELATED/REFILED CASE(S) IF ANY

**JUDGE_____    DOCKET NO._____**

**CIVIL CASES ARE DEEMED RELATED IF THE PENDING CASE INVOLVES:** (CHECK APPROPRIATE BOX)
1. **PROPERTY INCLUDED IN AN EARLIER NUMBERED PENDING SUIT.**
2. **SAME ISSUE OF FACT OR ARISES OUT OF THE SAME EVENT OR TRANSACTION INCLUDED IN AN EARLIER NUMBERED PENDING SUIT.**
3. **VALIDITY OR INFRINGEMENT OF THE SAME PATENT, COPYRIGHT OR TRADEMARK INCLUDED IN AN EARLIER NUMBERED PENDING SUIT.**
4. **APPEALS ARISING OUT OF THE SAME BANKRUPTCY CASE AND ANY CASE RELATED THERETO WHICH HAVE BEEN DECIDED BY THE SAME BANKRUPTCY JUDGE.**
5. **REPETITIVE CASES FILED BY PRO SE LITIGANTS.**
6. **COMPANION OR RELATED CASE TO CASE(S) BEING SIMULTANEOUSLY FILED (INCLUDE ABBREVIATED STYLE OF OTHER CASE(S)):**

7. **EITHER SAME OR ALL OF THE PARTIES AND ISSUES IN THIS CASE WERE PREVIOUSLY INVOLVED IN CASE NO.                    , WHICH WAS DISMISSED.  This case    IS        IS NOT (check one box) SUBSTANTIALLY THE SAME CASE.**

08/10/2020

SIGNATURE OF ATTORNEY OF RECORD                    DATE